# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SYMMETRY TOWER/CHICAGO PROJECT OWNER, LLC, | ) ) | Case No. 23-07151 |
| | ) | |
| | ) | Honorable David D. Cleary |
| Debtors.[1] | ) | |

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on **June 28, 2023, at 10:00 a.m.**, or as soon thereafter as counsel may be heard, we will appear before the Honorable Judge David D. Cleary, or any judge sitting in that judge's place, **either** in Courtroom 644 of the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604 **or** electronically as described below, and then and there present the *Motion to Lift the Automatic Stay or, in the Alternative, Motion to Dismiss Chapter 11 Case* (the "Motion"), a copy of which is hereby served upon you.

**All parties in interest, including the movant, may appear for the presentment of the motion either in person or electronically using Zoom for Government (audio only).**

> To appear by Zoom using the internet, go to this link: https://www.zoomgov.com/join. Then enter the meeting ID and password.

> To appear by telephone, call Zoom for Government at 1-669-254-5252 or 1-646-828- 7666. Then enter the meeting ID and password.

> Meeting ID and passcode. The meeting ID for this hearing is 161 122 6457and the passcode is Cleary644. Additional information can be found on Judge Cleary's webpage on the court's website: https://www.ilnb.uscourts.gov/content/judge-david-d-cleary.

**PLEASE TAKE FURTHER NOTICE** that if you object to this Motion and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the Motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the Motion in advance without a hearing.

---

[1] The Debtors in these chapter 11 cases are Symmetry Tower/Chicago Project Owner, LLC (Case No. 23-07151) and SPD II Makaiwa Resort Development, LLC (Case No. 23-07153).

Dated: June 21, 2023　　　　　　　　　　Respectfully submitted,

**WABASH SUPERIOR 1, LLC**

By:    /s/ Sean P. Williams
Sean P. Williams, Esq.
**LEVENFELD PEARLSTEIN, LLC**
120 S. Riverside Plaza, Suite 1800
Chicago, Illinois 60606
Telephone: 312-346-8380
e-mail: swilliams@lplegal.com

-and-

Stuart L. Kossar, Esq. (admitted *pro hac vice*)
**KRISS & FEUERSTEIN LLP**
360 Lexington Avenue, 12th Floor
New York, New York, 10017
Telephone: 212-661-2900
e-mail: skossar@kandfllp.com

# CERTIFICATE OF SERVICE

I, Sean P. Williams, the undersigned attorney, hereby certify that on June 20, 2023, I caused a copy of the ***Notice of Motion*** and ***Motion to Lift the Automatic Stay or, in the Alternative, Dismiss Chapter 11 Case*** without exhibits, which may be requested by contacting counsel, to be filed via the Court's ECF system and first class U.S. mail, as indicated below.

/s/ Sean P. Williams

# SERVICE LIST

**VIA CM/ECF**
Patrick S Layng
USTPRegion11.ES.ECF@usdoj.gov

Laxmi P Sarathy on behalf of Debtor 1 Symmetry Tower/Chicago Project Owner, LLC
lsarathy@whitestonelawgroup.com, courtdocs@whitestonelawgroup.com

Sean P. Williams on behalf of Creditor Wabash Superior 1 LLC
swilliams@lplegal.com,
nbailey@lplegal.com;ikropiewnicka@lplegal.com;kpatton@lplegal.com;druiz@lplegal.com

**VIA FIRST CLASS U.S. MAIL**

Cook County Treasurer
118 N Clark Street Unit 112
Chicago, IL 60602

GEI Consultants Inc
120 W Madison St # 1305
Chicago, IL 60602

Peak Properties LLC
2815 W Roscoe Street
Chicago, IL 60618

Skidmore, Owings, & Merrill LLP
224 S Michigan Avenue
Chicago, IL 60604

Walsh Construction
929 W Adams
Chicago, IL 60607

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| SYMMETRY TOWER/CHICAGO PROJECT OWNER, LLC, | ) ) ) | Case No. 23-07151 |
|  | ) |  |
|  | ) | Honorable David D. Cleary |
| Debtors.[1] | ) |  |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR, IN THE ALTERNATIVE, MOTION TO DISMISS CHAPTER 11 CASE

Wabash Superior 1, LLC ("Wabash") hereby files this Motion (the "Motion") seeking an order under sections 362 and 1112(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 1017, 2002, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"): (a) lifting the automatic stay in order to enable Wabash to continue state court proceedings; or, in the alternative, (b) dismissing chapter 11 case no. 23-07151 (the "Symmetry Case") filed by Symmetry Tower/Chicago Project Owner, LLC ("Symmetry"), one of the above-captioned debtors.[2] In support of the Motion, Wabash submits the *Declaration of Shoshana Carmel in Support of the Motion for Relief from the Automatic Stay or, in the Alternative, Motion to Dismiss Chapter 11 Case* (the "Carmel Declaration," attached hereto as Exhibit 1) and respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases are Symmetry Tower/Chicago Project Owner, LLC (Case No. 23-07151) and SPD II Makaiwa Resort Development, LLC (Case No. 23-07153).

[2] For the avoidance of doubt, this Motion affects only Symmetry and does not seek to lift the automatic stay as to, or dismiss the case of, Debtor SPD II Makaiwa Resort Development, LLC (Case No. 23-07153).

# PRELIMINARY STATEMENT[3]

1.	After exhausting every available remedy in the State Court Case, Symmetry filed the Symmetry Case as a last-ditch effort to avoid foreclosure of the Property, just one day prior to the scheduled sale of the Property. Symmetry has zero chance to reorganize using the chapter 11 process, as it has no significant assets (other than the Property), and currently has a receiver in place.[4] Moreover, Symmetry has zero equity in the Property. Thus, this Court should lift the automatic stay to allow the State Court Case to proceed to foreclosure.

2.	It is also clear that the Symmetry Case is nothing more than a bad faith, two-party dispute filed only to halt foreclosure proceedings in the State Court Case. Given that the Symmetry Case was filed in bad faith, this Court should dismiss the Symmetry Case to allow Wabash to finally sell the Property through the State Court Case.

# JURISDICTION AND VENUE

3.	This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4.	Venue of this case and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

# BACKGROUND

## A. The Loan and Foreclosure Case

5.	On or around July 24, 2018, Symmetry executed a note in favor of Wabash (the "Note," attached to the Carmel Declaration as Exhibit A), providing that Wabash would lend

---

[3] Capitalized terms used but not defined in the Preliminary Statement shall have the meaning given to such term elsewhere in the Motion.

[4] Concurrently with the filing of this Motion, Wabash will be filing a motion under section 543(d) of the Bankruptcy Code to allow the receiver to remain in place.

<mark>2</mark>

Symmetry $8,100,000.00 (the "Loan"). The Loan and Note were secured by that certain *Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing* (the "Mortgage," recorded with the Cook County Recorder of Deeds as Doc# 1820806285 on July 27, 2018 and attached to the Carmel Declaration as Exhibit B) executed by Symmetry, in favor of Wabash, pledging certain real estate with the common address of: (a) 737 N. Wabash Ave., Chicago Illinois 60611 (a small parking lot); (b) 739 N. Wabash Ave., Chicago, Illinois 60611 (a three-car garage with storage above); (c) 42 E. Superior St., Chicago, Illinois 60611 (a three-flat with restaurant space); (d) 44 E. Superior Street, Chicago, Illinois 60611 (a multi-level (3) commercial space); and (e) 46 E. Superior Street, Chicago, Illinois 60611 (a multi-level mixed use space) (collectively, the "Property"). Carmel Declaration at ¶ 5.

6. Symmetry failed to comply with the terms and provisions of the Note and Mortgage, by among other things, failing and omitting to pay the installments of principal and interest which became due and owing on March 1, 2019, and each subsequent month thereafter, constituted and event of default under the Note and/or Mortgage (the "Default"). Carmel Declaration at ¶ 6.

7. As a result of the Default, on May 30, 2019, after the Default, Wabash filed its *Complaint* (the "Complaint," attached to the Carmel Declaration as Exhibit C) in the Circuit Court of Cook County, Illinois, County Department, Chancery Division (the "State Court"), initiating Case No. 2019CH06588 (the "State Court Case"), seeking: (i) a judgment of foreclosure and sale; (ii) an order granting no redemption period; (iii) an *in personam* judgment for a deficiency, if sought; (iv) an order granting possession, if sought; (v) an order placing the mortgagee in possession or appointing a receiver, if sought; (vi) a judgment for attorneys' fees, costs and expenses; and (vii) such other and further relief as equity may require. Carmel Declaration at ¶ 6.

8.      On November 26, 2019, the State Court entered its *Order Appointing Receiver for Non-Residential Property* (the "Receiver Order," attached hereto as Exhibit D), appointing Mike Zucker of Peak Properties, LLC (the "Receiver") as the receiver of 739 N. Wabash Ave.; 42 E. Superior Street; and 44-46 E. Superior Street, Chicago, Illinois 60611.

9.      On November 15, 2022, Wabash filed its *Motion for Summary Judgment and Judgment of Foreclosure and Sale* (the "MSJ"), seeking the entry of summary judgment against Symmetry in accordance with the Complaint. On March 29, 2023, the State Court entered its *Judgment of Foreclosure and Sale Order* (the "Judgment of Foreclosure," attached to the Carmel Declaration as Exhibit E), holding that summary judgment was entered in favor of Wabash against Symmetry and Corban Kauai Chicago Lender, LLC and providing for the sale of the Property. Judgment of Foreclosure at ¶¶ 3, 9.

10.     The State Court further found that **$16,338,522.95** remains due and owing to Wabash as of October 27, 2022, broken down as follows:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Unpaid Principal Balance | | | | | | : $ | 8,100,000.00 |
| Nominal Interest on | $ | 8,100,000.00 at | 12.625% | from | 2/1/2019 to 2/28/2019 | : | 79,537.50 |
| Default Interest on | $ | 8,100,000.00 at | 24.000% | from | 3/1/2019 to 10/27/2022 | : | 7,219,800.00 |
| Late Fees | | | | | | : | 7,953.75 |
| Exit Fee | | | | | | : | 81,000.00 |
| Servicing Fees | | | | | | : | 25,650.00 |
| Appraisal Fee | | | | | | : | 10,000.00 |
| Monitoring Fees | | | | | | : | 1,125.00 |
| Legal Fees | | | | | | : | 53,740.31 |
| Entity Fees | | | | | | : | 4,392.88 |
| Protective Advances for Insurance | | | | | | : | 403,173.62 |
| Default Interest on Protective Advances for Insurance | | | | | | : | 159,274.07 |
| Protective Advances for Taxes | | | | | | : | 186,749.82 |
| Default Interest on Protective Advances for Taxes | | | | | | : | 6,126.00 |
| | | | | | 10/27/2022 | $ | 16,338,522.95 |

Judgment of Foreclosure at ¶ 4.

11.     Per diem interest accrued at the rate of $5,793.28 after October 27, 2022, totaling $886,371.84 as of March 29, 2023 (the date the Judgment of Foreclosure was entered). Additionally, the State Court held that Wabash was entitled to its attorneys' fees and costs in the

4

amounts of $32,738.75 and $1,580.31 respectively. When added together, the total owed as of March 29, 2023 was **$17,259,214.85** (the "Judgment"). Judgment of Foreclosure at ¶ 4. This amount has since increased due to accruing interest.

12. On April 18, 2023, Wabash filed its *Notice of Sale* (the "Sale Notice," attached to the Carmel Declaration as Exhibit F), indicating that a sheriff's sale (the "Sale") would occur on June 1, 2023. Sale Notice.

**B. The Bankruptcy Filing and Symmetry's Actions in Bankruptcy**

13. On May 31, 2023, on the eve of the Sale, Symmetry filed a skeletal voluntary petition (the "Petition") for relief under chapter 11 of the Bankruptcy Code [ECF No. 1].

14. Symmetry did not file its schedules of assets and liabilities ("Schedules") or its statements of financial affairs ("SOFA") by the June 13, 2023 deadline, in violation of Bankruptcy Rule 1007 and sought to extend that deadline only after it passed. However, its petition lists only six total creditors.

15. Since the filing of the Symmetry Case more than two weeks ago, Symmetry has filed no substantive pleadings other than a motion to extend the time to file its Schedules and SOFA [ECF No. 17].

16. On June 14, 2023, Corban Kauai Chicago Lender, LLC ("Corban"), the holder of a second mortgage lien on the Property, filed its *Motion for Relief from Stay to Proceed with Foreclosure Action* [ECF No. 14] (the "Corban Lift Stay Motion"), seeking similar relief to this Motion.[5]

---

[5] To the extent the Corban Lift Stay Motion and this Motion do not conflict, Wabash joins in the substance of the Corban Lift Stay Motion.

## RELIEF REQUESTED

17. Wabash respectfully requests that this Court lift the automatic stay to allow the State Court Case to proceed, or, alternatively, dismiss the Symmetry Case.

## BASIS FOR RELIEF

**A. The Court should Lift the Automatic Stay to Allow Wabash to Proceed in the State Court Case.**

18. The Court should lift the automatic stay to allow Wabash to proceed in the State Court Case foreclosure proceeding.

### i. Relief from the Automatic Stay is Appropriate Pursuant to Section 362(d)(2) of the Bankruptcy Code

19. Section 362(d) provides that:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
>> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>>
>>> (A) the debtor does not have an equity in such property; and
>>>
>>> (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d)(2).

20. Symmetry failed to file its Schedules and SOFA by the June 13, 2023 deadline, but the value of the Property is substantially less than the Judgment. To determine whether there is any equity in the Property, amount of outstanding debt on the Property and the value of the Property must be considered.

21. Wabash believes that the Property is worth significantly less than the Judgment.

6

Not only does the Judgment dwarf Wabash's opinion of the Property's value, there is a second-priority lien on the Property, held by Corban, who is owed not less than $21,442,129.37. See, e.g., *Corban Kauai Chicago Lender, LLC's Motion for Entry of Order of Judgment of Foreclosure* (the "Corban Motion," attached to the Carmel Declaration as Exhibit G) at ¶ 18; Corban Lift Stay Motion.

22. Symmetry does not have any equity in the Property. In fact, the most recent appraisal of the Property indicates that its value is not greater than $17.7 million, which is far less than the Judgment and Corban's judgement, combined. Corban Lift Stay Motion at ¶ 18. In any event, Wabash believes that, due to the deteriorating nature of the Property, that it is now worth significantly less. Suffice it to say, Symmetry does not have any equity in the Property, because the indebtedness due and owing to Wabash and Corban is substantially greater than the value of the Property.

23. Moreover, the Property is clearly not necessary for an effective *reorganization*, as Symmetry cannot possibly confirm a plan or sell the Property for an amount that could possibly make both lenders whole and pay administrative expenses. In fact, Symmetry had four years to propose a workable sale during the State Court Case and failed to do so.

24. The automatic stay should be lifted in order for Wabash to proceed with the State Court Case and Sale because there is no equity in the Property and the Property is not necessary for a successful reorganization.

    **ii. The Automatic Stay May be Lifted Due to Symmetry's Bad Faith in Filing**

25. In addition, the automatic stay may be lifted under section 362(d)(1) because Symmetry lacked good faith in filing its petition. "A lack of good faith in filing a petition constitutes cause for relief from the stay under 11 U.S.C. § 362(d)(1)." In re Posner, 610 B.R. 586,

7

4884-7962-2762, v. 1

591 (Bankr. N.D. Ill. 2019). As set forth below, Symmetry did not file the Symmetry Case in good faith, given the "totality of the circumstances," but rather for the sole reason of halting a foreclosure sale, just one day prior to the Sale. The automatic stay may therefore be lifted on those grounds as well.

    **B.  Dismissal of the Symmetry Case is Appropriate Under the Circumstances**

    26.    In the alternative, the Symmetry Case should be dismissed as a "bad faith" filing. Section 1112(b) of the Bankruptcy Code provides that "on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause …" 11 U.S.C. § 1112(b).

    27.    It is well established that a chapter 11 case is subject to dismissal for cause if not filed in good faith. Matter of Madison Hotel Associates, 749 F.2d 410 (7th Cir. 1984). Bankruptcy courts are increasingly intolerant of cases filed in bad faith and look to the totality of the circumstances when evaluating whether a petition has been filed in good faith. In re Local Union 722 Intern. Broth. Of Teamsters, 414 B.R. 443, 447 (Bankr. N.D. Ill. 2009) (citing In re Original IFPC Shareholders, Inc., 317 B.R. 738, 750 (Bankr. N.D. Ill. 2004)).

    28.    To be clear, bad faith does not require any "bad" conduct. Rather, courts look to objective factors to find bad faith. While section 1112(b) of the Bankruptcy Code sets forth a number of grounds that may constitute "cause" to dismiss, this list is not exhaustive, and a case may be dismissed or converted for causes other than those specifically identified in the Bankruptcy Code. See In re Tekena USA, LLC, 419 B.R. 341, 346 (Bankr. N.D. Ill. 2009); Matter of Strug-Division, LLC, 375 B.R. 445, 448 (Bankr. N.D. Ill. 2007). For example, Judge Cox in Tekena, looked for the presence of some of these factors:

i. The debtor has few or no unsecured creditors (see § i infra).

ii. There has been a previous bankruptcy petition by the debtor or a related entity (does not apply in the Symmetry Case).

iii. The pre-petition conduct of the debtor has been improper (see § ii infra).

iv. The petition effectively allows the debtor to evade court orders (see § ii infra).

v. There are few debts to non-moving creditors (see § i infra).

vi. The petition was filed on the eve of foreclosure (see § iii infra).

vii. The foreclosed property is the sole or major asset of the debtor (see § iv infra).

viii. The debtor has no ongoing business or employees (see § v infra).

ix. There is no possibility of reorganization (see § v infra).

x. The debtor's income is not sufficient to operate (see § v infra).

xi. There was no pressure from non-moving creditors (see § i infra).

xii. Reorganization essentially involves the resolution of a two-party dispute (see § i infra).

xiii. A corporate debtor was formed and received title to its major assets immediately before the petition (does not apply in the Symmetry Case).

xiv. The debtor filed solely to create the automatic stay (see § iii infra).

Id. Other courts in this District have positively cited and considered the Tekena factors in their decision whether to dismiss a chapter 11 case. See, e.g., In re Lake Michigan Beach Pottawattamie Resort LLC, 547 B.R. 899, 905 (Bankr. N.D. Ill. 2016); In re Bovino, 496 B.R. 492, 499 (Bankr. N.D. Ill. 2013); In re LJBV LTD, 544 B.R. 401, 404 (Bankr. N.D. Ill. 2016); In re Medina, No. 14-27755, 2014 WL 5842988, at *4 (Bankr. N.D. Ill. Nov. 7, 2014).

29. Because twelve of the fourteen Tekena factors apply, the Symmetry Case should be dismissed as a bad faith filing.

4884-7962-2762, v. 1

> **i. Tekena Factors 1, 5, 11, and 12**. **Symmetry has Few or No Unsecured Creditors, There are Few Debts to Non-Moving Creditors, There is No Pressure From Non-Moving Creditors, and the Symmetry Case is Effectively a Two-Party Dispute.**

30. A number of the Tekena factors relate to the number, aggressiveness, and identity of the debtor's creditor body. The first, fourth, eleventh, and twelfth Tekena factors relate to the creditor body, go hand-in-hand, and are met in the Symmetry Case.

31. The first factor is that "the debtor has few or no unsecured creditors," and the fourth factor is that there are "few debts to non-moving creditors." Tekena, 419 B.R. 346. In the Symmetry Case, the petition indicates that there are only six total creditors, one of which is Wabash (and fails to list Corban).

32. Further, Corban has filed the Corban Lift Stay Motion. There is therefore no pressure from "non-moving creditors" (the eleventh factor of the Tekena test). Moreover, the Symmetry Case is essentially a two-party dispute (the twelfth factor of the Tekena test), as Wabash's outstanding debt significantly dwarfs the value of the Property and (presumably) the claims of all other general unsecured creditors. In re LJBV LTD, 544 B.R. 401, 406 (Bankr. N.D. Ill. 2016) (dismissing chapter 11 case that was "essentially the resolution of a two-party dispute"); In re Liptak, 304 B.R. 820, 831 (Bankr. N.D. Ill. 2004) (dismissing case that was "predominantly a two-party dispute between" the debtor and a single creditor).

> **ii. Tekena Factors 3 and 4**. **The Prepetition Conduct of Symmetry has Been Improper and the Filing of the Petition Effectively Allows Symmetry to Evade Court Orders**

33. While Symmetry's prepetition conduct does not necessarily shock the conscience, the State Court Case was pending for over four years and Symmetry failed to make any progress that could possibly stave off a foreclosure.

34. In addition, the filing of the Symmetry Case effectively allows Symmetry to evade

10

the Judgment of Foreclosure and the Sale that was to occur the day after the Petition Date. See, e.g., In re LJBV LTD, 544 B.R. 401, 405 (Bankr. N.D. Ill. 2016) (dismissing case where "the petition effectively allows the Debtor to evade the state court order appointing a receiver").

35. Thus, the third and fourth factors of the Tekena test are met in the Symmetry Case and favor dismissal.

### iii. Tekena Factors 6 and 14. The Petition was Filed on the Eve of Foreclosure and Symmetry Filed Solely to Create the Automatic Stay

36. The Petition was filed on the eve of the foreclosure Sale and Symmetry filed solely to receive the benefit of the automatic stay. Not only was the Symmetry Case filed months after the Judgment of Foreclosure, but it is undisputed that the case was filed the day before the Sale was to occur. Moreover, as is clear from Symmetry's lack of action during the pendency of the Symmetry Case, the case was filed simply to create the automatic stay and halt the Sale.

37. These factors are in favor of Wabash and warrant dismissal of the Symmetry Case.

### iv. Tekena Factor 7. The Foreclosed Property is the Sole or Major Asset of Symmetry

38. The foreclosed Property is the only major asset of Symmetry. Besides the Property, the remainder of the assets are unlikely to result in significant proceeds to creditors. Numerous cases have been dismissed where the sole asset of the debtor was a foreclosed property. In re Fairfield TIC, LLC, 594 B.R. 852, 862 (Bankr. E.D. Va. 2018) (dismissing case where sole asset was a fractional interest in a property); In re Serron Invs., Inc., No. 11-12566-MT, 2012 WL 2086501, at *3 (B.A.P. 9th Cir. June 8, 2012) (dismissing case where debtor's "sole asset" was a property in foreclosure). Dismissal is similarly appropriate for the Symmetry Case, as the seventh factor of the Tekena test favors Wabash.

> **v. Tekena Factors 8, 9, and 10.** Symmetry has no Ongoing Business or Employees, Symmetry's Income is not Sufficient to Operate, and Symmetry has no Possibility of Reorganization

39. It is undisputed that the Property is land on which Symmetry conducts no business other than the owning of the Property. In fact, the Receiver has been conducting the "business" of the Debtor for the last three and a half years. The lack of an ongoing business enterprise has been considered in connection with the dismissal of a chapter 11 case in this District. See, e.g., In re Original IFPC S'holders, Inc., 317 B.R. 738, 751 (Bankr. N.D. Ill. 2004) (dismissing a chapter 11 case where the debtor had, among other things, no "ongoing business to reorganize").

40. Finally, Symmetry does not have sufficient income (or equity in the Property) with which to operate or fund a plan of reorganization. See Corban Lift Stay Motion at ¶ 11. In fact, the Property does not generate sufficient cash flow to cover real estate taxes and insurance, as evidenced by the protective advances made by Wabash. Given Symmetry's lack of operations (other than the management of the Property), there is no possibility of reorganization. Indeed, the only thing Symmetry can possibly hope for is a sale or refinancing of the Property, which Symmetry has shown no evidence of thus far in the Symmetry Case, as there has been no sale motion filed (or any motion filed, for that matter). Even if it were to seek a sale, Symmetry has had four years to do so—it is similarly unlikely that a miracle will take place if Symmetry is given a few more months.

41. Because Symmetry does not conduct any substantial business, has insufficient income to fund the Symmetry Case, and cannot possibly reorganize, the dismissal of the Symmetry Case is necessary and appropriate.

42. To summarize, as set forth above, this is a clear case of a bad faith filing, as most of the Tekena factors are met. Symmetry's failure to file the proper documentation and comply

12

with basic rules upon the filing of the Petition is further evidence that this case should be considered a bad faith filing. See Corban Lift Stay Motion at ¶¶ 1-2. Therefore, the Symmetry Case should be dismissed.

C. **Dismissal of the Symmetry Case is Appropriate**

43. The question of whether conversion or dismissal is in the best interests of creditors and the estate is a question committed to the discretion of the bankruptcy court. In re Aurora Memory Care, LLC, 589 B.R. 631, 638 (Bankr. N.D. Ill. 2018). In answering that question, courts often weigh which course of action will lead to the largest number of creditors receiving the most amount of money in the shortest period of time. Id. at 643. Courts also compare how creditors would fare trying to collect from the debtor in bankruptcy court as opposed to outside of bankruptcy. Id. In comparing those two scenarios, a key question is the availability of estate assets for a chapter 7 trustee to liquidate and use to pay creditors the money the debtor owes them. Id.

44. As set forth above, Symmetry has very few creditors other than Wabash and Corban and also has no significant assets other than the Property. Thus, there would be very little for a chapter 7 trustee to liquidate and it is unlikely that there would be significant funds available to administer the case.

45. Moreover, even if there were significant assets to administer, conversion to chapter 7 would simply add another layer of administrative expenses (in the form of trustee's fees) to Symmetry's estate and further reduce the potential recovery of creditors.

46. Finally, this Court should enter an order barring Symmetry from filing another chapter 11 case in the next year.[6] This treatment is more than appropriate as Symmetry has shown

---

[6] For the avoidance of doubt, in the event that this Court will not dismiss the Symmetry Case with prejudice, Wabash wishes to move forward only with the lift stay portion of this Motion.

its willingness to file simply in order to gain the benefit of the automatic stay. Indeed, Wabash would be severely prejudiced if Symmetry were to file bankruptcy again on the eve of yet another proposed sale date.

### D. Limited Notice is Appropriate under the Circumstances

47. Rule 2002(a)(4) of the Bankruptcy Rules provides that twenty-one days' notice must be provided to all creditors in advance of a "hearing on the dismissal of the case or the conversion of the case to another chapter." Fed. R. Bankr. P. 2002(a)(4). Section 105(a) of the Bankruptcy Code provides that "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Further, Bankruptcy Rule 9006(d) permits a court to fix any period of notice by order. Fed. R. Bankr. P. 9006(d). This Motion is being sent to all creditors of the Debtor on greater than seven days' notice. Given the severe lack of equity in the Property and limited number of creditors, Wabash requests that the Court limit notice of this Motion as set forth herein.

*[Remainder of Page Intentionally Left Blank]*

**WHEREFORE**, Wabash respectfully requests that this Court enter an order substantially in the form submitted herewith granting the relief requested herein and such further relief as may be equitable and just.

Dated:  June 21, 2023

Respectfully submitted,

**WABASH SUPERIOR 1, LLC**

By:  /s/ Sean P. Williams
Sean P. Williams, Esq.
**LEVENFELD PEARLSTEIN, LLC**
120 S. Riverside Plaza, Suite 1800
Chicago, Illinois 60606
Telephone: 312-346-8380
e-mail: swilliams@lplegal.com

-and-

Stuart L. Kossar, Esq. (admitted *pro hac vice*)
**KRISS & FEUERSTEIN LLP**
360 Lexington Avenue, 12th Floor
New York, New York, 10017
Telephone: 212-661-2900
e-mail: skossar@kandfllp.com

4884-7962-2762, v. 1