# EXHIBIT 1

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| SYMMETRY TOWER/CHICAGO | ) | Case No. 23-07151 |
| PROJECT OWNER, LLC, | ) |  |
|  | ) |  |
|  | ) | Honorable David D. Cleary |
| Debtors.[1] | ) |  |

**DECLARATION OF SHOSHANA CARMEL IN SUPPORT OF MOTION FOR RELIEF**
**FROM THE AUTOMATIC STAY OR, IN THE ALTERNATIVE,**
**MOTION TO DISMISS CHAPTER 11 CASE**

I, Shoshana Carmel, being duly sworn, state the following under penalty of perjury.

1.      I am a director of Wabash Superior 1, LLC.

2.      I am in all respects competent to make this declaration (the "Declaration") in support of the motion (the "Motion")[2] to lift the automatic stay or dismiss the Symmetry Case. Except as otherwise noted herein, I have personal knowledge of the matters set forth herein and, if called as a witness, would testify competently thereto.

3.      A true and correct copy of the Note is attached hereto as Exhibit A.

4.      A true and correct copy of the Mortgage is attached hereto as Exhibit B.

5.      The Property consists of the following parcels: (a) 737 N. Wabash Ave., Chicago Illinois 60611 (a small parking lot); (b) 739 N. Wabash Ave., Chicago, Illinois 60611 (a three-car garage with storage above); (c) 42 E. Superior St., Chicago, Illinois 60611 (a three-flat with restaurant space); (d) 44 E. Superior Street, Chicago, Illinois 60611 (a multi-level (3) commercial

---

[1]      The Debtors in these chapter 11 cases are Symmetry Tower/Chicago Project Owner, LLC (Case No. 23-07151) and SPD II Makaiwa Resort Development, LLC (Case No. 23-07153).

[2]      Capitalized terms used but not defined herein shall have the meaning given to such term in the Motion.

space); and (e) 46 E. Superior Street, Chicago, Illinois 60611 (a multi-level mixed use space).

6.     Symmetry failed to comply with the terms and provisions of the Note and Mortgage, by among other things, failing and omitting to pay the installments of principal and interest which became due and owing on March 1, 2019, and each subsequent month thereafter, constituted and event of default under the Note and/or Mortgage.

7.     A true and correct copy of the Complaint (without exhibits) is attached hereto as Exhibit C.  The Complaint sought: (i) a judgment of foreclosure and sale; (ii) an order granting no redemption period; (iii) an *in personam* judgment for a deficiency, if sought; (iv) an order granting possession, if sought; (v) an order placing the mortgagee in possession or appointing a receiver, if sought; (vi) a judgment for attorneys' fees, costs and expenses; and (vii) such other and further relief as equity may require.

8.     A true and correct copy of the Receiver Order is attached hereto as Exhibit D.

9.     A true and correct copy of the Judgment of Foreclosure is attached hereto as Exhibit E.

10.    A true and correct copy of the Sale Notice is attached hereto as Exhibit F.

11.    A true and correct copy of Corban Motion is attached hereto as Exhibit G.

*[Remainder of Page Intentionally Left Blank]*

Under 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 20, 2023

_____
Shoshana Carmel

# EXHIBIT A

# MORTGAGE NOTE

$8,100,000.00

Dated: As of July 24, 2018
New York, New York

      **MORTGAGE NOTE** (hereinafter, this "**Note**") made as of the 24th day of July, 2018, by **SYMMETRY TOWER/CHICAGO PROJECT OWNER, LLC**, a New York limited liability company, having an address at One Pennsylvania Plaza, 19th Floor, New York, New York 10119 (hereinafter, the "**Maker**"), for the benefit of **WABASH SUPERIOR 1 LLC**, a Delaware limited liability company, its successors and/or assigns, as their interests may appear (hereinafter, the "**Payee**"), having offices at 825 Third Avenue, 37th Floor, New York, New York 10022.

      **FOR VALUE RECEIVED**, Maker hereby promises to pay to the order of Payee, at 825 Third Avenue, 37th Floor, New York, New York 10022, or at such other place as Payee may designate to Maker in writing from time to time, the principal sum of Eight Million One Hundred Thousand and 00/100 Dollars ($8,100,000.00), together with interest thereon at the Interest Rate (as defined below) (or the Default Rate, as defined below, if applicable), calculated in accordance with the terms and conditions set forth in this Note, from and including the date of this Note to the date this Note is paid in full, as follows:

      A.     On the date hereof (the "**Closing Date**"), interest on the principal sum of this Note from (and including) the Closing Date to July 31, 2018 at the Interest Rate.

      B.     Thereafter, interest only at the Interest Rate on the outstanding Principal Balance (as defined below) shall be due monthly and shall be paid monthly in arrears, commencing on August 1, 2018, and monthly thereafter on the first (1st) day of each month (the "**Payment Date**") until the Maturity Date (as defined below) (each such monthly payment, a "**Monthly Payment**").

      C.     Thereafter, on the Maturity Date, the entire outstanding principal balance of this Note, together with all accrued and unpaid interest through the Maturity Date at the Interest Rate, and all other sums payable to the holder of this Note (whether pursuant to this Note or the Mortgage or Other Security Documents (as such terms are hereinafter defined)) shall become due and payable.

1.     For the purposes of this Note, these terms shall be defined as follows:

      a.     The term "**Alternative Rate**" shall mean, in the event LIBOR is no longer available or charging of interest that is calculated based upon LIBOR would violate applicable law or regulation, then in Payee's sole discretion, the Alternative Rate shall be used instead of the Libor Based Rate, which shall mean either the Prime Based Rate (as hereinafter defined) or the AARC Based Rate, as hereinafter defined (in Payee's sole discretion as to whether Prime Based Rate or the AARC Based Rate shall be used).

      b.     The term "**AARC Based Rate**" shall mean the sum of (i) Ten and 00/100 percent (10.00%) per annum plus (ii) the AARC Rate (as hereinafter defined).

c.     The term "**AARC Rate**" shall mean such replacement of LIBOR as may be approved by the Alternative Reference Rates Committee (ARRC) (or comparable organization) and approved and/or published by the Federal Reserve; provided, however, in no event shall the AARC Rate be less than 2.06363%.

d.     The term "**Business Day**" shall mean a weekday, Monday through Friday, except a legal holiday or a day on which banking institutions in New York, New York are authorized by law to be closed.

e.     The term "**Debt**" shall mean all principal, interest and other sums of any nature whatsoever, which may or shall become due to Payee in accordance with the provisions of this Note, the Mortgage or Other Security Documents.

f.     The term "**Interest Period**" shall mean, initially, the period commencing on (and including) the Closing Date and ending on (and including) the last day of the calendar month in which the Closing Date occurs. Thereafter, each Interest Period shall commence on (and include) the first day of each calendar month immediately following the last day of the previous Interest Period and end on (and include) the last day of such calendar month.

g.     The term "**Interest Rate**" as used in this Note shall mean interest at the annual rate equal to the greater of (i) Seven and 00/100 Percent (7.00%) per annum plus the Prime Rate (collectively, the "**Prime Based Rate**"), (ii) Ten and 00/100 Percent (10.00%) per annum plus LIBOR (collectively, the "**LIBOR Based Rate**"), and (iii) Twelve and 00/100 Percent (12.00%) per annum (the "**Fixed Based Rate**"), adjusted for each Interest Period based upon the greater of the Prime Based Rate, the LIBOR Based Rate (or the Alternative Rate, as applicable) and the Fixed Base Rate at 11:00 a.m. (E.S.T.) two (2) Business Days prior to the Reset Date (as defined below) applicable to such Interest Period (or the date hereof with respect to the first Interest Period hereunder), which Interest Rate shall be applicable from the date of this Note to the Maturity Date, except as otherwise expressly provided herein. Notwithstanding the foregoing, in the event LIBOR is no longer available or charging interest that is calculated based in LIBOR would violate applicable law or regulation, the LIBOR Base Rate shall be replaced with the Alternative Rate.

h.     The term "**LIBOR**" shall mean the London Interbank Offered Rate (as defined below) for U.S. dollar deposits being delivered in the London interbank eurodollar market of one (1) month maturity (One Month LIBOR) as reported in the Money Rates Section of the Wall Street Journal (or such other commercially available source providing quotations of such London Interbank Offered Rate as may be designated by Payee from time to time) as of 11:00 a.m., E.S.T., on a Business Day (or if not so reported, then as determined by Payee from another recognized source of interbank quotation), rounded up to the nearest one-eighth of one percent (1/8%). A certificate made by an officer of Payee stating the LIBOR in effect on any given day, for the purposes hereof, shall be conclusive evidence of the LIBOR in effect on such day. The LIBOR is a base reference rate of interest adopted by Payee as a general benchmark from which Payee determines the floating interest rates

chargeable on various loans to borrowers with varying degrees of creditworthiness, and Maker acknowledges and agrees that Payee has made no representations whatsoever that the LIBOR is the interest rate actually offered by Payee to borrowers of any particular creditworthiness.

i. The term **"Loan Documents"** shall mean this Note, the Mortgage and all and any of the documents now or hereafter executed by Maker and/or others and by or in favor of Payee, which evidences, secures or guarantees all or any portion of the payments due under this Note or otherwise is executed and/or delivered in connection with this Note, the Mortgage, guarantees and agreements.

j. The term **"London Interbank Offered Rate"** shall mean the London interbank offered rate administered by ICE Benchmark Administration Limited (or any other Person which takes over the administration of such rate).

k. The term **"Maturity Date"** shall mean the earlier of (i) August 1, 2019, or (ii) such sooner date, by acceleration or otherwise, as may be applicable pursuant to the terms hereof, at which time the entire Debt shall become due and payable.

l. The term **"Mortgage"** shall mean that certain Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated as of the date hereof, in the principal amount of $8,100,000.00, encumbering premises located at 739 N. Wabash Avenue, Chicago, Illinois 60611; 42 E. Superior Street, Chicago, Illinois 60611; and 44-46 E. Superior Street, Chicago, Illinois 60611 (collectively, the **"Property"**).

m. The term **"Other Security Documents"** shall mean any of the documents other than this Note or the Mortgage, now or hereafter executed by the Maker or others, and by or in favor of Payee, which wholly or partially secure or guarantee payment of this Note, or which otherwise pertain to the loan evidenced by this Note (the **"Loan"**).

n. The term **"Person"** shall mean an individual, a corporation, a partnership, a limited liability company, an association, a trust or any other entity or organization, including a government or political subdivision or an agency or instrumentality thereof.

o. The term **"Prime Rate"** shall mean the annual rate of interest which is the highest prime lending rate of interest most recently in effect (as published in the Money Rates Section in The Wall Street Journal or if The Wall Street Journal fails to publish such rate, such other publication as Payee shall designate in its sole discretion). A certificate made by an officer of Payee stating the Prime Rate in effect on any given day, for the purposes hereof, shall be conclusive evidence of the Prime Rate in effect on such day. The Prime Rate is a base reference rate of interest adopted by Payee as a general benchmark from which Payee determines the floating interest rates chargeable on various loans to borrowers with varying degrees of creditworthiness and Maker acknowledges and agrees that Payee has

made no representations whatsoever that the Prime Rate is the interest rate actually offered by Payee to borrowers of any particular creditworthiness. In the event that the concept of the Prime Rate shall no longer exist, then the Prime Rate shall be deemed to be the Prime Rate as last reported in The Wall Street Journal.

p.      The term **"Principal Balance"** shall mean the outstanding principal balance of this Note from time to time.

q.      The term **"Reset Date"** shall mean the first day of each Interest Period.

2.      Any capitalized terms used herein but not defined shall have the meanings ascribed to them in the Mortgage or Other Security Documents.

3.      Interest shall be computed on the basis of a year of 360 days and actual days elapsed.

4.      The failure to make any payment required under this Note or the occurrence of any Event of Default (as such term is defined in the Mortgage or the Other Security Documents) that continues beyond the expiration of any applicable grace, notice or cure period shall constitute an Event of Default under this Note.

5.      Upon the occurrence of an Event of Default: (a) interest shall accrue hereunder at the Default Rate prior to and subsequent to the entry of a Judgment of Foreclosure and Sale, (b) Payee may, at its option, without any written notice given to the Maker (such notice being expressly waived), DECLARE AND DEMAND this Note and the Debt immediately due and payable and (c) Payee may pursue all rights and remedies available hereunder or under Mortgage and the Other Security Documents. Payee's rights, remedies and powers, as provided in this Note, the Mortgage or the Other Security Documents are cumulative and concurrent, and may be pursued singly, successively or together against Maker, any Guarantor of the indebtedness evidenced hereby or against any collateral granted or pledged by Maker under any of the Loan Documents or any other collateral security given at any time to secure the payment hereof, all at the sole discretion of Payee. Additionally, Payee may resort to every other right or remedy available at law or in equity without first exhausting the rights and remedies contained herein, all in Payee's sole discretion. Failure of Payee, for any period of time or on more than one occasion, to DECLARE AND DEMAND this Note and the Debt immediately due and payable shall not constitute a waiver of the right to exercise the same at any time from and after any Event of Default.

6.      A payment shall not be deemed to have been made on any day unless such payment has been received by Payee, at the required place of payment, in U.S. dollars by no later than 2:00 p.m. (New York time) on such day. Whenever any payment to Payee hereunder would otherwise be due (except by reason of acceleration) on a day that is not a Business Day, such payment shall instead be due on the next succeeding Business Day. If any installment of principal, interest or other sums due hereunder or under the Mortgage or any Other Security Document are not paid on the date on which same are due, the Maker shall pay to the Payee a late charge of ten percent (10.00%) of such unpaid installment as a late payment charge, such late charge to be immediately due and payable without demand by the Payee. Notwithstanding anything to the contrary, all payments due under this Note, the Mortgage and the Loan Documents shall be made by means of wire transfer to the order of Payee, as directed by Payee, and Payee shall have the absolute right

to reject any payment not made by wire transfer. In addition, Maker shall pay to Payee the sum of $2,500.00 for any payment which is returned for any reason by Maker's bank unpaid.

7.     Subject to Payee's due diligence review and completion of a credit check, satisfactory to Payee in its sole discretion, and provided that: (i) this Note, the Mortgage and the Other Security Documents are in full force and effect and there exists no Event of Default at the time of the giving of Maker's notice to extend, (ii) Maker has made all Monthly Payments in accordance with the terms and conditions hereof and (iii) Maker establishes with and funds to Payee an interest reserve (or, if one is established simultaneously herewith, then replenishes such interest reserve) for the payment of all interest to become due at the applicable Interest Rate during the applicable Extended Term, as calculated by Payee, including, without limitation, execution of all documentation reasonably required by Payee to establish such interest reserve, if applicable, then Maker shall have the option, upon providing written notice to Payee (in the manner provided in the Mortgage) to extend the term of this Note for two (2) consecutive periods of six (6) months each (each, an **"Extended Term"**, with the applicable extended maturity dates being known as the **"First Extended Term Maturity Date"** and the **"Second Extended Term Maturity Date"**, if and as applicable). Maker's notice of its intention to extend the term of this Note shall not be effective unless, with respect to each Extended Term, such notice is delivered along with payment in an amount equal to One Percent (1.0%) of the sum of the Principal Balance. Maker's notice must be received by Payee no earlier than one hundred twenty (120) days prior to the initial Maturity Date (or the First Extended Term Maturity Date, if and as applicable) and no later than thirty (30) days prior to the initial Maturity Date (or the First Extended Term Maturity Date, if and as applicable), *time being of the essence with respect thereto*. Any extension of the term as set forth herein shall be on the same terms and conditions of this Note, the Mortgage and the Other Security Documents, except as otherwise provided in this Note, the Mortgage and the Other Security Documents. Notwithstanding anything herein to the contrary, the term of this Note may not be extended unless, simultaneously with such extension, the term of the Other Loan and the Other Note (as such terms are hereinafter defined) are also extended in accordance with terms thereof.

8.     If Maker does not properly exercise the extension option extending the term of this Note until the First Extended Term Maturity Date (or the Second Extended Term Maturity Date, if and as applicable), in accordance herewith, and Maker does not otherwise pay the Debt to Payee on or before the Maturity Date (or the First Extended Term Maturity Date, if and as applicable), then Payee may elect, at its sole discretion, to extend the term of this Note until the First Extended Term Maturity Date (or the Second Extended Term Maturity Date, if and as applicable) (each, a **"Payee's Option to Extend"**) by delivering written notice thereof to Maker (in the manner provided in the Mortgage). If Payee elects to exercise a Payee's Option to Extend in accordance herewith, an extension fee in the amount of One and 50/100 Percent (1.5%) of the sum of the Principal Balance (the **"Deferred Extension Fee"**) shall be earned as of the date Payee exercises each such option, but payment of a Deferred Extension Fee shall be deferred until the earlier of the (i) First Extended Term Maturity Date (or the Second Extended Term Maturity Date, if and as applicable); (ii) the date upon which this Note is prepaid in full; or (iii) the occurrence of an Event of Default under the Loan Documents.

9.     As additional consideration to Payee for the making of the Loan, Maker shall remit to Payee, due, owing and earned on the earlier of (a) the Maturity Date (subject to extension as contained herein), (b) the date of the acceleration of the Principal Balance in accordance with the

Loan Documents, or (c) the date upon which this Note is prepaid in full, TIME BEING OF THE ESSENCE, in addition to the entire Principal Balance then remaining unpaid, all accrued and unpaid interest, any Prepayment Premium due and owing and all others sums due and owing under the Loan Documents, the sum equal to **$81,000.00** (the "**Exit Fee**"). The Exit Fee is to be paid in accordance with the terms hereof in addition to, and separate from, any other fee, cost or sum due hereunder or under the Mortgage or Loan Documents, including the Prepayment Premium. Payment of the Exit Fee is an absolute obligation of the Maker, and the Exit Fee shall be paid regardless of whether the Maturity Date is as stated herein, or earlier due to acceleration of the Principal Balance by Payee in accordance with the terms hereof and regardless of the amount actually advanced to Maker. Provided, however, if the Exit Fee constitutes interest under applicable law, the amount of the Exit Fee will be automatically reduced to an amount that, when added to all other amounts due hereunder and under the other Loan Documents that constitute interest under applicable law, will not exceed the maximum amount of interest that may be contracted for, charged or received with respect to the Loan under applicable law for the actual period of time such loan is outstanding.

Amounts paid pursuant to the Exit Fee and the Prepayment Premium shall and are intended to be exclusive of each other, and payment of the Exit Fee and the Prepayment Premium shall not act as an offset or reduction of the other.

10.    (a)    Subject to the following provisions, provided that, simultaneously with any prepayment of the Debt, Maker shall pay to Payee a prepayment premium in an amount equal to nine (9) Monthly Payments (based upon the principal sum of $8,100,000.00, regardless of the amount actually advanced to Maker) (excluding short term interest paid for the partial month of July, 2018) which would have been due and payable to Payee absent prepayment of the obligations hereunder (with the Interest Rate used to calculate the Initial Term Prepayment Premium (as defined below) being that on the date of the Initial Term Prepayment Notice (as defined below), if the Interest Rate is variable hereunder), less any Monthly Payments of interest actually paid in full by Maker and received by Payee, such that Payee shall have received not less than nine (9) full Monthly Payments hereunder (based upon the principal sum of $8,100,000.00, regardless of the amount actually advanced to Maker) (the "**Initial Term Prepayment Premium**"), then Maker shall have the right to prepay the Principal Balance in whole only, along with interest, additional interest, and any other sums due under this Note, the Mortgage or the Other Security Documents upon prior irrevocable written notice sent by Maker (an "**Initial Term Prepayment Notice**"), setting forth the intended prepayment date ("**Initial Term Prepayment Date**"), which Initial Term Prepayment Notice must be received by Payee not more than sixty (60) days prior to the Initial Term Prepayment Date and not less than thirty (30) days prior to the Initial Term Prepayment Date and on the Initial Term Prepayment Date, Maker shall make prepayment as herein above provided, failure of which to timely prepay shall result in a $1,000 prepayment cancellation fee to compensate Payee for expenses associated with Maker's failure to comply with its request and is not a penalty. Notwithstanding anything to the contrary contained herein, unless prepayment is tendered on the first day of a calendar month and unless Maker has tendered the Monthly Payment for the month in which the prepayment of the Debt occurs, Maker shall along with the prepayment of the Debt pay the entire Monthly Payment due for the month in which the Initial Term Prepayment Date occurs (which amount shall constitute additional consideration for the prepayment).

(b)     Notwithstanding anything to the contrary contained herein, if Maker elects to exercise its option to extend the term of this Note in accordance herewith (or if Payee exercises Payee's Option to Extend), simultaneously with any prepayment of the Debt during any Extended Term, in addition to the Initial Term Prepayment Premium, Maker shall also pay to Payee an additional prepayment premium in an amount equal to three (3) Monthly Payments (based upon the principal sum of $8,100,000.00, regardless of the amount actually advanced to Maker) which would have been due and payable to Payee during and on account of the Extended Term, absent prepayment of the obligations hereunder (with the Interest Rate used to calculate the Extended Term Prepayment Premium being that on the date of the Extended Term Prepayment Notice, if the Interest Rate is variable hereunder), less any Monthly Payments of interest actually paid in full by Maker and received by Payee during and on account of the Extended Term, such that Payee shall have received not less than three (3) full Monthly Payments hereunder (based upon the principal sum of $8,100,000.00, regardless of the amount actually advanced to Maker) during and on account of the Extended Term (the "**Extended Term Prepayment Premium**" and together with the Initial Term Prepayment Premium, hereinafter referred to, collectively, as the "**Prepayment Premium**"), then Maker shall have the right to prepay the Principal Balance in whole only, along with interest, additional interest, and any other sums due under this Note, the Mortgage or the Other Security Documents upon prior irrevocable written notice sent by Maker (an "**Extended Term Prepayment Notice**" and together with the Initial Term Prepayment Notice, hereinafter referred to, collectively, as the "**Prepayment Notice**"), setting forth the intended prepayment date ("**Extended Term Prepayment Date**" and together with the Initial Term Prepayment Date, hereinafter referred to, collectively, as the "**Prepayment Date**"), which Extended Term Prepayment Notice must be received by Payee not more than sixty (60) days prior to the Extended Term Prepayment Date and not less than thirty (30) days prior to the Extended Term Prepayment Date and on the Extended Term Prepayment Date, Maker shall make prepayment as herein above provided, failure of which to timely prepay shall result in a $1,000 prepayment cancellation fee to compensate Payee for expenses associated with Maker's failure to comply with its request and is not a penalty.

(c)     **SUCH PREPAYMENT PREMIUM SHALL BE PAID WHETHER THE PREPAYMENT IS VOLUNTARY OR INVOLUNTARY, INCLUDING ANY PREPAYMENT AFFECTED BY THE ACCELERATION PROVISIONS CONTAINED IN THE NOTE OR THE OTHER LOAN DOCUMENTS. UPON ACCELERATION, THE PREPAYMENT PREMIUM SHALL BE CALCULATED BASED UPON THE AMOUNT OF THE PREPAYMENT DUE ON THE DATE OF SUCH ACCELERATION; PROVIDED, HOWEVER, IF SUCH PREPAYMENT PREMIUM CONSTITUTES INTEREST UNDER APPLICABLE LAW, THE AMOUNT OF SUCH PREPAYMENT PREMIUM WILL BE REDUCED TO AN AMOUNT WHICH, WHEN ADDED TO ALL OTHER AMOUNTS WHICH CONSTITUTE INTEREST UNDER APPLICABLE LAW, WILL NOT EXCEED THE MAXIMUM AMOUNT OF INTEREST WHICH MAY BE CONTRACTED FOR, CHARGED OR RECEIVED WITH RESPECT TO THE LOAN EVIDENCED HEREBY UNDER APPLICABLE LAW FOR THE ACTUAL PERIOD OF TIME THE LOAN IS OUTSTANDING.**

11.     Intentionally omitted.

12.     Separate and in addition to all other payment obligations of Maker contained herein, Maker

shall be required to pay a yearly servicing fee equal to ten (10) basis points per annum on the maximum Principal Balance of this Note payable in monthly installments (the "**Servicing Fee**"). The Maker acknowledges and agrees that the Servicing Fee for the first (1st) year shall be due and payable on the date hereof (which shall prepay the first yearly Servicing Fee), and the obligation to pay the Servicing Fee in the future shall be secured by the Mortgage.

13.     Maker acknowledges that this Note and Maker's obligations under this Note are and shall at all times continue to be absolute and unconditional in all respects. This Note, the Mortgage and the Other Security Documents set forth the entire agreement and understanding of Payee and Maker.

14.     Maker agrees to pay all costs and expenses of collection incurred by Payee, in addition to principal and interest (including, without limitation, reasonable attorneys' fees and disbursements), and including all costs and expenses incurred in connection with the pursuit by Payee of any of its rights or remedies hereunder or under the Mortgage and/or the Other Security Documents or the protection of or realization of collateral or in connection with any of Payee's collection efforts, whether or not any action or proceeding on this Note, on the Mortgage and/or the Other Security Documents or any foreclosure proceeding is filed, all such costs and expenses being payable on demand, together with interest at the Default Rate thereon and being secured by the Mortgage and the Other Security Documents.

15.     The indebtedness herein evidenced by this Note is secured by the Mortgage and the Other Security Documents.

16.     THIS NOTE HAS BEEN EXECUTED AND DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF NEW YORK AND, EXCEPT AS OTHERWISE PROVIDED IN HEREIN, THIS NOTE, THE MORTGAGE AND EACH OF THE OTHER SECURITY DOCUMENTS SHALL IN ALL RESPECTS BE GOVERNED, CONSTRUED, APPLIED AND ENFORCED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW (OTHER THAN SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW).

NOTWITHSTANDING THE FOREGOING CHOICE OF LAW:

(i)     THE PROCEDURES GOVERNING THE ENFORCEMENT BY PAYEE OF ITS FORECLOSURE AND OTHER REMEDIES AGAINST MAKER UNDER THE MORTGAGE AND UNDER THE OTHER SECURITY DOCUMENTS WITH RESPECT TO THE PREMISES (AS SUCH TERM IS DEFINED IN THE MORTGAGE) OR OTHER ASSETS SITUATED IN THE STATE OF ILLINOIS, INCLUDING BY WAY OF ILLUSTRATION, BUT NOT IN LIMITATION, ACTIONS FOR FORECLOSURE, FOR INJUNCTIVE RELIEF OR FOR THE APPOINTMENT OF A RECEIVER SHALL BE GOVERNED BY THE LAWS OF THE STATE OF ILLINOIS;

(ii)     PAYEE SHALL COMPLY WITH APPLICABLE LAW IN THE STATE OF ILLINOIS TO THE EXTENT REQUIRED BY THE LAW OF SUCH JURISDICTION IN CONNECTION WITH THE FORECLOSURE OF THE SECURITY INTERESTS AND LIENS

CREATED UNDER THE MORTGAGE AND THE OTHER SECURITY DOCUMENTS WITH RESPECT TO THE PREMISES OR OTHER ASSETS SITUATED IN THE STATE OF ILLINOIS; AND

(iii)    PROVISIONS OF FEDERAL LAW AND THE LAW OF THE STATE OF ILLINOIS SHALL APPLY IN DEFINING THE TERMS HAZARDOUS SUBSTANCES AND ENVIRONMENTAL LAWS (AS SUCH TERMS ARE DEFINED IN THE OTHER SECURITY DOCUMENTS) APPLICABLE TO THE PREMISES.

NOTHING CONTAINED HEREIN OR ANY OTHER PROVISIONS OF THE MORTGAGE OR OTHER SECURITY DOCUMENTS SHALL BE CONSTRUED TO PROVIDE THAT THE SUBSTANTIVE LAWS OF THE STATE OF ILLINOIS SHALL APPLY TO ANY PARTIES, RIGHTS AND OBLIGATIONS UNDER THIS NOTE, THE MORTGAGE OR THE OTHER SECURITY DOCUMENTS, WHICH, EXCEPT AS EXPRESSLY PROVIDED IN CLAUSES (I), (II) AND (III) ABOVE, ARE AND SHALL CONTINUE TO BE GOVERNED BY THE SUBSTANTIVE LAW OF THE STATE OF NEW YORK, EXCEPT AS SET FORTH IN CLAUSES (I), (II) AND (III) ABOVE. IN ADDITION, THE FACT THAT PORTIONS OF THIS NOTE, THE MORTGAGE AND THE OTHER SECURITY DOCUMENTS MAY INCLUDE PROVISIONS DRAFTED TO CONFORM TO THE LAW OF THE STATE OF ILLINOIS IT IS NOT INTENDED, NOR SHALL IT BE DEEMED, IN ANY WAY, TO DEROGATE THE PARTIES' CHOICE OF LAW AS SET FORTH OR REFERRED TO IN THIS NOTE, THE MORTGAGE OR IN THE OTHER SECURITY DOCUMENTS. THE PARTIES FURTHER AGREE THAT THE PAYEE MAY ENFORCE ITS RIGHTS UNDER THIS NOTE, THE MORTGAGE AND THE OTHER SECURITY DOCUMENTS INCLUDING, BUT NOT LIMITED TO, ITS RIGHTS TO SUE THE MAKER OR TO COLLECT ANY OUTSTANDING INDEBTEDNESS IN ACCORDANCE WITH APPLICABLE LAW.

17.    Maker does hereby agree that upon the occurrence of an Event of Default that continues beyond the expiration of any applicable grace, notice or cure period, or upon the failure of Maker to pay the Debt in full on the Maturity Date, Payee shall be entitled to receive and Maker shall pay interest on the entire Debt at the rate of twenty-four percent (24%) per annum or at the maximum rate of interest which Maker may by law pay, whichever is lower (the "**Default Rate**"), to be computed from the occurrence of the Event of Default until the actual receipt and collection of the Debt, including all periods prior to or subsequent to the entry of a Judgment of Foreclosure and Sale. This charge shall be added to the Debt and shall be deemed secured by the Mortgage. This clause, however, shall not be construed as an agreement or privilege to extend the date of the payment of the Debt, nor as a waiver of any other right or remedy accruing to Payee by reason of the occurrence of any Event of Default.

18.    This Note is subject to the express condition that at no time shall Maker be obligated or required to pay interest on the Principal Balance at a rate which could subject Payee to either civil or criminal liability as a result of being in excess of the maximum rate which Maker is permitted by law to contract or agree to pay. For the purposes of calculating the actual amount of interest paid and or payable, in respect of laws pertaining to usury or such other laws, all sums paid or agreed to be paid to Payee for the use, forbearance or detention of the indebtedness evidenced hereby shall, to the extent permitted by applicable law, be amortized, allocated and spread from the date of disbursement of the proceeds thereof until payment in full of the Loan obligations, so

that the actual rate of interest on account thereof is uniform throughout the term hereof. If, by the terms of this Note, Maker is at any time required or obligated to pay interest on the Principal Balance at a rate in excess of such maximum rate, the rate of interest under this Note shall be deemed to be immediately reduced to such maximum rate, and interest payable hereunder shall be computed at such maximum rate and the portion of all prior interest payments in excess of such maximum rate shall be applied and shall be deemed to have been payments in reduction of the Principal Balance.

19.     No delay on the part of Payee in exercising any right or remedy under this Note, the Mortgage or the Other Security Documents or failure to exercise the same shall operate as a waiver in whole or in part of any such right or remedy. No notice to or demand on Maker shall be deemed to be a waiver of the obligation of Maker or of the right of Payee to take further action without further notice or demand as provided in this Note, the Mortgage and the Other Security Documents.

20.     Each of Payee's rights and remedies under this Note shall be in addition to all of its other rights and remedies under the Mortgage, Other Security Documents and applicable law.

21.     **TIME IS OF THE ESSENCE** with regard to Maker's performance of all the terms, covenants and conditions of this Note.

22.     Any provision of this Note, the Mortgage or the Other Security Documents that is prohibited or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions thereof or affecting the validity or enforceability of such provision.

23.     All of the provisions of this Note shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

24.     Maker hereby warrants, represents and covenants that no funds disbursed hereunder shall be used for personal family or household purposes.

25.     Maker (and the undersigned representative of Maker, if any) represents that Maker has full power, authority and legal right to execute and deliver this Note and that the Debt hereunder constitutes a valid and binding obligation of Maker.

26.     All notices to be given under this Note shall be given in the same manner as provided in the Mortgage.

27.     This Note, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Maker or Payee, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

28.     Without limiting any other provisions of the Mortgage or the Loan Documents, Maker, for itself and all endorsers, guarantors and sureties of this Note, and their heirs, legal representatives, successors and assigns, hereby waives valuation, appraisement, presentment for payment, demand, notice of nonpayment, notice of dishonor, protest of any dishonor, notice of protest and protest of this Note, lack of diligence, delays in collection or enforcement of this Note, notice of the intention

to accelerate, the benefit of all applicable law affording any right or redemption or cure and all other notices in connection with the delivery, acceptance, performance, default or enforcement of the payment of this Note, except as expressly provided herein or in the Mortgage or any of the Other Security Documents, and in connection with any suit, action or proceeding brought by Payee on this Note, any and every right it may have to (a) a trial by jury, (b) interpose any counterclaim therein (other than a counterclaim which can only be asserted in a suit, action or proceeding brought by Payee on this Note and cannot be maintained in a separate action), and (c) have the same consolidated with any other or separate suit, action or proceeding, and agrees that their respective liability shall be unconditional and without regard to the liability of any other party and shall not be in any manner affected by any indulgence, extension of time, renewal, waiver or modification granted or consented to by Payee. Maker, for itself and all endorsers, guarantors and sureties of this Note, and their heirs, legal representatives, successors and assigns, hereby consents to every extension of time, renewal, waiver or modification that may be granted by Payee with respect to the payment or other provisions of this Note, and to the release of any makers, endorsers, guarantors or sureties, and their heirs, legal representatives, successors and assigns, and of any collateral given to secure the payment hereof, or any part hereof, with or without substitution, and agrees that additional makers, endorsers, guarantors or sureties and their heirs, legal representatives, successors and assigns, may become parties hereto without notice to Maker or to any endorser, guarantor or surety and without affecting the liability of any of them.

29.     FOR ANY CLAIM, ACTION, OR DISPUTE ARISING UNDER, OR TO INTERPRET OR APPLY, THIS NOTE OR ANY OTHER SECURITY DOCUMENT, OR TO RESOLVE ANY DISPUTE ARISING UNDER THE FOREGOING OR THE RELATIONSHIP BETWEEN THE PARTIES, MAKER IRREVOCABLY SUBMITS TO THE NONEXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK AND THE UNITED STATES DISTRICT COURT LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK CITY, NEW YORK, AND APPELLATE COURTS FROM ANY OF SUCH COURTS. MAKER IRREVOCABLY WAIVES ANY OBJECTION THAT IT MAY HAVE AT ANY TIME TO VENUE OF ANY SUCH SUIT, ACTION, OR PROCEEDING BROUGHT IN ANY SUCH COURT, INCLUDING ANY CLAIM THAT ANY SUCH SUIT, ACTION, OR PROCEEDING SO BROUGHT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. NOTHING IN THE MORTGAGE OR OTHER SECURITY DOCUMENTS SHALL BE DEEMED TO PRECLUDE PAYEE FROM BRINGING ANY SUIT, ACTION, OR PROCEEDING RELATING TO ANY OTHER SECURITY DOCUMENT OR THE DEBT IN ANY OTHER JURISDICTION WHERE PAYEE COULD OTHERWISE PROPERLY BRING SUCH SUIT, ACTION, OR PROCEEDING. MAKER FURTHER CONSENTS AND AGREES TO SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER LEGAL PROCESS IN ANY SUCH SUIT, ACTION OR PROCEEDING BY REGISTERED OR CERTIFIED U.S. MAIL, POSTAGE PREPAID, TO MAKER AT THE ADDRESS SET FORTH ON PAGE 1 HEREOF, AND CONSENTS AND AGREES THAT SUCH SERVICE SHALL CONSTITUTE IN EVERY RESPECT VALID AND EFFECTIVE SERVICE (BUT NOTHING HEREIN SHALL AFFECT THE VALIDITY OR EFFECTIVENESS OF PROCESS SERVED IN ANY OTHER MANNER PERMITTED BY LAW).

30.     To the extent applicable, in an action commenced in the Commercial Division, New York State Supreme Court, the parties hereby agree, subject to the requirements for a case to be heard in the Commercial Division, to apply the Court's accelerated adjudication procedures set forth in

Rule 9 of the Rules of Practice for the Commercial Division, in connection with any dispute, claim or controversy arising out of or relating to this Note or any of the Loan Documents, or the breach, termination, enforcement or validity thereof.

31.    In case a court finds that Maker is not such a primary obligor with respect to all or any part of such obligations, the Maker expressly waives the benefit of any and all defenses and discharges available to a guarantor, surety, endorser or accommodation party dependent on an obligor's character as such.  Without limiting the generality of the foregoing, the liability of the Maker hereunder shall not be affected or impaired in any way by any of the following acts or things (which the Payee is hereby expressly authorized to do, omit or suffer from time to time without notice to or consent of anyone): (a) any acceptance of collateral security, guarantors, accommodation parties or sureties for any or all indebtedness arising under this Note, the Mortgage or the Other Security Documents; (b) any extension or renewal of any such indebtedness (whether or not for longer than the original period) or any modification of the interest rate, maturity or other terms of any such indebtedness; (c) any waiver or indulgence granted to either Maker, and any delay or lack of diligence in the enforcement of the indebtedness arising under this Note, the Mortgage or the Other Security Documents; (d) any release of, compromise or settlement with, or agreement not to sue, either Maker or any guarantor or other person liable on any such indebtedness; (e) any release, surrender, cancellation or other discharge of any indebtedness arising under this Note, the Mortgage or the Other Security Documents, or the acceptance of any instrument in renewal or substitution for any instrument evidencing any such indebtedness; (f) any failure to obtain collateral security (including rights of setoff) for any indebtedness arising under this Note, the Mortgage or the Other Security Documents, or to see to the proper or sufficient creation and perfection thereof, or to establish the priority thereof, or to preserve, protect, insure, care for, exercise or enforce any collateral security for any such indebtedness; (g) any modification, alteration, substitution, exchange, surrender, cancellation, termination, release or other change, impairment, limitation, loss or discharge of any collateral security for any such indebtedness; (h) any assignment, sale, pledge or other transfer of any of the indebtedness arising under this Note, the Mortgage or the Other Security Documents; or (i) any manner, order or method of application of any payments or credits on any indebtedness arising under this Note, the Mortgage or the Other Security Documents.  Each Maker also hereby waives any right of contribution, subrogation, indemnification or other right arising as a result of any payment made toward the Debt of the other Maker.

32.    Maker hereby waives, for the benefit of the Payee: (a) any right the Payee, as a condition of payment or performance by either Maker, to (i) proceed against the other Maker or any other person or entity, (ii) proceed against or exhaust any collateral for the Debt held from the other Maker or any other person or entity, (iii) proceed against or have resort to any balance of any deposit account, securities account, or credit on the books of the Payee in favor of the other Maker or any other person or entity, or (iv) pursue any other remedy in the power of the Payee whatsoever; (b) any defense arising by reason of the incapacity, lack of authority or any disability or other defense of the other Maker, including any defense based on or arising out of the lack of validity or the unenforceability of the Debt or any agreement or instrument relating thereto or by reason of the cessation of the liability of the other Maker from any cause other than payment in full of the Debt; (c) any defense based upon any statute or rule of law which provides  that the obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal; (d) any defense based upon the Payee's errors or omissions in the administration of the

Debt; (e) (i) any principles or provisions of law, statutory or otherwise, which are or might be in conflict with the terms hereof and any legal or equitable discharge of its obligations hereunder, (ii) the benefit of any statute of limitations affecting its liability hereunder or the enforcement hereof, (iii) any rights to set-offs, recoupments and counterclaims, and (iv) promptness, diligence and any requirement that the Payee protect, secure, perfect or insure any security interest or lien or any property subject thereto; (f) notices, demands, presentments, protests, notices of protest, notices of dishonor and notices of any action or inaction, including acceptance hereof, notices of default thereunder or under this Note, the Mortgage or the Other Security Documents, any agreement or instrument related thereto, notices of any renewal, extension or modification of the Debt or any agreement related thereto, notices of any extension of credit to the other Maker and notices of any matters referred to in any guaranty securing this Note and any right to consent to any thereof; and (g) any defenses or benefits that may be derived from or afforded by law which limit the liability of or exonerate sureties, or which may conflict with the terms hereof.

**[Remainder of Page Intentionally Left Blank]**

**IN WITNESS WHEREOF**, Maker has duly executed this Note the day and year first above written.

> **SYMMETRY TOWER/CHICAGO PROJECT OWNER, LLC,**
> a New York limited liability company
>
> By: _____
> Name: Jeffrey Lawrence Laytin
> Title: Manager

STATE OF NEW YORK )
                        ) ss.:
COUNTY OF NEW YORK )

On the 23rd day of July, in the year 2018, before me, the undersigned, a Notary Public in and for said State, personally appeared Jeffrey Lawrence Laytin, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

CAROLINE G. MALAPERO
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02MA6319569
Qualified in New York County
Commission Expires February 23, 20 19

# EXHIBIT B

**PREPARED BY AND
AFTER
RECORDING RETURN TO:**

WABASH SUPERIOR 1 LLC
c/o Madison Realty Capital
825 Third Avenue, 37th Floor
New York, New York 10022
Attention: Shoshana Carmel

(For Recorder's Use Only)

**SYMMETRY TOWER/CHICAGO PROJECT OWNER, LLC**
(Mortgagor)

To

**WABASH SUPERIOR 1 LLC**
(Mortgagee)

## MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

Dated:       As of July 24, 2018

Premises:    739 N. Wabash Avenue
                    42 E. Superior Street
                    44-46 E. Superior Street
                    Chicago, Illinois 60611

**ATTENTION: COUNTY CLERK - THIS MORTGAGE COVERS GOODS THAT ARE OR ARE TO BECOME FIXTURES ON THE REAL PROPERTY DESCRIBED HEREIN AND IS TO BE FILED FOR RECORD IN THE RECORDS WHERE MORTGAGES ON REAL ESTATE ARE RECORDED. ADDITIONALLY, THIS MORTGAGE SHOULD BE APPROPRIATELY INDEXED, NOT ONLY AS A MORTGAGE, BUT ALSO AS A FIXTURE FILING COVERING GOODS THAT ARE OR ARE TO BECOME FIXTURES ON THE REAL PROPERTY DESCRIBED HEREIN. THE MAILING ADDRESSES OF THE MORTGAGOR (DEBTOR) AND MORTGAGEE (SECURED PARTY) ARE SET FORTH IN THIS MORTGAGE.**

**THIS MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING** (hereinafter referred to as this "**Mortgage**") made as of the 24th day of July, 2018, by **SYMMETRY TOWER/CHICAGO PROJECT OWNER, LLC**, a New York limited liability company, having an address at One Pennsylvania Plaza, 19th Floor, New York, New York 10119 (hereinafter, "**Mortgagor**"), to **WABASH SUPERIOR 1 LLC**, a Delaware limited liability company, its successors and/or assigns, as their interests may appear, having offices at 825 Third Avenue, 37th Floor, New York, New York 10022 (hereinafter, the "**Mortgagee**").

## W I T N E S S E T H :

**WHEREAS**, Mortgagor is the fee owner of the real property described in Schedule A attached hereto (hereinafter, collectively, the "**Premises**");

**WHEREAS**, Mortgagor is the maker of that certain note of even date herewith in favor of Mortgagee, as same now exists or may hereinafter be amended, modified, supplemented, extended, renewed, restated or replaced (hereinafter, the "**Note**") in the principal sum of EIGHT MILLION ONE HUNDRED THOUSAND AND 00/100 DOLLARS ($8,100,000.00), together with interest (said principal sum, interest and all other sums which may or shall become due under the Note or under this Mortgage, being hereinafter, collectively, the "**Debt**");

**NOW, THEREFORE**, in consideration of the loan made as of the date hereof by Mortgagee to Mortgagor and other good and lawful consideration, the receipt and sufficiency of which are hereby acknowledged, to secure to Mortgagee (a) repayment of the Debt and all renewals, modifications and extensions thereof; (b) payment of all other sums advanced in accordance with the terms of the Note or this Mortgage in order to protect the security hereof, together with interest thereon, and (c) performance of the agreements of Mortgagor contained herein, it is agreed as follows:

The Mortgagor hereby mortgages, warrants, grants, assigns, releases, transfers, pledges and sets over to Mortgagee and grants to Mortgagee a lien on and security interest in all of the right, title, interest and estate of Mortgagor, now owned, or hereafter acquired, in and to the following property, rights, interests and estates (such property, rights and interests being hereinbefore and hereinafter, collectively, the "**Mortgaged Property**"):

    (a)    the Premises;

    (b)    all buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter located on the Premises (hereinafter, collectively, the "**Improvements**");

    (c)    all easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights, and development rights, as well as any and all inclusionary air rights, certificates, floor area compensation rights, and/or density bonuses which may have been or may otherwise be created by, through or in connection with the Premises and/or any portion of the Mortgaged Property in accordance with any inclusionary housing or other program regulated by

the State of Illinois or any other applicable municipal or governmental authority, all rights to oil, gas, minerals, coal and other substances of any kind or character, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever, in any way belonging, relating or pertaining to the Premises and the Improvements and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road, highway, alley or avenue, opened, vacated or proposed, in front of or adjoining the Premises, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtsey and rights of curtsey, property, possession, claim and demand whatsoever, both at law and in equity, of Mortgagor of, in and to the Premises and the Improvements and every part and parcel thereof, with the appurtenances thereto;

(d)     all machinery, furniture, furnishings, equipment, computer software and hardware, fixtures (including, without limitation, all heating, air conditioning, plumbing, lighting, communications and elevator fixtures) and other property of every kind and nature, whether tangible or intangible, whatsoever owned by Mortgagor, or in which Mortgagor has or shall have an interest, now or hereafter located upon the Premises and the Improvements, or appurtenant thereto, and usable in connection with the present or future operation and occupancy of the Premises and the Improvements and all building equipment, materials and supplies of any nature whatsoever owned by Mortgagor, or in which Mortgagor has or shall have an interest, now or hereafter located upon the Premises and the Improvements, or appurtenant thereto, or usable in connection with the present or future operation, enjoyment and occupancy of the Premises and the Improvements (hereinafter collectively referred to as the "**Equipment**"), including any leases of any of the foregoing, any deposits existing at any time in connection with any of the foregoing, and the proceeds of any sale or transfer of the foregoing, and the right, title and interest of Mortgagor in and to any of the Equipment that may be subject to any "security interests", as defined in the Uniform Commercial Code, as adopted and enacted by the State or States where any of the Mortgaged Property is located (the "**UCC**"), superior in lien to the lien of this Mortgage;

(e)     all awards or payments, including interest thereon, that may heretofore and hereafter be made with respect to the Premises and the Improvements, whether from the exercise of the right of eminent domain or condemnation (including, without limitation, any transfer made in lieu of or in anticipation of the exercise of said rights), or for a change of grade, or for any other injury to or decrease in the value of the Premises and the Improvements;

(f)     all leases and other agreements or arrangements heretofore or hereafter entered into affecting the use, enjoyment or occupancy of, or the conduct of any activity upon or in, the Premises and the Improvements, including any

extensions, renewals, modifications or amendments thereof (hereinafter collectively referred to as the "**Leases**"; the term *"Leases"* as used herein shall expressly exclude month to month tenancies for which there is no written agreement) and all rents, rent equivalents, moneys payable as damages or in lieu of rent or rent equivalents, royalties (including, without limitation, all oil and gas or other mineral royalties and bonuses), income, fees, receivables, receipts, revenues, deposits (including, without limitation, security, utility and other deposits), accounts, cash, issues, profits, charges for services rendered, and other payment and consideration of whatever form or nature received by or paid to or for the account of or benefit of Mortgagor or its agents or employees from any and all sources arising from or attributable to the Premises and the Improvements (hereinafter collectively referred to as the "**Rents**") together with all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Debt;

(g)     all proceeds of and any unearned premiums on any insurance policies covering the Mortgaged Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Mortgaged Property;

(h)     the right, in the name and on behalf of Mortgagor, to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to commence any action or proceeding to protect the interest of Mortgagee in the Mortgaged Property; all accounts, escrows, documents, instruments, investment property, chattel paper, claims, deposits and general intangibles, as the foregoing terms are defined in the UCC, and all franchises, trade names, trademarks, symbols, service marks, books, records, plans, specifications, designs, drawings, permits, consents, licenses, management agreements, contract rights (including, without limitation, any contract with any architect or engineer or with any other provider of goods or services for or in connection with any construction, repair, or other work upon the Mortgaged Property), approvals, actions, refunds of real estate taxes and assessments (and any other governmental impositions related to the Mortgaged Property), and causes of action that now or hereafter relate to, are derived from or are used in connection with the Mortgaged Property, or the use, operation, maintenance, occupancy or enjoyment thereof or the conduct of any business or activities thereon (hereinafter collectively referred to as the "**Intangibles**");

(i)     the Prepaid Interest, as defined and governed by that certain Prepaid Interest Agreement among Mortgagor and Mortgagee, dated the date hereof, if any;

(j)     all contracts, permits, development rights, plans, specifications, blueprints, and tax abatements related to the Mortgaged Property; and

(k)     all proceeds, products, offspring, rents and profits from any of the

foregoing, including, without limitation, those from sale, exchange, transfer, collection, loss, damage, disposition, substitution, or replacement of any of the foregoing.

**Mortgagor represents and warrants to and covenants
and agrees with Mortgagee as follows:**

SECTION 1. **Payment of Debt and Incorporation of Covenants, Conditions and Agreements.**

Mortgagor will pay the Debt at the time and in the manner provided in the Note and in this Mortgage. All the covenants, conditions and agreements contained in (a) the Note and (b) all and any of the documents other than the Note or this Mortgage now or hereafter executed by Mortgagor and/or others and by or in favor of Mortgagee, which wholly or partially secure or guaranty payment of the Note (collectively, the "**Other Security Documents**", and together with the Note and this Mortgage, collectively, the "**Loan Documents**"), are hereby made a part of this Mortgage to the same extent and with the same force as if fully set forth herein.

As part of the Debt, Mortgagor shall pay all monitoring fees and all other fees, costs and expenses due and payable by Mortgagee to any third parties in connection with the Loan. In addition to the foregoing (provided that the Maturity Date has been extended in accordance with the terms of the Note), on the first annual anniversary of the date of this Mortgage, and on each annual anniversary thereafter while the Debt is outstanding, Mortgagor shall pay to Mortgagee an appraisal fee in the amount of Two Thousand Five Hundred and 00/100 Dollars ($2,500.00).

Notwithstanding anything to the contrary contained herein or in the Other Security Documents, all payments due under the Note, this Mortgage and the Other Security Documents shall be made by means of wire transfer to the order of Mortgagee, as directed by Mortgagee, and Mortgagee shall have the absolute right to reject any payment not made by wire transfer.

SECTION 2. **Application of Payments.**

Unless applicable law provides otherwise, all payments received by Mortgagee from Mortgagor under the Note or this Mortgage shall be applied by Mortgagee in the following order of priority: (i) amounts payable to Mortgagee by Mortgagor under Section 6 hereof; (ii) late charges payable under the Note; (iii) interest payable on the Note; (iv) all applicable prepayment premiums, (v) principal of the Note; (vi) interest payable on advances made pursuant to Section 24 hereof; (vii) principal of advances made pursuant to Section 24 hereof; and (viii) any other sums secured by this Mortgage in such order as Mortgagee, at Mortgagee's option, may determine; provided, however, that Mortgagee may, at Mortgagee's option, apply any sums payable pursuant to Section 24 hereof prior to interest on and principal of the Note, but such application shall not otherwise affect the order of priority of application specified in this Section 2.

SECTION 3. **Warranty of Title.**

Mortgagor warrants that Mortgagor has good title to the Mortgaged Property and has the right to mortgage, warrant, give, grant, bargain, sell, alienate, enfeoff, convey, confirm, pledge, assign and hypothecate the same and that Mortgagor possesses an unencumbered fee estate

- 5 -

in the Premises and the Improvements and that it owns the Mortgaged Property free and clear of all liens, encumbrances and charges whatsoever except for those exceptions shown in the title insurance policy insuring the lien of this Mortgage, and that this Mortgage is and will remain a valid and enforceable first (1st) lien against the Mortgaged Property, subject only to said exceptions. Mortgagor shall forever warrant, defend and preserve such title and the validity and priority of the lien of this Mortgage and shall forever warrant and defend the same to Mortgagee against the claims of all persons whomsoever.

SECTION 4. **Insurance.**

(a)     Mortgagor will keep the Mortgaged Property insured against loss or damage by fire, flood (if in flood hazard area) and such other hazards, risks and matters, including, without limitation, business interruption, rental loss, builder's risk, terrorism, public liability, and boiler damage and liability, as Mortgagee may from time to time require in amounts required by Mortgagee, and shall pay the premiums for such insurance (collectively, the "**Insurance Premiums**") as the same become due and payable. All policies of insurance (collectively, the "**Policies**") shall be issued by insurers acceptable to Mortgagee and shall contain all applicable standard Illinois mortgagee non-contribution clauses naming Mortgagee as the person to which all payments made by such insurance company shall be paid. Mortgagor will assign and deliver the Policies to Mortgagee. Not later than thirty (30) days prior to the expiration date of each of the Policies, Mortgagor will deliver evidence satisfactory to Mortgagee of the renewal of each of the Policies. Prior to or on the date hereof, Mortgagor shall deliver evidence satisfactory to Mortgagee that Mortgagor has paid for the Insurance Premiums covering the period commencing on the date hereof up to and including the Maturity Date, as such term is defined in the Note. All Policies shall be issued by companies approved by Mortgagee and licensed to do business in the state where the Mortgaged Property is located, with a claims paying ability rating of "BBB" or better by Standard & Poor's Ratings Services, a division of McGraw-Hill Companies, Inc. and a rating of "A:IX" or better in the current Best's Insurance Reports.

(b)     In the event of loss, Mortgagor shall give immediate written notice to the insurance carrier and to Mortgagee. Mortgagor hereby authorizes and empowers Mortgagee as attorney-in-fact, coupled with an interest, for Mortgagor to make proof of loss, to adjust and compromise any claim under insurance policies, to appear in and prosecute any action arising from such insurance policies, to collect and receive insurance proceeds, and to deduct therefrom Mortgagee's expenses incurred in the collection of such proceeds (said insurance proceeds, after such deduction of expenses, being hereinafter the "**Net Proceeds**"); provided, however, that nothing contained in this subsection (b) shall require Mortgagee to incur any expense or take any action hereunder. Mortgagor further authorizes Mortgagee, at Mortgagee's option, either (i) to hold the Net Proceeds for the account of Mortgagor to be used to reimburse Mortgagor for the cost of reconstruction or repair of the Mortgaged Property (hereinafter, the "**Restoration**") or (ii) to apply the Net Proceeds to the payment of the sums secured by this Mortgage, whether or not then due, in such priority and proportions as Mortgagee in its discretion shall deem proper, but any such repayment shall not be deemed voluntary prepayment for which a prepayment premium is due.

(c)     If the Net Proceeds are applied to the payment of the sums secured by this Mortgage, any such application of proceeds to principal shall neither, extend or postpone the due dates of the monthly installments to be made pursuant to the Note, nor shall such application

change the amounts of such installments. If the Mortgaged Property is sold pursuant to Section 22 hereof or if Mortgagee acquires title to the Mortgaged Property, Mortgagee shall have all of the right, title and interest of Mortgagor in and to any insurance policies and unearned premiums thereon and in and to the proceeds resulting from any damage to the Mortgaged Property prior to such sale or acquisition.

(d)     The excess, if any, of the Net Proceeds remaining after payment of the entire Debt as provided herein shall be paid to Mortgagor.

(e)     Anything in this Section to the contrary notwithstanding in the event of a casualty resulting in damage to the Mortgaged Property, if Mortgagee in its sole discretion makes the Net Proceeds available for Restoration, same shall be made available in accordance with the terms and provisions set forth below and provided that:

(i)     Mortgagor delivers to Mortgagee an opinion of an architect designated by Mortgagor and reasonably satisfactory to Mortgagee (the "**Supervising Architect**"), together with such other documentation as Mortgagee may reasonably request, evidencing to the satisfaction of Mortgagee that the Restoration of the Mortgaged Property may be completed so as to constitute an architecturally whole and economically feasible building at least equal in value and condition to the Mortgaged Property immediately prior to the casualty;

(ii)     no Event of Default has occurred and is continuing hereunder and no default has otherwise occurred under the terms of this Mortgage, the Note, or any of the Other Security Documents which remains uncured beyond the applicable notice and/or grace period;

(iii)     in the event the Net Proceeds are not sufficient in Mortgagee's reasonable opinion to pay in full the Restoration (hereinafter referred to as the "**Work**"), Mortgagor shall deposit with Mortgagee sufficient funds, if necessary in the reasonable opinion of Mortgagee, such that together with the Net Proceeds, sufficient funds shall be readily available for the Restoration of the Mortgaged Property as nearly as practicable to its value and condition immediately prior to such casualty;

(iv)     Mortgagor delivers to Mortgagee complete plans and specifications (the "**Work Plans and Specs**") for the work to be performed in connection with the Restoration prepared and sealed by an architect reasonably satisfactory to Mortgagee with evidence satisfactory to Mortgagee of the approval of the Work Plans and Specs by all governmental authorities whose approval is required;

(v)     Mortgagor delivers to Mortgagee, in the event that the Work Plans and Specs are prepared by an architect other than the Supervising Architect, written approval of the Work Plans and Specs by the Supervising Architect;

(vi)     Mortgagor delivers to Mortgagee a signed estimate approved in writing by the Supervising Architect, bearing the Supervising Architect's seal, stating the entire cost of completing the Work; and

(vii) Mortgagor delivers to Mortgagee true copies certified by Mortgagor, or by the Supervising Architect or Mortgagor's general contractor or, if available, the governmental agency having jurisdiction thereof, of all permits and approvals required by law in connection with the commencement and conduct the Work.

(f) If the Net Proceeds are made available for the Restoration of the Mortgaged Property pursuant to the terms of paragraph (e) above, the costs, if any, to Mortgagee of recovering or paying out such Net Proceeds (including reasonable attorneys' fees and disbursements and reasonable costs incurred by Mortgagee in having the Work inspected and the Work Plans and Specs reviewed by the Supervising Architect) shall be promptly paid to Mortgagee on demand. In the event that the terms and conditions of paragraph (e) above have been satisfied in full, then the Net Proceeds shall be disbursed by Mortgagee as the Work progresses in accordance with customary construction loan advance procedures.

(g) Upon occurrence of an Event of Default under this Mortgage, or upon the failure by Mortgagor promptly to commence or diligently to continue the Work, Mortgagee may apply all or any portion of the Net Proceeds to the payment of the sums secured by this Mortgage, whether or not then due, in such priority and proportions as Mortgagee in its discretion shall deem proper.

(h) If at any time the Net Proceeds which are to be applied to the Restoration of the Mortgaged Property will be insufficient, in the reasonable judgment of Mortgagee, to pay the entire unpaid cost of the Restoration, Mortgagor shall pay the deficiency, or make provision satisfactory to Mortgagee for the payment thereof, prior to receiving any part of the Net Proceeds. Any balance of the Net Proceeds not required for the Restoration, upon completion of the Work and the reimbursement of Mortgagor in full of the payment of the Work shall, at Mortgagee's option, (i) be retained by Mortgagee and applied to the sums secured by this Mortgage, whether or not then due without premium or penalty, or (ii) be returned to Mortgagor.

SECTION 5. **Payment of Taxes, etc.**

Mortgagor shall pay all taxes, assessments, water rates, frontage charges and sewer rents, now or hereafter levied or assessed or imposed against the Mortgaged Property or any part thereof (collectively, the "**Taxes**") and all ground rents, maintenance charges, other governmental impositions and other charges, including, without limitation, vault charges and license fees for the use of vaults, chutes and similar areas adjoining the Premises, now or hereafter levied or assessed or imposed against the Mortgaged Property or any part thereof (collectively, the "**Other Charges**") as same become due and payable. Mortgagor will deliver to Mortgagee, promptly upon Mortgagee's request, evidence satisfactory to Mortgagee that the Taxes and Other Charges have been so paid or are not then delinquent. Mortgagor shall not suffer and shall promptly cause to be paid and discharged any lien or charge whatsoever which may be or become a lien or charge against the Mortgaged Property and shall promptly pay for all utility services provided to the Mortgaged Property. Mortgagor shall furnish to Mortgagee receipts for the payment of the Taxes, Other Charges and said utility services prior to the date the same shall become delinquent.

SECTION 6. **Escrow Fund.**

Mortgagor shall pay to Mortgagee, on the first day of each calendar month for the term of this Mortgage, an amount equal to (a) one-twelfth (1/12) of the amount which would be sufficient to pay the Taxes and the Other Charges which are payable, or estimated by Mortgagee to be payable, during the next ensuing twelve (12) months, and (b) at the option of Mortgagee, one-twelfth (1/12) of the amount which would be sufficient to pay the Insurance Premiums due for the renewal of the coverage afforded by the Policies upon the expiration thereof (said amounts in (a) and (b) above hereinafter collectively called the "**Escrow Fund**"). The Escrow Fund, together with the payments of interest or principal or both which are due pursuant to the provisions of the Note, shall be added together and shall be paid as an aggregate sum by Mortgagor to Mortgagee. Mortgagor hereby pledges to Mortgagee any and all monies now or hereafter deposited in the Escrow Fund as additional security for the payment of the Debt. Mortgagee will apply the Escrow Fund to payments of Taxes, Other Charges and Insurance Premiums required to be made by Mortgagor pursuant to Sections 4 and 5 hereof. If the amount of the Escrow Fund shall exceed the amounts due for Taxes and Insurance Premiums pursuant to Sections 4 and 5 hereof, Mortgagee shall, in its discretion, return any excess to Mortgagor or credit such excess against future payments to be made to the Escrow Fund. In allocating such excess, Mortgagee may deal with the person shown on the records of Mortgagee to be the owner of the Mortgaged Property. If the Escrow Fund is not sufficient to pay the items set forth in (a) and (b) above, Mortgagor shall promptly pay to Mortgagee, upon demand, an amount which Mortgagee shall estimate as sufficient to make up the deficiency. Upon the occurrence of an Event of Default (hereinafter defined) Mortgagee may apply any sums then present in the Escrow Fund to the payment of the following items in any order in its sole discretion:

(i)    Taxes and Other Charges;

(ii)   Insurance Premiums;

(iii)  Interest (including interest at the Default Rate when applicable) on the unpaid principal balance of the Note;

(iv)   Amortization of the unpaid principal balance of the Note;

(v)    All other sums payable pursuant to the Note, this Mortgage, and the Other Security Documents, including without limitation advances made by Mortgagee pursuant to the terms of this Mortgage.

Until expended or applied as above provided, any amounts in the Escrow Fund shall constitute additional security for the Debt. The Escrow Fund shall not constitute a trust fund and may be commingled with other monies held by Mortgagee. No earnings or interest on the Escrow Fund shall be payable to Mortgagor.

Notwithstanding anything to the contrary contained herein, the Mortgagor and Mortgagee covenant and agree that provided the Mortgagor is not in default under the Note, this Mortgage or any of the Other Security Documents beyond the expiration of any applicable notice, grace or cure period, and provided further that Mortgagor furnishes Mortgagee with proof that all Taxes and Other Charges are being paid as required under this Mortgage (which proof shall only be required to the extent that Mortgagee is not escrowing for the payment of such Taxes and Other

Charges), Mortgagee shall not require Mortgagor to make monthly installments for the payment of Taxes and Other Charges to the Escrow Fund.

SECTION 7. **Condemnation.**

(a)     Mortgagor shall promptly notify Mortgagee of any action or proceeding relating to any condemnation or other taking, whether direct or indirect, of the Mortgaged Property or any part thereof, and Mortgagor shall appear in and prosecute any such action or proceeding unless otherwise directed by Mortgagee in writing.   Mortgagor authorizes Mortgagee, at Mortgagee's option, as attorney-in-fact, coupled with an interest, for Mortgagor, to commence, appear in and prosecute, in Mortgagee's or Mortgagor's name, any action or proceeding relating to any condemnation or other taking of the Mortgaged Property, whether direct or indirect, and to settle or compromise any claim in connection with such condemnation or other taking.   The proceeds of any award, payment or claim for damages, direct or consequential, in connection with any condemnation or other taking, whether direct or indirect, of the Mortgaged Property or any part thereof, or for conveyances in lieu of condemnation, are hereby assigned to and shall be paid to Mortgagee.

(b)     Mortgagor authorizes Mortgagee to apply such awards, payments, proceeds or damages, after the deduction of Mortgagee's expenses incurred in the collection of such amounts, at Mortgagee's option, either (i) to restoration or repair of the Mortgaged Property, or (ii) to payment of the sums secured by this Mortgage, whether or not then due, in the order of application set forth in Section 2 hereof, with the balance, if any, to Mortgagor. Mortgagor agrees to execute such further evidence of assignment of any awards, proceeds, damages or claims arising in connection with such condemnation or taking as Mortgagee shall require.

(c)     Notwithstanding any taking by any public or quasi-public authority through eminent domain or otherwise (including but not limited to any transfer made in lieu of or in anticipation of the exercise of such taking), Mortgagor shall continue to pay the Debt at the time and in the manner provided for its payment in the Note and in this Mortgage, and the Debt shall not be reduced until any award or payment therefor shall have been actually received and applied by Mortgagee, after the deduction of expenses of collection, to the reduction or discharge of the Debt. Mortgagee shall not be limited to the interest paid on the award by the condemning authority but shall be entitled to receive out of the award interest at the rate or rates provided herein and in the Note. Mortgagee may apply any such award or payment to the reduction or discharge of the Debt whether or not then due and payable. Any reduction of the Debt pursuant to the terms of this Section 7 shall not be deemed a prepayment of the Debt and no prepayment premium, if any, shall be due. If the Mortgaged Property is sold, through foreclosure or otherwise, prior to the receipt by Mortgagee of such award or payment, Mortgagee shall have the right, whether or not a deficiency judgment on the Note shall have been sought, recovered or denied, to receive said award or payment, or a portion thereof sufficient to pay the Debt.

SECTION 8. **Leases and Rents.**

(a)     Mortgagor hereby absolutely and unconditionally assigns to Mortgagee all Leases now existing or hereafter made of all or any part of the Mortgaged Property, all Rents payable under such Leases, and all security deposits made by tenants in connection with such

Leases. Mortgagor hereby grants Mortgagee all of the rights and powers possessed by Mortgagor prior to such assignment, and upon an Event of Default under the Loan Documents Mortgagee is hereby granted the right to modify, extend or terminate the Leases and to execute new Leases, in Mortgagee's sole discretion. Mortgagee is hereby granted and assigned by Mortgagor the right to enter the Mortgaged Property for the purpose of enforcing its interest in the Leases and the Rents, this Mortgage constituting a present, absolute assignment of the Leases and the Rents. Nevertheless, subject to the terms of this Section 8, Mortgagee grants to Mortgagor a revocable license to operate and manage the Mortgaged Property and to collect the Rents, provided, however, that Mortgagor shall not modify, extend or terminate any Leases, or execute any new Leases without first obtaining Mortgagee's prior written consent. Mortgagor shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Debt, for use in the payment of such sums. Upon or at any time after an Event of Default, the license granted to Mortgagor herein may be revoked by Mortgagee, and Mortgagee may enter upon the Mortgaged Property, and collect, retain and apply the Rents toward payment of the Debt in such priority and proportions as Mortgagee in its discretion shall deem proper.

(b)     All Leases shall be written on the standard form of lease which standard form of lease shall be presented to Mortgagee for approval. Upon request, Mortgagor shall furnish Mortgagee with executed copies of all Leases and relevant documentation required to be filed with all Federal, State and City housing authorities and agencies.   No changes may be made to the Mortgagee-approved standard lease without the prior written consent of Mortgagee. In addition, all renewals of Leases and all proposed Leases shall provide for rental rates comparable to existing local market rates, which, in the case of residential Leases, shall not be in excess of the local registered rent for the apartment to which the Lease relates, and shall be arms-length transactions. All proposed Leases shall be subject to the prior approval of the Mortgagee. All Leases shall provide that they are subordinate to this Mortgage and that the lessee agrees to attorn to Mortgagee. Mortgagor (i) shall observe and perform all the obligations imposed upon the lessor under the Leases and shall not do or permit to be done anything to impair the value of the Leases as security for the Debt; (ii) shall promptly send copies to Mortgagee of all notice of default which Mortgagor shall send or receive thereunder; (iii) shall enforce all of the terms, covenants and conditions contained in the Leases upon the part of the lessee thereunder to be observed or performed, short of termination thereof; (iv) shall not collect any of the Rents more than one (1) month in advance; (v) shall not execute any other assignment of lessor's interest in the Leases or the Rents; (vi) shall not alter, modify or change the terms of the Leases without the prior written consent of Mortgagee, or cancel or terminate the Leases or accept a surrender thereof or convey or transfer or suffer or permit a conveyance or transfer of the Premises or of any interest therein so as to effect a merger of the estates and rights of, or a termination or diminution of the obligations of, lessees thereunder; (vii) shall not alter, modify or change the terms of any guaranty of the Leases or cancel or terminate such guaranty without the prior written consent of Mortgagee; (viii) shall not consent to any assignment of or subletting under the Leases not in accordance with their terms, without the prior written consent of Mortgagee; and (ix) shall execute and deliver at the request of Mortgagee all such further assurances, confirmations and assignments in connection with the Mortgaged Property as Mortgagee shall from time to time require.

(c)     Mortgagor represents and warrants that the Mortgagor self-manages the Mortgaged Property. Mortgagor will not cause or permit Mortgagor to engage a property manager without the written consent of Mortgagee.

SECTION 9.  **Maintenance of Mortgaged Property.**

Mortgagor shall cause the Mortgaged Property to be maintained in a good and safe condition and repair.  The Improvements and the Equipment shall not be removed, demolished or altered (except for normal replacement of the Equipment) without the consent of Mortgagee.  Mortgagor shall promptly comply with all laws, orders and ordinances affecting the Mortgaged Property or the use thereof.  Mortgagor shall promptly repair, replace or rebuild any part of the Mortgaged Property which may be destroyed by any casualty, or become damaged, worn or dilapidated, or which may be affected by any proceeding of the character referred to in Section 7 hereof, and Mortgagor shall complete and pay for any structure at any time in the process of construction or repair on the Premises.  Mortgagor shall not initiate, join in, acquiesce in, or consent to any change in any private restrictive covenant, zoning law or other public or private restriction, limiting or defining the uses which may be made of the Mortgaged Property or any part thereof.  If under applicable zoning provisions the use of all or any portion of the Mortgaged Property is or shall become a nonconforming use, Mortgagor will not cause or permit such nonconforming use to be discontinued or abandoned without the express written consent of Mortgagee.

SECTION 10. **Transfer or Encumbrance of the Mortgaged Property.**

(a)     Mortgagor acknowledges that Mortgagee has examined and relied on the creditworthiness of Mortgagor and experience of Mortgagor in owning and operating properties such as the Mortgaged Property in agreeing to make the loan secured hereby, and that Mortgagee will continue to rely on Mortgagor's ownership of the Mortgaged Property as a means of maintaining the value of the Mortgaged Property as security for repayment of the Debt.  Mortgagor acknowledges that Mortgagee has a valid interest in maintaining the value of the Mortgaged Property so as to ensure that, should Mortgagor default in the repayment of the Debt, Mortgagee can recover the Debt by a sale of the Mortgaged Property.  Mortgagor shall not, without the prior written consent of Mortgagee, which consent may be withheld in Mortgagee's sole discretion, have the right to sell, transfer, convey, alienate, mortgage, encumber, pledge or otherwise transfer the Mortgaged Property or any part thereof or permit the Mortgaged Property or any part thereof to be sold, conveyed, alienated, mortgaged, encumbered, pledged or otherwise transferred.

(b)     A sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer within the meaning of this Section 10 shall be deemed to include (i) an installment sales agreement wherein Mortgagor agrees to sell the Mortgaged Property or any part thereof for a price to be paid in installments; (ii) an agreement by Mortgagor leasing all or a substantial part of the Mortgaged Property for other than actual occupancy by a space tenant thereunder or a sale, assignment or other transfer of, or the grant of a security interest in, Mortgagor's right, title and interest in and to any Leases or any Rents; (iii) if Mortgagor, any Guarantor (hereinafter defined), or any general partner of Mortgagor or Guarantor is a corporation, the voluntary or involuntary sale, conveyance or transfer of such corporation's stock (or an interest in any entity directly or indirectly controlling such corporation by operation of law or otherwise) or the creation or issuance of new stock by which any of such corporation's stock shall be vested in a party or parties who are not now stockholders; (iv) if Mortgagor, any Guarantor or any general partner of Mortgagor or any Guarantor is a limited or general partnership or joint venture, the change, removal or resignation of a general partner or managing partner or the direct or indirect transfer of the partnership interest

of any general partner or managing partner; (v) if Mortgagor, any Guarantor or any member of Mortgagor or any Guarantor is a limited liability company, the change, removal or resignation of a member or manager or the transfer of an interest of any member or manager (or an interest in any entity directly or indirectly controlling such limited liability company by operation of law or otherwise) or the creation or issuance of new limited liability company membership interests by which any of such corporation's membership interests shall be vested in a party or parties who are not now members and (vi) any direct or indirect pledge hypothecation, assignment, transfer or other encumbrance of any ownership interest in Mortgagor.

(c)     Mortgagee reserves the right to condition the consent required hereunder upon a modification of the terms hereof and on assumption of this Mortgage as so modified by the proposed transferee, payment of a transfer fee, or such other conditions as Mortgagee shall determine in its sole discretion to be in the interest of Mortgagee. Mortgagee shall not be required to demonstrate any actual impairment of its security or any increased risk of default hereunder in order to declare the Debt immediately due and payable upon Mortgagor's sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property without Mortgagee's consent. This provision shall apply to every sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property regardless of whether voluntary or not, or whether or not Mortgagee has consented to any previous sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property.

(d)     Notwithstanding anything to the contrary provided for herein, Mortgagor shall be allowed to retain its existing Mortgage with Corban Kauai Chicago Lender, LLC (hereinafter "**Existing Lender**") dated as of May 23, 2017 and recorded with the county clear of Cook County as Recording No. 1714416047 (the "**Existing Mortgage**"), as such Existing Mortgage was modified pursuant to a modification agreement dated of even date herewith; _provided that_, the Existing Mortgage shall be subordinate in priority to the lien of this Mortgage pursuant to the terms of that certain Subordination of Mortgage and Intercreditor Agreement dated of even date herewith and executed by Mortgagee and the Existing Lender.

SECTION 11. **Estoppel Certificates.**

(a)     After request by Mortgagee, Mortgagor, within ten (10) days, shall furnish Mortgagee or those making requests by or on behalf of or through Mortgagee with a statement, duly acknowledged and certified, setting forth (i) the amount of the original principal amount of the Note, (ii) the unpaid principal amount of the Note, (iii) the rate of interest of the Note, (iv) the date installments of interest and/or principal were last paid, (v) any offsets or defenses to the payment of the Debt, if any, and (vi) that the Note and this Mortgage are valid, legal and binding obligations and have not been modified or if modified, giving particulars of such modification.

(b)     After request by Mortgagee, Mortgagor, within ten (10) days, will furnish Mortgagee with estoppel certificates from any lessees under the Leases as required by their respective Leases.

SECTION 12. **Changes in the Laws Regarding Taxation.**

If any law is enacted or adopted or amended after the date of this Mortgage which

deducts the Debt from the value of the Mortgaged Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Debt or Mortgagee's interest in the Mortgaged Property, Mortgagor will pay such tax, with interest and penalties thereof, if any. In the event Mortgagee is advised by counsel chosen by it that the payment of such tax or interest and penalties by Mortgagor would be unlawful or taxable to Mortgagee or unenforceable or provide the basis for a defense of usury, then in any such event, Mortgagee shall have the option, by written notice of not less than ninety (90) days, to declare the Debt immediately due and payable.

SECTION 13. **No Credits on Account of the Debt.**

Mortgagor will not claim or demand or be entitled to any credit or credits on account of the Debt for any part of the Taxes or Other Charges assessed against the Mortgaged Property, or any part thereof, and no deduction shall otherwise be made or claimed from the assessed value of the Mortgaged Property, or any part thereof, for real estate tax purposes by reason of this Mortgage or the Debt. In the event such claim, credit or deduction shall be required by law, Mortgagee shall have the option, by written notice of not less than ninety (90) days, to declare the Debt immediately due and payable.

SECTION 14. **Documentary Stamps.**

If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note or this Mortgage, or impose any other tax or charge on the same, Mortgagor will pay for the same, with interest and penalties thereon, if any.

SECTION 15. **Usury Laws.**

This Mortgage and the Note are subject to the express condition that at no time shall Mortgagor be obligated or required to pay interest on the Debt at a rate which could subject the holder of the Note to either civil or criminal liability as a result of being in excess of the maximum interest rate which Mortgagor is permitted by applicable law to contract or agree to pay. If by the terms of either this Mortgage or the Note, Mortgagor is at any time required or obligated to pay interest on the Debt at a rate in excess of such maximum rate, the rate of interest under the same shall be deemed to be immediately reduced to such maximum rate and the interest payable shall be computed at such maximum rate and all prior interest payments in excess of such maximum rate shall be applied and shall be deemed to have been payments in reduction of the principal balance of the Note.

SECTION 16. **Books and Records.**

(a) The Mortgagor (and Guarantors, if any) shall keep proper books, records and accounts with respect to the operation of the Mortgaged Property in accordance with sound accounting principles, consistently applied and shall furnish to the Mortgagee (i) within ninety (90) days after the end of each fiscal year of Mortgagor and at any other time upon Mortgagee's request (which request shall not be made more than two (2) timers in any calendar year), financial statements for the operation of the Mortgaged Property, including a balance sheet, a statement of income and expenses of the Mortgaged Property and a statement of changes in financial position, each in reasonable detail and certified by Mortgagor (or a principal of Mortgagor if Mortgagor is

not an individual) under penalty of perjury, to be true and complete, and, if Mortgagee shall require audited by an independent certified public accountant; (ii) within thirty (30) days following the close of each calendar quarter, quarter-annual financial statements (including a certified rent roll) in form satisfactory to the Mortgagee, which shall disclose in reasonable detail all earnings and expenses with respect to the operation of the Mortgaged Property certified by Mortgagor (or a principal of Mortgagor if Mortgagor is not an individual) under penalty of perjury, to be true and complete; (iii) together with the foregoing financial statements and at any other time upon Mortgagee's request (which request shall not be made more than two (2) times in any calendar year), a rent schedule for the Mortgaged Property in form acceptable to Mortgagee, certified by Mortgagor (or a principal of Mortgagor if Mortgagor is not an individual) under penalty of perjury, to be true and complete, showing the name of each tenant, the space occupied, the Lease expiration date, the rent payable, the rent paid and any other information requested by Mortgagee; (iv) upon Mortgagee's request, financial statements for any principal of Mortgagor and Guarantor in the form set forth above; (v) upon Mortgagee's request, an accounting of all security deposits held in connection with any Lease of any part of the Mortgaged Property, including the name and identification number of the accounts in which such security deposits are held, name and address of the financial institutions in which such security deposits are held and the name of the person to contact at such financial institutions, along with any authority or release necessary for Mortgagee to obtain information regarding such accounts directly from such financial institutions; and (vi) such other financial information as Mortgagee may reasonably request in writing.

(b)     Upon the death of any Guarantor who is an individual, Mortgagor shall give prompt written notice to Mortgagee (i.e., at least within thirty (30) days following his or her death), setting forth the date of death, the state and county where the deceased Guarantor's estate is being administered, and, if then known, the name(s) and address(es) of the executor(s) or administrator(s) appointed to administer the estate of such deceased Guarantor.

SECTION 17. **Performance of Other Agreements.**

Mortgagor shall observe and perform each and every term to be observed or performed by Mortgagor pursuant to the terms of any agreement or recorded instrument affecting or pertaining to the Mortgaged Property.

SECTION 18. **Further Acts, etc.**

Mortgagor will, at the cost of Mortgagor, and without expense to Mortgagee, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfers and assurances as Mortgagee shall, from time to time, require, for the better assuring, conveying, assigning, transferring, and confirming unto Mortgagee the property and rights hereby mortgaged, given, granted, bargained, sold, alienated, conveyed, confirmed, pledged, assigned and hypothecated or intended now or hereafter so to be, or which Mortgagor may be or may hereafter become bound to convey or assign to Mortgagee, or for carrying out the intention or facilitating the performance of the terms of this Mortgage or for filing, registering or recording this Mortgage. Mortgagor, on demand, will execute and deliver and hereby authorizes Mortgagee to execute in the name of Mortgagor or without the signature of Mortgagor to the extent Mortgagee may lawfully do so, one or more financing statements, chattel mortgages or other instruments, to evidence more effectively the security interest of Mortgagee in

the Mortgaged Property. Mortgagor grants to Mortgagee an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Mortgagee at law and in equity, including without limitation such rights and remedies available to Mortgagee pursuant to this Section 18.

SECTION 19. **Recording of This Mortgage, etc.**

Mortgagor forthwith upon the execution and delivery of this Mortgage and thereafter, from time to time, will cause this Mortgage, and any security instrument creating a lien or security interest or evidencing the lien hereof upon the Mortgaged Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect the lien or security interest hereof upon, and the interest of Mortgagee in, the Mortgaged Property. Mortgagor will pay all filing, registration or recording fees, and all expenses (including, but not limited to, attorney's fees) incident to the preparation, execution and acknowledgement of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Mortgaged Property, and any instrument of further assurance, and all federal, state, county and municipal, taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Mortgaged Property or any instrument of further assurance, except where prohibited by law so to do. Mortgagor shall hold harmless and indemnify Mortgagee, its successors and assigns, against any liability incurred by reason of the imposition of any tax on the making and recording of this Mortgage.

SECTION 20. **Prepayment.**

The Debt may not be prepaid in whole or in part except in accordance with the terms and conditions contained in the Note.

SECTION 21. **Events of Default.**

The Debt shall become immediately due and payable at the option of Mortgagee upon any one or more of the following events (each being an "**Event of Default**", and, collectively, "**Events of Default**"):

(a)     if any portion of the Debt is not paid when the same is due and payable;

(b)     if any of the Taxes or Other Charges are not paid when the same are due and payable;

(c)     if the Policies are not kept in full force and effect, or if the Policies are not assigned and delivered to Mortgagee upon request;

(d)     if Mortgagor violates or does not comply with any of the provisions of Sections 3, 7, 8, 9, 10, 11, 14, 19, 35 and 36;

(e)     if any representation or warranty of Mortgagor, or of any person guaranteeing payment of the Debt or any portion thereof or performance by Mortgagor of any of

the terms of this Mortgage (a "**Guarantor**"), made herein or in any such guaranty, or in any certificate, report, financial statement or other instrument or document furnished to Mortgagee shall have been false or misleading in any material respect when made;

(f)     if Mortgagor or any Guarantor shall make an assignment for the benefit of creditors or if Mortgagor shall generally not be paying its debts as they become due;

(g)     if a receiver, liquidator or trustee of Mortgagor or of any Guarantor shall be appointed or if Mortgagor or any Guarantor shall be adjudicated a bankrupt or insolvent, or if any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, shall be filed by or against, consented to, or acquiesced in by, Mortgagor or any Guarantor or if any proceeding for the dissolution or liquidation of Mortgagor or of any Guarantor shall be instituted; however, if such appointment, adjudication, petition or proceeding was involuntary and not consented to by Mortgagor or such Guarantor, upon the same not being discharged, stayed or dismissed within thirty (30) days;

(h)     if Mortgagor shall be in default under any other mortgage or security agreement covering any part of the Mortgaged Property whether it be superior or junior in lien to this Mortgage, including, without limitation, the Existing Mortgage;

(i)     if the Mortgaged Property becomes subject to any mechanic's, materialman's liens or other lien other than a lien for local real estate taxes and assessments not then due and payable and such lien shall remain undischarged of record (by payment, bonding or otherwise) within ten (10) days;

(j)     if Mortgagor fails to cure promptly any violations of laws or ordinances affecting or which may be interpreted to affect the Mortgaged Property;

(k)     if Mortgagor shall be in default under any other term, covenant or condition of the Note, this Mortgage or the Other Security Documents;

(l)     if Mortgagor causes the Mortgaged Property and/or the ownership interests in Mortgagor (whether direct or indirect) to be used as collateral for any additional financing not set forth in Section 10 of this Mortgage;

(m)     if Guarantor or any member of Mortgagor is arrested in connection with a felony criminal offense or the death or incapacity of any Guarantor, except that, upon the death or incapacity of any Guarantor, it will not constitute an Event of Default if Mortgagor (i) provides written notice to Mortgagee of the death or incapacity of the Guarantor within thirty (30) days of such death or incapacity, and (ii) Mortgagor provides a substitute Guarantor, which said substitute shall be satisfactory, in all respects, to Mortgagee, in Mortgagee's sole discretion;

(n)     intentionally omitted;

(o)     except as permitted in this Mortgage, the actual or threatened alteration, improvement, demolition or removal of any of the Improvements without the prior consent of Mortgagee;

(p)     if, upon application by Mortgagee to two (2) or more fire insurance companies which are lawfully doing business in the State of Illinois and which are issuing policies of fire insurance upon buildings situated within the area wherein the Mortgaged Property is situated, such companies shall refuse to issue such policies;

(q)     if Mortgagor fails to maintain at least one (1) independent manager as required by that certain Second Amendment to the Operating Agreement for Mortgagor dated as of the date hereof;

(r)     if Mortgagor or any Guarantor shall become in default beyond any applicable grace periods, under the terms of any other loan or agreement with Mortgagee; and

(s)     in the event of any materially adverse change in the financial conditions of Mortgagor or any Guarantor.

SECTION 22. **Remedies of Mortgagee.**

(a) Upon the occurrence of any Event of Default, (x) Mortgagor will pay, from the date of that Event of Default, and until the entire Debt is paid in full, whether prior to or subsequent to the entry of a judgment of foreclosure and sale and the satisfaction of any deficiency judgment, interest on the unpaid principal balance of the Note at the rate of twenty-four percent (24%) per annum or at the maximum interest rate which Mortgagor may by law pay, whichever is lower, (the "**Default Rate**"); and (y) Mortgagee may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Mortgagor and in and to the Mortgaged Property by Mortgagee itself or otherwise, including, without limitation, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Mortgagee may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Mortgagee:

(i)     declare the entire Debt to be immediately due and payable;

(ii)    institute a proceeding or proceedings, judicial or nonjudicial, by advertisement or otherwise, for the complete foreclosure of this Mortgage in which case the Mortgaged Property or any interest therein may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner.

(iii)   with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, institute proceedings for the partial foreclosure of this Mortgage for the portion of the Debt then due and payable, subject to the continuing lien of this Mortgage for the balance of the Debt not then due;

(iv)    intentionally omitted;

(v)     institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained

herein, or in any of the Other Security Documents;

(vi)    recover judgment on the Note either before, during or after any proceedings for the enforcement of this Mortgage;

(vii)    apply for the appointment of a trustee, receiver, liquidator or conservator of the Mortgaged Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of the Mortgagor, any Guarantor or of any person, firm or other entity liable for the payment of the Debt;

(viii)    enforce Mortgagee's interest in the Leases and Rents and enter into or upon the Mortgaged Property, either personally or by its agents, nominees or attorneys and dispossess Mortgagor and its agents and servants therefrom, and thereupon Mortgagee may (A) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Mortgaged Property and conduct the business thereat; (B) complete any construction on the Mortgaged Property in such manner and form as Mortgagee deems advisable; (C) make alterations, additions, renewals, replacements and improvements to or on the Mortgaged Property; (D) exercise all rights and powers of Mortgagor with respect to the Mortgaged Property, whether in the name of Mortgagor or otherwise, including, without limitation, the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents; and (E) apply the receipts from the Mortgaged Property to the payment of Debt, after deducting therefrom all expenses (including, without limitation, reasonable attorneys' fees and disbursements) incurred in connection with the aforesaid operations and all amounts necessary to pay the taxes, assessments insurance and other charges in connection with the Mortgaged Property, as well as just and reasonable compensation for the services of Mortgagee, its counsel, agents and employees; or

(ix)    pursue such other rights and remedies as may be available at law or in equity or under the UCC.

In the event of a sale, by foreclosure or otherwise, of less than all of the Mortgaged Property, this Mortgage shall continue as a lien on the remaining portion of the Mortgaged Property.

(b)    The proceeds of any sale made under or by virtue of this Section 22, together with any other sums which then may be held by Mortgagee under this Mortgage, whether under the provisions of this Section 22 or otherwise, shall be applied by Mortgagee to the payment of the Debt in such priority and proportion as Mortgagee in its sole discretion shall deem proper.

(c)    Mortgagee may adjourn from time to time any sale by it to be made

under or by virtue of this Mortgage by announcement at the time and place appointed for such sale or for such adjourned sale or sales; and, except as otherwise provided by any applicable provision of law, Mortgagee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

(d)     Upon the completion of any sale or sales pursuant hereto in accordance with all applicable laws, Mortgagee, or an officer of any court empowered to do so, shall execute and deliver to the accepted purchaser or purchasers a good and sufficient instrument, or good and sufficient instruments, conveying, assigning and transferring all estate, right, title and interest in and to the property and rights sold. Any sale or sales made under or by virtue of this Section 22, by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of Mortgagor in and to the properties and rights so sold, and shall be a perpetual bar both at law and in equity against Mortgagor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under Mortgagor.

(e)     Upon any sale made under or by virtue of this Section 22, by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Mortgagee may bid for and acquire the Mortgaged Property or any part thereof and in lieu of paying cash therefor may make settlement for the purchase price by crediting upon the Debt the net sales price after deducting therefrom the expenses of the sale and costs of the action and any other sums which Mortgagee is authorized to deduct under this Mortgage and the Other Security Documents.

(f)     No recovery of any judgment by Mortgagee and no levy of an execution under any judgment upon the Mortgaged Property or upon any other property of Mortgagor shall affect in any manner or to any extent the lien of this Mortgage upon the Mortgaged Property or any part thereof, or any liens, rights, powers or remedies of Mortgagee hereunder, but such liens, rights, powers and remedies of Mortgagee shall continue unimpaired as before.

(g)     Mortgagee may terminate or rescind any proceeding or other action brought in connection with its exercise of the remedies provided in this Section 22 at any time before the conclusion thereof, as determined in Mortgagee's sole discretion and without prejudice to Mortgagee.

(h)     Mortgagee may resort to any remedies and the security given by the Note, this Mortgage or in any of the Other Security Documents in whole or in part, and in such portions and in such order as determined by Mortgagee's sole discretion. No such action shall in any way be considered a waiver of any rights, benefits or remedies evidenced or provided by the Note, this Mortgage or in any of the Other Security Documents. The failure of Mortgagee to exercise any right, remedy or option provided in the Note, this Mortgage or any of the other Other Security Documents shall not be deemed a waiver of such right, remedy or option or of any covenant or obligation secured by the Note, this Mortgage or any of the Other Security Documents. No acceptance by Mortgagee of any payment after the occurrence of any Event of Default and no payment by Mortgagee of any obligation for which Mortgagor is liable hereunder shall be deemed to waive or cure any Event of Default with respect to Mortgagor, or Mortgagor's liability to pay such obligation. No sale of all or any portion of the Mortgaged Property, no forbearance on the

part of Mortgagee, and no extension of time for the payment of the whole or any portion of the Debt or any other indulgence given by Mortgagee to Mortgagor, shall operate to release or in any manner affect the interest of Mortgagee in the remaining Mortgaged Property or the liability of Mortgagor to pay the Debt. No waiver by Mortgagee shall be effective unless it is in writing and then only to the extent specifically stated. All costs and expenses of Mortgagee in exercising its rights and remedies under this Section 22 (including, without limitation, reasonable attorneys' fees and disbursements to the extent permitted by law), shall be paid by Mortgagor immediately upon notice from Mortgagee, with interest at the Default Rate for the period after notice from Mortgagee and such costs and expenses shall constitute a portion of the Debt and shall be secured by this Mortgage.

(i)     The interests and rights of Mortgagee under the Note, this Mortgage or any of the Other Security Documents shall not be impaired by any indulgence, including, without limitation, (i) any renewal, extension or modification which Mortgagee may grant with respect to any of the Debt, (ii) any surrender, compromise, release, renewal, extension, exchange or substitution which Mortgagee may grant with respect to the Mortgaged Property or any portion thereof; or (iii) any release or indulgence granted to any maker, endorser, Guarantor or surety of any of the Debt.

SECTION 23. **Sale of Mortgaged Property; Multiple Collateral.**

(a)     If the Mortgaged Property consists of two or more distinct parcels and this Mortgage is foreclosed, the Mortgaged Property, or any interest therein, may, at the discretion of Mortgagee, be sold in one or more parcels or in several interests or portions and in any order or manner as the Mortgagee may elect and specify in the notice of sale.

(b)     If the indebtedness secured by this Mortgage is also secured by one or more other mortgages on property consisting of more than one functionally separate and distinct property and an Event of Default occurs under this Mortgage or any such other mortgage which is cross-defaulted with this Mortgage, upon a foreclosure of this Mortgage and such other mortgages, the Mortgaged Property, or any interest therein, and the property encumbered by such other mortgages may, at the discretion of Mortgagee, be sold in the order designated by Mortgagee.

SECTION 24. **Right to Cure Defaults.**

Upon the occurrence of any Event of Default, or if Mortgagor fails to make any payment or to do any act as herein provided, Mortgagee may, but without any obligation hereunder, make or do the same in such manner and to such extent as Mortgagee may deem necessary to protect the security hereof. Mortgagee is authorized to enter upon the Mortgaged Property for such purposes, or appear in, defend, or bring any action or proceeding to protect its interest in the Mortgaged Property or to foreclose the Mortgage or collect the Debt, and the cost and expense thereof (including reasonable attorneys' fees to the extent permitted by law), with interest, shall constitute a portion of the Debt and shall be due and payable to Mortgagee upon demand. All such costs and expenses incurred by Mortgagee in remedying such Event of Default or in appearing in, defending, or bringing any such action or proceeding shall bear interest at the Default Rate, for the period from the date that such cost or expense was incurred by Mortgagee to the date of payment to Mortgagee, as provided in Section 22 hereof. All such costs and expenses incurred by

- 21 -

Mortgagee together with interest thereon calculated at the Default Rate shall be deemed to constitute a portion of the Debt and be secured by this Mortgage and the Other Security Documents and shall be immediately due and payable upon demand by Mortgagee therefor.

SECTION 25. **Late Payment Charge.**

If any Monthly Payment (as defined in the Note) is not paid when due, Mortgagor shall pay to Mortgagee upon demand an amount equal to ten percent (10%) of such unpaid Monthly Payment, to defray the expense incurred by Mortgagee in handling and processing such delinquent payment and to compensate Mortgagee for the loss of the use of such delinquent payment, and such amount shall be secured by this Mortgage and the Other Security Documents.

SECTION 26. **Prepayment After Event of Default.**

If following the occurrence of any Event of Default, Mortgagor shall tender payment of an amount sufficient to satisfy the Debt in whole or in part at any time prior to a foreclosure sale of the Mortgaged Property, and if at the time of such tender prepayment of the principal balance of the Note is not permitted by the Note, Mortgagor shall, in addition to the entire Debt, also pay to Mortgagee a sum equal to interest which would have accrued on the principal balance of the Note at the interest rate set forth in the Note from the date of such tender to the earlier of (i) the Maturity Date as defined in the Note, or (ii) the first day of the period during which prepayment of the principal balance of the Note would have been permitted together with a prepayment consideration equal to the prepayment consideration which would have been payable as of the first day of the period during which prepayment would have been permitted. If at the time of such tender prepayment of the principal balance of the Note is permitted, such tender by Mortgagor shall be deemed to be a voluntary prepayment of the principal balance of the Note, and Mortgagor shall, in addition to the entire Debt, also pay to Mortgagee the applicable prepayment consideration specified in the Note and this Mortgage.

SECTION 27. **Reasonable Use and Occupancy.**

In addition to the rights which Mortgagee may have herein, upon the occurrence of any Event of Default, Mortgagee, at its option, may require Mortgagor to pay monthly in advance to Mortgagee, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of such part of the Mortgaged Property as may be occupied by Mortgagor or may require Mortgagor to vacate and surrender possession of the Mortgaged Property to Mortgagee or to such receiver and, in default thereof, Mortgagor may be evicted by summary proceedings or otherwise.

SECTION 28. **Right of Entry.**

Mortgagee and its agents shall have the right to enter and inspect the Mortgaged Property at all times upon reasonable notice to Mortgagor.

SECTION 29. **Appointment of Receiver.**

Mortgagee, upon the occurrence of an Event of Default or in any action to foreclose this Mortgage or in any non-judicial foreclosure proceeding commenced pursuant to the Illinois

Statutes or upon the actual or threatened waste to any part of the Mortgaged Property, shall be entitled to the appointment of a receiver without notice and without regard to the value of the Mortgaged Property as security for the Debt, or the solvency or insolvency of any person liable for the payment of the Debt.

SECTION 30. **Security Agreement.**

This Mortgage is both a real property mortgage and a "security agreement" within the meaning of the UCC. The Mortgaged Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, including the Intangibles, of Mortgagor in the Mortgaged Property. Mortgagor, by executing and delivering this Mortgage, has granted and hereby grants to Mortgagee, as security for the Debt, a security interest in the Mortgaged Property to the full extent that the Mortgaged Property may be subject to the UCC (said portion of the Mortgaged Property so subject to the UCC being called in this Section 30 the "**Collateral**"). If an Event of Default shall occur, Mortgagee, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the UCC, including, without limiting the generality of the foregoing, the right to take possession of the Collateral or any part thereof, and to take such other measures as Mortgagee may deem necessary for the care, protection and preservation of the Collateral. Upon request or demand of Mortgagee, Mortgagor shall at its expense assemble the Collateral and make it available to Mortgagee at a convenient place acceptable to Mortgagee. Mortgagor shall pay to Mortgagee on demand any and all expenses, including legal expenses and attorneys' fees, incurred or paid by Mortgagee in protecting its interest in the Collateral and in enforcing its rights hereunder with respect to the Collateral. Any notice of sale, disposition or other intended action by Mortgagee with respect to the Collateral sent to Mortgagor in accordance with the provisions hereof at least five (5) Business Days prior to such action, shall constitute commercially reasonable notice to Mortgagor. The proceeds of any disposition of the Collateral, or any part thereof, may be applied by Mortgagee to the payment of the Debt in such priority and proportions as Mortgagee in its discretion shall deem proper.

Mortgagor hereby gives to Mortgagee a continuing lien on, security interest in and right of set-off against all moneys, securities and other property of Mortgagor and the proceeds thereof, now on deposit or now or hereafter delivered, remaining with or in transit in any manner to Mortgagee, its correspondents, participants or its agents from or for Mortgagor, whether for safekeeping, custody, pledge, transmission, collection or otherwise or coming into possession of Mortgagee in any way, and also, any balance of any individual deposit account and credits of Mortgagor with, and any and all claims of Mortgagor against Mortgagee, at any time existing, as collateral security for the payment of the Debt and all of the other obligations of the Mortgagor under this Mortgage, including fees, contracted with or acquired by Mortgagee, whether joint, several, absolute, contingent, secured, matured or unmatured (for the purposes of this Section 30, collectively, the "**Liabilities**"), hereby authorizing Mortgagee at any time or times, without prior notice, to apply such balances, credits or claims, or any part thereof, to the Liabilities in such amounts as it may select, whether contingent, unmatured or otherwise, and whether any collateral security therefor is deemed adequate or not. The collateral security described herein shall be in addition to any collateral security described in any separate agreement executed in connection with this Mortgage.

SECTION 31. **Actions and Proceedings.**

Mortgagee has the right to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to bring any action or proceeding, in the name and on behalf of Mortgagor, which Mortgagee, in its discretion, decides should be brought to protect its interest in the Mortgaged Property. Mortgagee shall, at its option, be subrogated to the lien of any mortgage or other security instrument discharged in whole or in part by the Debt, and any such subrogation rights shall constitute additional security for the payment of the Debt.

SECTION 32. **Waiver of Jury Trial and Counterclaim.**

MORTGAGOR, TO THE FULL EXTENT PERMITTED BY LAW, DOES HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVES, RELINQUISHES AND FOREVER FORGOES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO THIS AGREEMENT OR ANY CONDUCT, ACT OR OMISSION OF MORTGAGEE OR MORTGAGOR, OR ANY OF THEIR DIRECTORS, OFFICERS, PARTNERS, MEMBERS, EMPLOYEES, AGENTS OR ATTORNEYS, OR ANY OTHER PERSONS AFFILIATED WITH MORTGAGEE OR MORTGAGOR, IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. MORTGAGOR HEREBY WAIVES THE RIGHT TO ASSERT A COUNTERCLAIM IN ANY ACTION OR PROCEEDING BROUGHT AGAINST IT BY MORTGAGEE.

SECTION 33. **Marshalling and Other Matters.**

Mortgagor hereby waives, to the extent permitted by law, the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshalling in the event of any sale hereunder of the Mortgaged Property or any part thereof or any interest therein. Further, Mortgagor hereby expressly waives any and all rights of redemption from sale under any order or decree of foreclosure of the Mortgage on behalf of Mortgagor, and on behalf of each and every person acquiring any interest in or title to the Mortgaged Property subsequent to the date of this Mortgage and on behalf of all persons to the extent permitted by applicable law.

SECTION 34. **Recovery of Sums Required To Be Paid.**

Mortgagee shall have the right from time to time to take action to recover any sum or sums which constitute a part of the Debt as the same become due, without regard to whether or not the balance of the Debt shall be due, and without prejudice to the right of Mortgagee thereafter to bring an action of foreclosure, or any other action, for a default or defaults by Mortgagor existing at the time such earlier action was commenced.

SECTION 35. **Hazardous Materials.**

Mortgagor represents and warrants that, to the best of Mortgagor's knowledge, after due inquiry and investigation, (a) there are no "Hazardous Materials" (as such quoted term is hereinafter defined) on the Mortgaged Property, and (b) no owner or occupant nor any prior owner

or occupant of the Mortgaged Property has received any notice or advice from any governmental agency or any source whatsoever with respect to Hazardous Materials on, from or affecting the Mortgaged Property. Mortgagor covenants that the Mortgaged Property shall be kept free of Hazardous Materials, and neither Mortgagor nor any occupant of the Mortgaged Property shall use, transport, store, dispose of or in any manner deal with Hazardous Materials on the Mortgaged Property. Mortgagor shall comply with, and ensure compliance by all occupants of the Mortgaged Property with, all applicable federal, state and local laws, ordinances, rules and regulations, and shall keep the Mortgaged Property free and clear of any liens imposed pursuant to such laws, ordinances, rules and regulations. In the event that Mortgagor receives any notice or advice from any governmental agency or any source whatsoever with respect to Hazardous Materials on, from or affecting the Mortgaged Property, Mortgagor shall immediately notify Mortgagee. Mortgagor shall conduct and complete all investigations, studies, sampling, and testing, and all remedial actions necessary to clean up and remove all Hazardous Materials from the Mortgaged Property in accordance with all applicable federal, state and local laws, ordinances, rules and regulations. The term "**Hazardous Materials**" as used in this Mortgage shall include, without limitation, asbestos, gasoline, petroleum products, explosives, radioactive materials, polychlorinated biphenyls or related or similar materials, or any other substance or material defined as a hazardous or toxic substance or material by any federal, state or local law, ordinance, rule or regulation. The obligations and liabilities of Mortgagor under this Section 35 shall survive any entry of a judgment of foreclosure or the delivery of a deed in lieu of foreclosure of this Mortgage.

SECTION 36. **Indemnification.**

Mortgagor shall protect, defend, indemnify and save harmless Mortgagee from and against all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including without limitation reasonable attorneys' fees and expenses), imposed upon or incurred by or asserted against Mortgagee by reason of (a) ownership of this Mortgage, the Mortgaged Property or any interest therein or receipt of any Rents; (b) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Mortgaged Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (c) any use, nonuse or condition in, on or about the Mortgaged Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (d) any failure on the part of Mortgagor to perform or comply with any of the terms of this Mortgage; (e) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any part thereof; (f) the failure of any person to file timely with the Internal Revenue Service an accurate Form 1099-B, Statement for Recipients of Proceeds from Real Estate, Broker and Barter Exchange Transactions, which may be required in connection with this Mortgage, or to supply a copy thereof in a timely fashion to the recipient of the proceeds of the transaction in connection with which this Mortgage is made; (g) any claim for brokerage fees or other consideration from any broker in connection with the loan secured by this Mortgage, except to the extent, if any, Mortgagee may have agreed pursuant to a separate agreement to compensate the broker engaged by Mortgagor; (h) the presence, disposal, escape, seepage, leakage, spillage, discharge, emission, release, or threatened release of any Hazardous Materials, from, or affecting the Mortgaged Property or any other property; (i) any personal injury (including wrongful death) or property damage (real or personal) arising out of or related to such Hazardous Materials; (j) any lawsuit brought or threatened, settlement reached, or government order relating to such Hazardous Materials; or (k) any violation of laws, orders,

regulations, requirements, or demands of government authorities, which are based upon or in any way related to such Hazardous Materials including, without limitation, the costs and expenses of any remedial action, attorney and consultant fees, investigation and laboratory fees, court costs, and litigation expenses. Any amounts payable to Mortgagee by reason of the application of this Section 36 shall become immediately due and shall bear interest at the Default Rate from the date loss or damage is sustained by Mortgagee until paid. The obligations of Mortgagor under this Section 36 shall survive any termination, satisfaction, assignment, entry of judgment of foreclosure or delivery of a deed in lieu of foreclosure of this Mortgage.

SECTION 37. **Notices.**

Except for any notice required under applicable law to be given in another manner, (a) any notice to Mortgagor, the Mortgagor's successors or assigns provided for in this Mortgage or in the Note or pursuant to the Illinois Statutes in a proceeding to foreclose this Mortgage shall be given in writing by sending such notice by a recognized overnight courier with postage, freight and any other charges paid, with a receipt therefor, addressed to Mortgagor at Mortgagor's address stated herein or at such other address as Mortgagor may designate by notice to Mortgagee as provided herein, with copy in like manner to Salon Marrow Dyckman Newman & Broudy LLP, 292 Madison Avenue, New York, NY 10017 Attn: Louis L. Broudy, Esq, and (b) any notice to Mortgagee shall be given in writing by sending such notice by a recognized overnight courier, with postage, freight and other charges paid, with a receipt therefor, addressed to Mortgagee at Mortgagee's address stated herein or to such other address as Mortgagee may designate by notice to Mortgagor as provided herein, with a copy of same given in the manner herein provided to Kriss & Feuerstein LLP., 360 Lexington Avenue, New York, New York 10017, Attn.: Jerold C. Feuerstein, Esq. Except for any notice deemed under applicable law to have been given at a different time, any notice provided for in this Mortgage shall be deemed to have been given to Mortgagor or Mortgagee on the earlier of (a) the first day after such notice is mailed or deposited with a courier in a manner designated herein or (b) the day such notice is actually received.

SECTION 38. **Authority.**

(a)      Mortgagor (and the undersigned representative of Mortgagor, if any) has full power, authority and legal right to execute this Mortgage, and to mortgage, give, grant, bargain, sell, alienate, enfeoff, convey, confirm, pledge, hypothecate and assign the Mortgaged Property pursuant to the terms hereof and to keep and observe all of the terms of this Mortgage on Mortgagor's part to be performed.

(b)      Mortgagor represents and warrants that Mortgagor is not a "foreign person" within the meaning of 1445(f)(3) of the Internal Revenue Code of 1986, as amended and the related Treasury Department regulations, including temporary regulations.

SECTION 39. **Consent to Jurisdiction.**

FOR ANY CLAIM, ACTION, OR DISPUTE ARISING UNDER, OR TO INTERPRET OR APPLY, THIS MORTGAGE, THE NOTE OR ANY OTHER SECURITY DOCUMENTS, OR TO RESOLVE ANY DISPUTE ARISING UNDER THE FOREGOING OR THE RELATIONSHIP BETWEEN THE PARTIES, MORTGAGOR IRREVOCABLY

SUBMITS TO THE NONEXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK AND THE UNITED STATES DISTRICT COURT LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK CITY, NEW YORK, AND APPELLATE COURTS FROM ANY OF SUCH COURTS. MORTGAGOR IRREVOCABLY WAIVES ANY OBJECTION THAT IT MAY HAVE AT ANY TIME TO VENUE OF ANY SUCH SUIT, ACTION, OR PROCEEDING BROUGHT IN ANY SUCH COURT, INCLUDING ANY CLAIM THAT ANY SUCH SUIT, ACTION, OR PROCEEDING SO BROUGHT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. NOTHING IN THIS MORTGAGE, THE NOTE OR OTHER SECURITY DOCUMENTS SHALL BE DEEMED TO PRECLUDE MORTGAGEE FROM BRINGING ANY SUIT, ACTION, OR PROCEEDING RELATING TO THIS MORTGAGE, THE NOTE OR OTHER SECURITY DOCUMENTS OR THE DEBT IN ANY OTHER JURISDICTION WHERE MORTGAGEE COULD OTHERWISE PROPERLY BRING SUCH SUIT, ACTION, OR PROCEEDING. MORTGAGOR FURTHER CONSENTS AND AGREES TO SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER LEGAL PROCESS IN ANY SUCH SUIT, ACTION OR PROCEEDING BY REGISTERED OR CERTIFIED U.S. MAIL, POSTAGE PREPAID, TO MORTGAGOR AT THE ADDRESS SET FORTH ON PAGE 1 HEREOF, WITH COPY IN LIKE MANNER TO SALON MARROW DYCKMAN NEWMAN & BROUDY LLP, 292 MADISON AVENUE, NEW YORK, NY 10017 ATTN: LOUIS L. BROUD, ESQ AND CONSENTS AND AGREES THAT SUCH SERVICE SHALL CONSTITUTE IN EVERY RESPECT VALID AND EFFECTIVE SERVICE (BUT NOTHING HEREIN SHALL AFFECT THE VALIDITY OR EFFECTIVENESS OF PROCESS SERVED IN ANY OTHER MANNER PERMITTED BY LAW).

SECTION 40. **Participation/Assignment of Interests in this Mortgage/ Severance of the Loan.**

Mortgagor acknowledges that Mortgagee may sell and assign participation interests or other types of interests in this Mortgage to one or more domestic or foreign banks, insurance companies, pension funds, trusts or other institutional lenders or other persons, parties or investors (including, but not limited to, grantor trusts, owner trusts, special purpose corporations, REMICs, real estate investment trusts or other similar or comparable investment vehicles as may be selected by Mortgagee in its sole and absolute discretion) on terms and conditions satisfactory to Mortgagee in its sole and absolute discretion. Mortgagor grants to Mortgagee, and shall cause each Guarantor and other person or party associated or connected with this Mortgage or the Collateral therefore to grant to Mortgagee the right to distribute on a confidential basis financial and other information concerning Mortgagor, each such Guarantor and other person or party and the property encumbered by this Mortgage and any other pertinent information with respect to this Mortgage to any party who has purchased a participation interest in this Mortgage who has expressed an interest in purchasing any such interest in this Mortgage.

Mortgagee may provide to any actual or potential purchaser, transferee, assignee, servicer, participant or investor or any rating agency, all documents and information which Mortgagee now has or may hereafter acquire relating to the Loan, Mortgagor, Guarantor any other party to the Loan or the Mortgaged Property which shall have been furnished by or on behalf of Mortgagor, Guarantor or any other party to the Loan, as Mortgagee in its discretion determines is desirable. Mortgagor shall cooperate with Mortgagee with the same, including providing such information and documents as Mortgagee may reasonably request.

Mortgagee, without in any way limiting Mortgagee's other rights under the Loan Documents, in its sole and absolute discretion, shall have the right, at any time, with respect to all or any portion of the Loan, to modify, split and/or sever all or any portion of the Loan as hereinafter provided. Without limiting the foregoing, Mortgagee may (i) cause the Note and the Mortgage to be split into a first and second mortgage loan, (ii) create one or more senior and subordinate notes (i.e., an A/B or A/B/C structure), (iii) create multiple components of the Note or Notes (and allocate or reallocate the principal balance of the Loan among such components), (iv) otherwise sever the Loan into two (2) or more loans secured by mortgages and by a pledge of partnership or membership interests (directly or indirectly) in Mortgagor (i.e., a senior loan/mezzanine loan structure), in each such case described in clauses (i) through (iv) above, in whatever proportion and whatever priority Mortgagee determines, and (v) modify the Loan Documents with respect to the newly created Notes or components of the Note or Notes. Notwithstanding the foregoing, no such amendment described above shall (i) modify or amend any material economic term of the Loan, or (ii) materially increase the obligations, or decrease the rights, of Mortgagor under the Loan Documents; provided, however, in each such instance the outstanding principal balance of all the Notes evidencing the Loan (or components of such Notes) immediately after the effective date of such modification equals the outstanding principal balance of the Loan immediately prior to such modification and the weighted average of the interest rates for all such Notes (or components of such Notes) immediately after the effective date of such modification equals the interest rate of the original Note immediately prior to such modification. If requested by Mortgagee, Mortgagor (and Mortgagor's constituent members, if applicable, and Guarantors) shall execute within five (5) Business Days after such request, such documentation as Mortgagee may reasonably request to evidence and/or effectuate any such modification or severance. At Mortgagee's election, each note comprising the Loan may be subject to one or more securitizations. Mortgagee shall have the right to modify the Note and/or Notes and any components in accordance herewith, provided that such modification shall comply with the terms hereof, it shall become immediately effective.

SECTION 41. **Waiver of Notice.**

Mortgagor shall not be entitled to any notices of any nature whatsoever from Mortgagee except with respect to matters for which this Mortgage specifically and expressly provides for the giving of notice by Mortgagee to Mortgagor and except with respect to matters for which Mortgagee is required by applicable law to give notice, and Mortgagor hereby expressly waives the right to receive any notice from Mortgagee with respect to any matter for which this Mortgage does not specifically and expressly provide for the giving of notice by Mortgagee to Mortgagor.

SECTION 42. **Remedies of Mortgagor.**

In the event that a claim or adjudication is made that Mortgagee has acted unreasonably or unreasonably delayed acting in any case where by law or under the Note, this Mortgage or the Other Security Documents, it has an obligation to act reasonably or promptly, Mortgagee shall not be liable for any monetary damages, and Mortgagor's remedies shall be limited to injunctive relief or declaratory judgment. Under no circumstances shall Mortgagee and/or any of its parents, affiliates, subsidiaries or other related parties and/or any of their respective officers, directors, shareholders, agents, and/or employees (all of the foregoing being

collectively referred to as the "Mortgagee Parties") have any personal liability in connection with the Note, this Mortgage and/or any of the other Security Documents or anything, matter or circumstance related thereto.

SECTION 43. **Sole Discretion of Mortgagee.**

Wherever pursuant to this Mortgage, Mortgagee exercises any right given to it to approve or disapprove, or any arrangement or term is to be satisfactory to Mortgagee, the decision of Mortgagee to approve or disapprove or to decide that arrangements or terms are satisfactory or not satisfactory shall be in the sole discretion of Mortgagee and shall be final and conclusive, except as may be otherwise expressly and specifically provided herein.

SECTION 44. **Non-Waiver.**

The failure of Mortgagee to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Mortgage. Mortgagor shall not be relieved of Mortgagor's obligations hereunder by reason of (a) the failure of Mortgagee to comply with any request of Mortgagor or Guarantors to take any action to foreclose this Mortgage or otherwise enforce any of the provisions hereof or of the Note or the Other Security Documents, (b) the release, regardless of consideration, of the whole or any part of the Mortgaged Property, or of any person liable for the Debt or any portion thereof, or (c) any agreement or stipulation by Mortgagee extending the time of payment or otherwise modifying or supplementing the terms of the Note, this Mortgage, or the Other Security Documents. Mortgagee may resort for the payment of the Debt to any other security held by Mortgagee in such order and manner as Mortgagee, in its discretion, may elect. Mortgagee may take action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Mortgagee thereafter to foreclose this Mortgage. The rights of Mortgagee under this Mortgage shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Mortgagee shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision. Mortgagee shall not be limited exclusively to the rights and remedies herein stated but shall be entitled to every right and remedy now or hereafter afforded at law or in equity.

SECTION 45. **Intentionally Omitted.**

SECTION 46. **No Oral Change.**

This Mortgage, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Mortgagor or Mortgagee, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

SECTION 47. **Liability.**

If Mortgagor consists of more than one person, the obligations and liabilities of each such person hereunder shall be joint and several. This Mortgage shall be binding upon and inure to the benefit of Mortgagor and Mortgagee and their respective successors and assigns forever.

SECTION 48. **Inapplicable Provisions.**

If any term, covenant or condition of the Note or this Mortgage is held to be invalid, illegal or unenforceable in any respect, the Note and this Mortgage shall be construed without such provision.

SECTION 49. **Headings, etc.**

The headings and captions of various Sections of this Mortgage are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

SECTION 50. **Duplicate Originals.**

This Mortgage may be executed in any number of duplicate originals and each such duplicate original shall be deemed to be an original.

SECTION 51. **Definitions.**

Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Mortgage may be used interchangeably in singular or plural form and the word "**Mortgagor**" shall mean "**each Mortgagor and any subsequent owner or owners of the Mortgaged Property or any part thereof or any interest therein**", the word "**Mortgagee**" shall mean "**Mortgagee and any subsequent holder of the Note**", the word "**person**" shall include an individual, corporation, limited liability company, partnership, trust, unincorporated association, government, governmental authority, and any other entity, and the words "**Mortgaged Property**" shall include any portion of the Mortgaged Property and any interest therein. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

SECTION 52. **Intentionally Omitted.**

SECTION 53. **Intentionally Omitted.**

SECTION 54. **Construction.**

THIS MORTGAGE HAS BEEN EXECUTED AND DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF NEW YORK AND, EXCEPT AS OTHERWISE PROVIDED IN HEREIN, THIS MORTGAGE, THE NOTE AND EACH OF THE OTHER SECURITY DOCUMENTS SHALL IN ALL RESPECTS BE GOVERNED, CONSTRUED, APPLIED AND ENFORCED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW (OTHER THAN SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW).

NOTWITHSTANDING THE FOREGOING CHOICE OF LAW:

(i)     THE CREATION, PERFECTION AND PRIORITY OF THE LIENS AND SECURITY INTERESTS CREATED BY THIS MORTGAGE AND THE ENFORCEMENT THEREOF, INCLUDING BY WAY OF ILLUSTRATION, BUT NOT IN LIMITATION, ACTIONS FOR FORECLOSURE, FOR INJUNCTIVE RELIEF OR FOR THE APPOINTMENT OF A RECEIVER SHALL BE GOVERNED BY THE LAWS OF THE STATE OF ILLINOIS;

(ii)    MORTGAGEE SHALL COMPLY WITH APPLICABLE LAW IN THE STATE OF ILLINOIS TO THE EXTENT REQUIRED BY THE LAW OF SUCH JURISDICTION IN CONNECTION WITH THE FORECLOSURE OF THE SECURITY INTERESTS AND LIENS CREATED UNDER THIS MORTGAGE, THE NOTE AND THE OTHER SECURITY DOCUMENTS WITH RESPECT TO THE PREMISES OR OTHER ASSETS SITUATED IN THE STATE OF ILLINOIS; AND

(iii)   PROVISIONS OF FEDERAL LAW AND THE LAW OF THE STATE OF ILLINOIS SHALL APPLY IN DEFINING THE TERMS HAZARDOUS SUBSTANCES AND ENVIRONMENTAL LAWS (AS SUCH TERMS ARE DEFINED IN THE OTHER SECURITY DOCUMENTS) APPLICABLE TO THE PREMISES.

NOTHING CONTAINED HEREIN OR ANY OTHER PROVISIONS OF THIS MORTGAGE, THE NOTE OR OTHER SECURITY DOCUMENTS SHALL BE CONSTRUED TO PROVIDE THAT THE SUBSTANTIVE LAWS OF THE STATE OF ILLINOIS SHALL APPLY TO ANY PARTIES, RIGHTS AND OBLIGATIONS UNDER THE NOTE, THIS MORTGAGE OR THE OTHER SECURITY DOCUMENTS, WHICH, EXCEPT AS EXPRESSLY PROVIDED IN CLAUSES (I), (II) AND (III) OF THIS SECTION 54, ARE AND SHALL CONTINUE TO BE GOVERNED BY THE SUBSTANTIVE LAW OF THE STATE OF NEW YORK, EXCEPT AS SET FORTH IN CLAUSES (I), (II) AND (III) OF THIS SECTION 54. IN ADDITION, THE FACT THAT PORTIONS OF THE NOTE, THIS MORTGAGE AND THE OTHER SECURITY DOCUMENTS MAY INCLUDE PROVISIONS DRAFTED TO CONFORM TO THE LAW OF THE STATE OF ILLINOIS IT IS NOT INTENDED, NOR SHALL IT BE DEEMED, IN ANY WAY, TO DEROGATE THE PARTIES' CHOICE OF LAW AS SET FORTH OR REFERRED TO IN THE NOTE, THIS MORTGAGE OR IN THE OTHER SECURITY DOCUMENTS. THE PARTIES FURTHER AGREE THAT THE MORTGAGEE MAY ENFORCE ITS RIGHTS UNDER THE NOTE, THIS MORTGAGE AND THE OTHER SECURITY DOCUMENTS INCLUDING, BUT NOT LIMITED TO, ITS RIGHTS TO SUE THE MORTGAGOR OR TO COLLECT ANY OUTSTANDING INDEBTEDNESS IN ACCORDANCE WITH APPLICABLE LAW.

SECTION 55. **Joint and Several Obligation.**

Notwithstanding anything to the contrary, the representations, warranties, covenants and/or agreements made by Mortgagor (should the Mortgagor consist of one or more individuals or entities), herein and/or in any of the other Security Documents and the liability of the Mortgagor hereunder or thereunder, is joint and several.

SECTION 56. **Purpose of Loan.**

The Mortgagor represents to Mortgagee that the loan evidenced by the Note and

secured by this Mortgage ("**Loan**") is for business or commercial purposes only and not for personal, family, consumer or household purposes. Mortgagor acknowledges that Mortgagee has made the Loan to Mortgagor in reliance upon the above representation by Mortgagor. The above representation by Mortgagor will survive the closing and repayment of the Loan.

SECTION 57. **Felony Criminal Offense.**

The Mortgagor represents that no Guarantor or member of Mortgagor have ever been convicted of a felony criminal offense.

SECTION 58. **Patriot Act.**

Mortgagor will use its good faith and best efforts to comply with the Patriot Act (as defined below) and all applicable requirements of governmental authorities having jurisdiction of the Mortgagor and the Mortgaged Property, including those relating to money laundering and terrorism. The Mortgagee shall have the right to audit the Mortgagor's compliance with the Patriot Act and all applicable requirements of governmental authorities having jurisdiction of the Mortgagor and the Mortgaged Property, including those relating to money laundering and terrorism. In the event that the Mortgagor fails to comply with the Patriot Act or any such requirements of governmental authorities, then the Mortgagee may, at its option, cause the Mortgagor to comply therewith and any and all reasonable costs and expenses incurred by the Mortgagee in connection therewith shall be secured by this Mortgage and the other Loan Documents and shall be immediately due and payable. For purposes hereof, the term "**Patriot Act**" means the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT ACT) Act of 2001, as the same may be amended from time to time, and corresponding provisions of future laws.

Neither the Mortgagor nor any partner in the Mortgagor or member of such partner nor any owner of a direct or indirect interest in the Mortgagor (a) is listed on any Government Lists (as defined below), (b) is a person who has been determined by competent authority to be subject to the prohibitions contained in Presidential Executive Order No. 13224 (Sept. 23, 2001) or any other similar prohibitions contained in the rules and regulations of OFAC (as defined below) or in any enabling legislation or other Presidential Executive Orders in respect thereof, (c) has been previously indicted for or convicted of any felony involving a crime or crimes of moral turpitude or for any Patriot Act Offense (as defined below), or (d) is not currently under investigation by any governmental authority for alleged criminal activity. For purposes hereof, the term "**Patriot Act Offense**" means any violation of the criminal laws of the United States of America or of any of the several states, or that would be a criminal violation if committed within the jurisdiction of the United States of America or any of the several states, relating to terrorism or the laundering of monetary instruments, including any offense under (a) the criminal laws against terrorism; (b) the criminal laws against money laundering, (c) the Bank Secrecy Act, as amended, (d) the Money Laundering Control Act of 1986, as amended, or the (e) Patriot Act. "Patriot Act Offense" also includes the crimes of conspiracy to commit, or aiding and abetting another to commit, a Patriot Act Offense. For purposes hereof, the term "**Government Lists**" means (i) the Specially Designated Nationals and Blocked Persons Lists maintained by Office of Foreign Assets Control ("**OFAC**"), (ii) any other list of terrorists, terrorist organizations or narcotics traffickers maintained pursuant to any of the Rules and Regulations of OFAC that

Mortgagee notified Mortgagor in writing is now included in "Governmental Lists", or (iii) any similar lists maintained by the United States Department of State, the United States Department of Commerce or any other government authority or pursuant to any Executive Order of the President of the United States of America that Mortgagee notified Mortgagor in writing is now included in "Governmental Lists".

SECTION 59. **Entire Agreement.**

The Note, this Mortgage and the Other Security Documents constitute the entire understanding and agreement between Mortgagor and Mortgagee with respect to the transactions arising in connection with the Debt (as such term is defined in the Note) and supersede all prior written or oral understandings and agreements between Mortgagor and Mortgagee with respect thereto. Mortgagor hereby acknowledges that, except as incorporated in writing in the Note, this Mortgage and the Other Security Documents, there are not, and were not, and no persons are or were authorized by Mortgagee to make any representations, understandings, stipulations, agreements or promises, oral or written, with respect to the transaction which is the subject of the Note, this Mortgage and the Other Security Documents. The Mortgagor further recognizes that, in general, borrowers who experience difficulties in honoring their loan obligations, in an effort to inhibit or impede lenders from exercising the rights and remedies available to lenders pursuant to mortgages, notes, loan agreements or other instruments evidencing or affecting loan transactions, frequently present in court the argument, without merit, that some loan officer or administrator of the lender made an oral modification or made some statement that could be interpreted as an extension or modification or amendment of one or more debt instruments and that the borrower relied to its detriment upon such "oral modification of the loan document". For that reason, and in order to protect the Mortgagee from such allegations in connection with the transactions contemplated by this Mortgage and in the Note and Other Security Documents, the Mortgagor acknowledges that this Mortgage, the Note, the Other Security Documents, and all instruments referred to in any of them can be extended, modified or amended only in writing executed by the Mortgagee and that none of the rights and benefits of the Mortgagee can be waived permanently except in a written document executed by the Mortgagee. The Mortgagor further acknowledges the Mortgagor's understanding that no officer or administrator of the mortgagee has the power or the authority from the Mortgagee to make an oral extension or modification or amendment of any such instrument or agreement on behalf of the Mortgagee.

SECTION 60. **Intentionally Omitted.**

SECTION 61. **Intentionally Omitted.**

SECTION 62. **Single Asset Real Estate.**

Mortgagor hereby represents and warrants that the Mortgaged Property constitutes "single asset real estate" as defined in, and pursuant to, Section 101(51B) of the United States Bankruptcy Code.

SECTION 63. **Savings Clause.**

Mortgagee hereby irrevocably agrees that the obligations of Mortgagor under this

Mortgage and the Note are limited to the maximum amount that would not render Mortgagor's obligations subject to avoidance under applicable fraudulent conveyance provisions of the United States Bankruptcy Code. Mortgagor hereby represents that each of the respective Mortgaged Properties, based on appraisals thereof, are sufficient to secure the Debt. By virtue of the respective contributions of each of the Mortgaged Properties to the lien of this Mortgage, Mortgagor hereby represents that it is solvent as of the date hereof. Nothing in this Section shall be construed so as to limit the obligations of the Guarantor under their guarantee(s).

SECTION 64. **Publicity.**

Mortgagor agrees that Mortgagee may issue press releases concerning its financing of the Mortgaged Property pursuant to the Note, this Mortgage and the Other Security Documents. Further, if Mortgagee is financing any construction at the Mortgaged Property, whether pursuant to the Note, this Mortgage or the Other Security Documents, Mortgagee shall be entitled to maintain a sign of reasonable dimension and location at the construction site advertising and promoting such financing.

SECTION 65. **Single Purpose Entity.**

Mortgagor's organizational documents shall provide that until such time that the Debt is paid in full that:

(a) Mortgagor has not owned, does not own and will not own any asset or property other than (i) the Mortgaged Property, and (ii) incidental personal property necessary for the ownership, management or operation of the Mortgaged Property.

(b) Mortgagor has not engaged, does not engage, and will not engage in any business other than the ownership, management and operation of the Mortgaged Property and Mortgagor will conduct and operate its business as presently conducted and operated.

(c) Mortgagor has not entered and is not a party to and will not enter into or be a party to any contract or agreement with any affiliate of Mortgagor, any constituent party of Mortgagor or any affiliate of any constituent party, except in the ordinary course of business and on terms and conditions that are disclosed to Mortgagee in advance and that are intrinsically fair, commercially reasonable and substantially similar to those that would be available on an arms-length basis with third parties other than any such party.

(d) Mortgagor has not incurred and will not incur any indebtedness other than (i) the Loan and (ii) unsecured trade payables and operational debt not evidenced by a note and in an aggregate amount not exceeding one percent (1%) of the original principal amount of the Loan at any one time; provided that any indebtedness incurred pursuant to sub-clause (ii) shall be (x) not more than sixty (60) days past due and (y) incurred in the ordinary course of business. No indebtedness other than the Loan may be secured (subordinate or pari passu) by the Mortgaged Property.

(e) Mortgagor has not made and will not make any loans or advances to any individual, sole proprietorship, partnership, limited liability partnership, joint venture, trust, unincorporated organization, association, corporation, limited liability company, institution, entity, party or

government (whether territorial, national, federal, state, county, city, municipal or otherwise, including, without limitation, any instrumentality, division, agency, body or department thereof) (including any affiliate or constituent party) (a "**Person**"), and has not acquired and shall not acquire obligations or securities of its affiliates.

(f) Mortgagor is and will remain solvent and Mortgagor has paid and will pay its debts and liabilities (including, as applicable, shared personnel and overhead expenses) from its assets as the same shall become due.

(g) Mortgagor has done or caused to be done and will do all things necessary to observe organizational formalities and preserve its existence, and Mortgagor will not (i) terminate or fail to comply with the provisions of its organizational documents, or (ii) unless Mortgagee has consented, amend, modify or otherwise change its operating agreement or other organizational documents.

(h) Mortgagor has maintained and will maintain all of its accounts, books, records, financial statements and bank accounts separate from those of its affiliates and any other Person. Mortgagor's assets have not been and will not be listed as assets on the financial statement of any other Person; provided, however, that Mortgagor's assets may be included in a consolidated financial statement of its affiliates if (i) appropriate notation shall be made on such consolidated financial statements to indicate the separateness of Mortgagor and such affiliates and to indicate that Mortgagor's assets and credit are not available to satisfy the debts and other obligations of such affiliates or any other Person, and (ii) such assets shall be listed on Mortgagor's own separate balance sheet. Mortgagor has and will file its own tax returns (to the extent Mortgagor is required to file any such tax returns) and will not file a consolidated federal income tax return with any other Person. Mortgagor has maintained and shall maintain its books, records, resolutions and agreements as official records.

(i) Mortgagor has been and will be, and has held and at all times will hold itself out to the public as, a legal entity separate and distinct from any other entity (including any affiliate of Mortgagor or any constituent party of Mortgagor), has corrected and shall correct any known misunderstanding regarding its status as a separate entity, has conducted and shall conduct business in its own name, has not identified and shall not identify itself or any of its affiliates as a division or part of the other, and has maintained and shall maintain and utilize separate stationery, invoices and checks bearing its own name.

(j) Mortgagor has maintained and will maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of its contemplated business operations.

(k) Neither Mortgagor nor any constituent party has sought or will seek or effect the liquidation, dissolution, winding up, consolidation or merger, in whole or in part, of Mortgagor.

(l) Mortgagor has not commingled and will not commingle the funds and other assets of Mortgagor with those of any affiliate or constituent party or any other Person, and has held and will hold all of its assets in its own name.

(m) Mortgagor has maintained and will maintain its assets in such a manner that it will not be costly or difficult to segregate, ascertain or identify its individual assets from those of any affiliate or constituent party or any other Person.

(n) Mortgagor has not assumed or guaranteed or become obligated for the debts of any other Person and has not held itself out to be responsible for or have its credit available to satisfy the debts or obligations of any other Person, and Mortgagor will not assume or guarantee or become obligated for the debts of any other Person and does not and will not hold itself out to be responsible for or have its credit available to satisfy the debts or obligations of any other Person.

(o) Mortgagor hereby covenants and agrees that it will comply with or cause the compliance with, (i) all the representations, warranties and covenants contained within the Loan Documents, and (ii) all the organizational documents of Mortgagor.

(p) Mortgagor has not permitted and will not permit any affiliate or constituent party independent access to its bank accounts.

(q) Mortgagor has paid and shall pay the salaries of its own employees (if any) from its own funds and has and shall maintain a sufficient number of employees (if any) in light of its contemplated business operations.

(r) Mortgagor has compensated and shall compensate each of its consultants and agents from its funds for services provided to it and pay from its own assets all obligations of any kind incurred.

(s) Mortgagor has not, and without the unanimous consent of all of its members or managers will not, take any action that might reasonably be expected to cause Mortgagor to become insolvent.

(t) Mortgagor has allocated and will allocate fairly and reasonably any shared expenses, including shared office space.

(u) Notwithstanding any provision of the operating agreement or any amendment thereto, except in connection with the Loan or any prior mortgage financing that has been fully paid and discharged in full prior to the date hereof, Mortgagor has not pledged and will not pledge its assets for the benefit of any other Person.

(v) Mortgagor either (i) has no, and will have no, obligation to indemnify its officers, directors, managers, members, shareholders or partners, as the case may be, or (ii) if it has any such obligation, such obligation is fully subordinated to the Loan and will not constitute a claim against Mortgagor if cash flow in excess of the amount required to pay the Loan is insufficient to pay such obligation.

(w) Mortgagor will consider the interests of Mortgagor's creditors in connection with all limited liability company actions.

(x) Except as provided in the Loan Documents, Mortgagor has not and will not have any

of its obligations guaranteed by any affiliate.

## SECTION 66. **Cross Collateralization; Foreclosure Remedy.**

This Mortgage is cross-collateralized against the properties described in Schedule "A", which make up the Mortgaged Property. Upon the occurrence of an Event of Default under this Mortgage or the Note or any of the Loan Documents, Mortgagee reserves the right, in its sole and absolute discretion, to exercise its remedies against each of the properties in any such order determined by Mortgagee or to foreclose simultaneously on all of the properties. Further, the foreclosure on any less than all of the properties shall in no way be considered the exclusive remedy of Mortgagee, and Mortgagee shall be permitted to foreclose with respect to all of the properties until the entire indebtedness due under the Note is satisfied or paid in full. The contemporaneous or separate foreclosure on all or any of the properties making up the Premises shall not constitute an election of remedies by Mortgagee. The Mortgaged Property contains more than one tax lot. If Mortgagee determines, in its sole and absolute discretion, that it is not feasible to own all of the tax lots, the foreclosure of this Mortgage, as set forth herein may be limited to less than all lots. Notwithstanding anything to the contrary set forth herein, the tax lots that encompass the Mortgaged Property are interdependent and may be foreclosed in bulk, in the sole and absolute discretion of Mortgagee.

## SECTION 67. **Local Law Provisions.**

Principles of Construction. In the event of any inconsistencies between the terms and conditions of this Section 67, on the one hand, and the other terms and conditions of this Mortgage, on the other hand, the terms and conditions of this Section 67 shall control and be binding.

(b)     Type of Real Estate. Mortgagor acknowledges that the transaction of which this Mortgage is a part is a transaction that does not include either agricultural real estate (as defined in Section 15-1201 of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1101 et seq.; "**Foreclosure Act**") or residential real estate (as defined in Section 15-1219 of the Foreclosure Act).

(c)     Illinois Interest Act. To the extent the provisions of the Illinois Interest Act (815 ILCS §205/4(l)) apply, the Debt constitutes a business loan "to a business association" which comes within the purview of 815 ILCS 205/4(1)(c), as well as a loan secured by a mortgage on real estate which comes within the purview of 815 ILCS 205/4(1)(l).

(d)     Inconsistency. In the event any provision in this Mortgage shall be inconsistent with any provision of the Foreclosure Act, the provisions of the Foreclosure Act shall take precedence over the provisions of this Mortgage, but shall not invalidate or render unenforceable any other provision of this Mortgage that can be construed in a manner consistent with the Foreclosure Act.

(e)     Right and Remedies Not Limited. If any provision of this Mortgage shall grant to Mortgagee any rights or remedies upon default of Mortgagor which are more limited than the rights that would otherwise be vested in Mortgagee under the Foreclosure Act in the absence of said provision, Mortgagee shall be vested with the rights granted in the Foreclosure Act to the full extent permitted by law.

(f)     Reasonable Expenses. Without limiting the generality of the foregoing, all reasonable expenses incurred by Mortgagee to the extent reimbursable under Sections 15-1510(b) and 15-1512 of the Foreclosure Act, whether incurred before or after any decree or judgment of foreclosure, and whether enumerated in this Mortgage, shall be added to the indebtedness secured by this Mortgage or by the judgment of foreclosure.

(g)     Receiver. In addition to any provision of this Mortgage authorizing the Mortgagee to take or be placed in possession of the Property, or for the appointment of a receiver, Mortgagee shall have the right, in accordance with Sections 5/15-1701 and 5/15-1702 of the Foreclosure Act, to be placed in possession of the Property or, at its request, to have a receiver appointed, and such receiver, or Mortgagee, if and when placed in possession, shall have, in addition to any other powers provided in this Mortgage, all rights, powers, immunities and duties, as provided for in Sections 5/15-1701, 5/15-1702, 5/15-1703 and 5/15-1704 of the Foreclosure Act.

(h)     Marshalling. MORTGAGOR SHALL NOT AND WILL NOT APPLY FOR OR AVAIL ITSELF OF ANY APPRAISEMENT, VALUATION, STAY, EXTENSION OR EXEMPTION LAWS, OR ANY SO-CALLED "MORATORIUM LAWS," NOW EXISTING OR HEREAFTER ENACTED IN ORDER TO PREVENT OR HINDER THE ENFORCEMENT OR FORECLOSURE OF THIS MORTGAGE, BUT HEREBY WAIVES THE BENEFIT OF SUCH LAWS. MORTGAGOR FOR ITSELF AND ALL WHO MAY CLAIM THROUGH OR UNDER IT WAIVES ANY AND ALL RIGHT TO HAVE THE PROPERTY AND ESTATES COMPRISING THE PROPERTY MARSHALLED UPON ANY FORECLOSURE OF THE LIEN HEREOF AND AGREES THAT ANY COURT HAVING JURISDICTION TO FORECLOSE SUCH LIEN MAY ORDER THE PROPERTY SOLD AS AN ENTIRETY. IN THE EVENT OF ANY SALE MADE UNDER OR BY VIRTUE OF THIS MORTGAGE, THE WHOLE OF THE MORTGAGED PROPERTY MAY BE SOLD IN ONE PARCEL AS AN ENTIRETY OR IN SEPARATE LOTS OR PARCELS AT THE SAME OR DIFFERENT TIMES, ALL AS MORTGAGEE MAY DETERMINE. MORTGAGEE SHALL HAVE THE RIGHT TO BECOME THE PURCHASER AT ANY SALE MADE UNDER OR BY VIRTUE OF THIS MORTGAGE AND MORTGAGEE SHALL BE ENTITLED TO CREDIT BID THE INDEBTEDNESS OR ANY PORTION THEREOF IN MORTGAGEE'S SOLE DISCRETION.

(i)     WAIVER OF RIGHT OF REDEMPTION AND REINSTATEMENT. THE MORTGAGOR, ON ITS OWN BEHALF AND ON BEHALF OF EACH AND EVERY PERSON ACQUIRING ANY INTEREST IN OR TITLE TO THE PROPERTY SUBSEQUENT TO THE DATE OF THIS MORTGAGE, HEREBY IRREVOCABLY WAIVES PURSUANT TO 735 ILCS 5/15-1601 OF THE FORECLOSURE ACT ANY AND ALL RIGHTS OF REINSTATEMENT (INCLUDING, WITHOUT LIMITATION, ALL RIGHTS OF REINSTATEMENT PROVIDED FOR IN 735 ILCS 5/15 1602) AND REDEMPTION FROM SALE OR FROM OR UNDER ANY ORDER, JUDGMENT OR DECREE OF FORECLOSURE OF THIS MORTGAGE (INCLUDING, WITHOUT LIMITATION, ALL RIGHTS OF REDEMPTION PROVIDED FOR IN 735 ILCS 5/15 1603) OR UNDER ANY POWER CONTAINED HEREIN OR UNDER ANY SALE PURSUANT TO ANY STATUTE, ORDER, DECREE OR JUDGMENT OF ANY COURT.

(j)     Future Advances; Maximum Indebtedness. This Mortgage is granted to secure not only existing indebtedness, but also future advances made pursuant to or as provided in the Loan

Documents, whether such advances are obligatory or to be made at the option of Mortgagee, or otherwise, to the same extent as if such future advances were made on the date of execution of this Mortgage, although there may be no advance made at the time of execution hereof, and although there may be no indebtedness outstanding at the time any advance is made. Notwithstanding anything in this Mortgage to the contrary, the maximum principal amount of the indebtedness secured by this Mortgage shall not exceed $16,200,000.00, plus all costs of enforcement and collection of this Mortgage and the other Loan Documents, including reasonable attorney's fees, plus the total amount of any advances made pursuant to the Loan Documents to protect the collateral and the security interest and lien created hereby, or the priority thereof, together with interest on all of the foregoing as provided in the Loan Documents.

(k)     Insurance Disclosure. The following notice is provided pursuant to paragraph (3) of 815 ILCS 180/10: Unless the Mortgagor provides evidence of the insurance coverage required by the Loan Documents, the Mortgagee may purchase such insurance at the Mortgagor's expense to protect the Mortgagee's interests in the Mortgagor's collateral. This insurance may, but need not, protect the Mortgagor's interests. The coverage that the Mortgagee purchases may not pay any claim that the Mortgagor may make or any claim that is made against the Mortgagor in connection with the collateral. The Mortgagor may later cancel any insurance purchased by the Mortgagee, but only after providing evidence that the Mortgagor has obtained insurance as required by the Loan Documents. If the Mortgagee purchases insurance for the collateral, the Mortgagor will be responsible for the costs of that insurance, including the insurance premium, interest and any other charges that the Mortgagee may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to the Obligations of the Mortgagor. The costs of the insurance may be more than the cost of insurance that the Mortgagor may be able to obtain on the Mortgagor's own.

(l)     Fixture Financing Statement. From the date of its recording, this Mortgage shall be effective as a fixture financing statement within the purview of Section 9-502(b) of the Illinois Uniform Commercial Code (as amended from time to time) with respect to the Property and the goods described herein, which goods are or are to become fixtures related to the Property. The addresses of Mortgagor (Debtor) and Mortgagee (Secured Party) are set forth below. This Mortgage is to be filed for recording with the Recorder of Deeds of the county or the counties where the Mortgaged Property is located. For this purpose, the following information is set forth:

(i)     Name and Address of Debtor: **SYMMETRY TOWER/CHICAGO PROJECT OWNER, LLC**, a New York limited liability company, having an address at One Pennsylvania Plaza, 19th Floor, New York, New York 10119 (ii) Name and Address of Secured Party: **WABASH SUPERIOR 1 LLC**, a Delaware limited liability company, its successors and/or assigns, as their interests may appear, having offices at 825 Third Avenue, 37th Floor, New York, New York 10022 (iii)     This document covers goods which are or are to become fixtures.

(iv)     Debtor's state of formation is Delaware.

**IN WITNESS WHEREOF**, Mortgagor has executed this Mortgage the day and year first above written.

**SYMMETRY TOWER/CHICAGO PROJECT OWNER, LLC**,
a New York limited liability company

By: _____
Name: Jeffrey Lawrence Laytin
Title: Manager

STATE OF NEW YORK      )
                                ) ss.:
COUNTY OF NEW YORK   )

       On the 23rd day of July, in the year 2018, before me, the undersigned, a Notary Public in and for said State, personally appeared Jeffrey Lawrence Laytin, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

CAROLINE G. MALAPERO
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02MA6319569
Qualified in New York County
Commission Expires February 23, 20___

# SCHEDULE A

## METES AND BOUNDS DESCRIPTION OF PROPERTY

Parcel 1:

Lot 5 in Ogden's Subdivision of Block 52 of Kinzie's Addition ot Chicago in the West 1/2 of the Northwest 1/4 of Section 10, Township 39 North, Range 14, East of the Third Principal Meridian, in Cook County, Illinois.

Parcel 2:

The East 20 feet of the South 80 feet of Lot 6 in BLock 52 in Kinzie's Addition to Chicago in the West 1/2 of the Northwest 1/4 of Section 10, Township 39 North, Range 14, East of the Third Principal Meridian, in Cook County, Illinois.

Parcel 3:

Lot 6 (except the South 80 feet) and the West 30 feet of the West 80 feet of Lot 6 in Block 52 in Ogden's Subdivision of Block 52 in Kinzie's Addition to Chicago in the West 1/2 of the Northwest 1/4 of Section 10, Township 39 North, Range 14, East of the Third Principal Meridian, in Cook County, Illinois.

# EXHIBIT C

Return Date: No return date scheduled
Hearing Date: 11/26/2019 3:00 PM - 3:00 PM
Courtroom Number: 2810
Location: District 1 Court
    Cook County, IL

FILED
5/30/2019 11:08 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH06588

5231244

FILED DATE: 5/30/2019 11:08 AM  2019CH06588

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| **WABASH SUPERIOR 1 LLC, a Delaware limited liability company,** | ) ) ) | No. **2019CH06588** |
| **Plaintiff,** | ) ) | **Properties Located: 739 N. Wabash Ave.;42 E. Superior Street; 44-46 E. Superior Street, Chicago, Illinois 60611** |
| **v.** | ) ) | |
| **SYMMETRY TOWER/CHICAGO PROJECT OWNER, LLC, a New York limited liability company; CORBAN KAUAI CHICAGO LENDER, LLC, a Delaware limited liability company; UNKNOWN OWNERS & NONRECORD CLAIMANTS,** | ) ) ) ) ) ) ) | |
| **Defendants.** | ) ) | |

### COMPLAINT IN CHANCERY
### TO FORECLOSE A MORTGAGE

NOW COMES Plaintiff, WABASH SUPERIOR 1 LLC, by and through its attorneys, Levenfeld Pearlstein, LLC, and complains of the Defendants, SYMMETRY TOWER/CHICAGO PROJECT OWNER, LLC; CORBAN KAUAI CHICAGO LENDER, LLC; UNKNOWN OWNERS & NONRECORD CLAIMANTS, as follows:

### **PARTIES**

1.    Plaintiff Wabash Superior 1 LLC ("Plaintiff) now is, and at all times referenced herein was, a Delaware limited liability company that conducts business in Cook County, Illinois. At all times referenced herein, Plaintiff was authorized to enter into the transactions referenced below.

2.      Defendant Symmetry Tower/Chicago Project Owner, LLC, is a New York limited liability company whose license to conduct business in Illinois was revoked and is the owner of the real property hereinafter described.

3.      Defendant Corban Kauai Chicago Lender, LLC is named as a Defendant herein by virtue of its subordinated mortgage on the real property hereinafter described.

## JURISIDICTION & VENUE

4.      The Court has jurisdiction over the Defendants pursuant to 735 ILCS 5/2-209(a)(1), (3) and (7) because Symmetry Tower/Chicago Project Owner, LLC (a) transacts business within Illinois, (b) used, owned and/or possessed real estate situated in Illinois; and (c) made a contract connected with the State of Illinois.

5.      Venue is proper in Cook County pursuant to 735 ILCS 5/2-103(b) because the property at issue in this action is located in Cook County, Illinois.

## COUNT I
## MORTGAGE FORECLOSURE

6.      Plaintiff incorporates by reference Paragraphs 1 through 5 as Paragraph 6 of Count I as though fully set forth herein.

7.      Plaintiff files this complaint pursuant to the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1101 et seq.) to foreclose the mortgage hereinafter described, and joins the following persons as defendants: SYMMETRY TOWER/CHICAGO PROJECT OWNER, LLC; CORBAN KAUAI CHICAGO LENDER, LLC; UNKNOWN OWNERS & NONRECORD CLAIMANTS.

8.      Plaintiff avers that in addition to the persons designated by name herein, there may be other persons who are interested in this action and who have or claim some right, title, interest or lien in, to or upon the real estate or some part thereof, described as tenants in

FILED DATE: 5/30/2019 11:08 AM  2019CH06588

possession; that the names of each of such other persons interested in this action are unknown to the Plaintiff, and upon diligent inquiry cannot be ascertained, and all such persons are thereof made parties defendant to this action by the name and description of "UNKNOWN OWNERS".

9.    Plaintiff avers that in addition to the persons designated by name herein and the UNKNOWN OWNERS, there may be other persons who have or claim to have an interest in or upon the mortgaged real estate, which is not disclosed of record by recorded notice or proceeding which would give constructive notice and who are more fully defined in Section 15-1210 of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1210); that the names of each of such other persons are unknown to the Plaintiff and all such persons are therefore made parties defendant to this action by the name and description of "NON-RECORD CLAIMANTS".

10.    On or about July 24, 2018, Symmetry Tower/Chicago Project Owner, LLC executed a mortgage, Assignment of Leases and Rent; Security Agreement and Fixture Filing (the "Mortgage") with Plaintiff for properties located at 739 N. Wabash Ave.;42 E. Superior Street; 44-46 E. Superior Street, Chicago, Illinois 60611 (collectively, the "Property"). The principal amount of indebtedness secured under the Mortgage was not to exceed $8,100,000.00. A true and correct copy of the Mortgage is attached hereto and incorporated herein by reference as **Exhibit A**.

11.    Symmetry Tower/Chicago Project Owner, LLC also executed a Mortgage Note dated July 24, 2018 in the original principal amount of $8,100,000.00 secured by the Mortgage, a true and correct copy of which is attached hereto and incorporated herein by reference as **Exhibit B**.

12.    Symmetry Tower/Chicago Project Owner, LLC defaulted on the Note and Mortgage by failing to make payments as of March 1, 2019.

13.     Plaintiff fully performed all of its obligations under the Note and Mortgage.

14.     Information concerning said mortgage is as follows:

a)     Nature of the instrument: Mortgage;

b)     Date of Mortgage: July 24, 2018;

c)     Name of Mortgagor: SYMMETRY TOWER/CHICAGO PROJECT OWNER, LLC;

d)     Name of Mortgagee: WABASH SUPERIOR 1 LLC;

e)     Date and Place of Recording: July 27, 2018 in the Office of the Cook County Recorder of Deeds;

f)     Identification of recording: Document Number 1820806285;

g)     Interest subject to the mortgage: Fee simple;

h)     Amount of original indebtedness: $8,100,000.00;

i)     The legal description of the mortgaged premises;

See **Exhibit C**, attached hereto and incorporated herein by reference;

j)     Statement as to default and amount now due: Mortgagor failed to make payments pursuant to the terms of the Note as of March 1, 2019. There remains unpaid on the Note through May 29, 2019 the total amount of Eight Million Six Hundred Seventy-Three Thousand Four Hundred Ninety One Dollars and Twenty Five Cents ($8,673,491.25) calculated as follows:

| | |
|---|---|
| Unpaid principal | $8,100,000.00 |
| Interest | $565,573.50 |
| Late Charges | $7,953.75 |
| TOTAL | $8,673,491.25 |

k)     Statement as to per diem interest accruing under the mortgage after default: Interest continues to accrue on said balance at the default rate of $5,400.00 per day.

l)     Name of present owner of said premises: SYMMETRY TOWER/CHICAGO PROJECT OWNER, LLC;

m)   Names of other persons who are joined as defendants and whose interest in or lien on the mortgaged real estate is inferior to Plaintiff's interest and sought to be terminated: CORBAN KAUAI CHICAGO LENDER, LLC; UNKNOWN OWNERS & NONRECORD CLAIMANTS.

n)   Names of persons claimed to be personally liable for a deficiency, if a deficiency judgment is sought: SYMMETRY TOWER/CHICAGO PROJECT OWNER, LLC;

o)   Capacity in which Plaintiff brings this suit: Plaintiff is the owner and holder of the indebtedness and the Mortgage securing payment of said indebtedness;

p)   Plaintiff seeks inclusion in the Judgment of its attorneys' fees and costs and expenses as provided for in the Mortgage at section 22(h) ("Remedies of Mortgagee"), attached hereto as <u>Exhibit A</u>.

q)   Facts in support of waiver of redemption:  Pursuant to the provisions of section 67(i), "WAIVER OF RIGHT OF REDEMPTION AND REINSTATEMENT" of the Mortgage and Section 15-1601 of the Illinois Code of Civil Procedure, the Mortgagor has waived any and all rights of redemption from any judgment or decree of foreclosure and sale, the mortgaged premises is not "Residential Real Estate," as defined in Section 15-1219 of the Illinois Code of Civil Procedure, and the mortgaged premises is not "Agricultural Real Estate," as defined in Section 15-1201 of the Illinois Code of Civil Procedure.

r)   Facts in support of request for appointment of mortgagee in possession or for appointment of a receiver and identity of such receiver:  Plaintiff will pray for such relief after the filing of the instant foreclosure action by separate motion if such relief is sought.

s)   Offer to mortgagor in accordance with Section 15-1402 to accept title to the real estate in satisfaction of all indebtedness and obligations secured by the mortgage without judicial sale: Plaintiff does not tender said offer to mortgagor.

WHEREFORE, Plaintiff, prays for the following:

i)   A judgment of foreclosure and sale;

ii)   An order granting no redemption period;

iii)   An *in personam* judgment for a deficiency, if sought;

iv)   An order granting possession, if sought;

v)      An order placing the mortgagee in possession or appointing a receiver, if sought;

vi)     A judgment for attorneys' fees, costs and expenses; and

vii)    Such other and further relief as equity may require.

WABASH SUPERIOR 1 LLC,

By: _____
One of Its Attorneys

Jamie L. Burns
LEVENFELD PEARLSTEIN, LLC
2 N. LaSalle St., Suite 1300
Chicago, IL 60602f
Phone: (312) 346-8380
jburns@lplegal.com
Firm ID: 57133

# EXHIBIT D

FILED DATE: 11/7/2019 4:16 PM 2019CH06588

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| WABASH SUPERIOR 1 LLC, a Delaware limited liability company, | ) ) ) | |
| Plaintiff, | ) ) | No. 19 CH 06588 |
| v. | ) ) | Properties Located: 739 N. Wabash Ave.;42 E. Superior Street; 44-46 E. |
| SYMMETRY TOWER/CHICAGO PROJECT OWNER, LLC, a New York limited liability company; CORBAN KAUAI CHICAGO LENDER, LLC, a Delaware limited liability company; UNKNOWN OWNERS & NONRECORD CLAIMANTS, | ) ) ) ) ) ) ) | Superior Street, Chicago, Illinois 60611 |
| Defendants. | ) ) | |

ORDER APPOINTING RECEIVER
FOR NON-RESIDENTIAL PROPERTY

THIS CAUSE was heard on Plaintiff's motion pursuant to the Illinois Mortgage Foreclosure Law, 735 ILCS 5/15-1101 *et seq.*, seeking an order appointing a receiver for the non-residential properties located at 739 N. Wabash Ave.;42 E. Superior Street; 44-46 E. Superior Street, Chicago, Illinois 60611 (together, the "properties"). The properties are the subject of Wabash Superior 1 LLC ("Plaintiff")'s Complaint in Mortgage Foreclosure. The Court has jurisdiction over the parties and subject matter and is fully advised in the premises.

**THE COURT FINDS:**

1.    Plaintiff's Complaint alleges that the defendant-mortgagor, Symmetry Tower/Chicago Project Owner, LLC ("Symmetry Tower") defaulted on its obligations. A copy of the Mortgage, attached to the Complaint dated July 24, 2018, was executed by Symmetry Tower and was recorded as document number 1820806285 with the Cook County Recorder of Deeds against the property. The Mortgage secures a Mortgage Note, a copy of which is attached to the Complaint, executed by Symmetry Tower dated July 24, 2018, in the original principal amount of $8,100,000.00. Symmetry Tower also entered into an Assignment of Leases and Rents recorded with the Cook County Recorder of Deeds as document number 1820806286.

2.    The Complaint alleges that an "Event of Default," as defined in the Mortgage and Note has occurred under the terms of the note and mortgage due to Symmetry Tower's failure to make payments as of March 1, 2019.

3.    Section 67(g) of the Mortgage provides that the mortgagee shall have the right to make application for appointment of a receiver for the properties.

LP 15247183.1 \ 43625-117658

FILED DATE: 11/7/2019 4:16 PM    2019CH06588

4.    The properties do not fall within the definition of "Residential Real Estate" under the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1219).

5.    The Court finds that due notice of the motion has been given pursuant to 735 ILCS 5/15-1706(d).

6.    Based upon the allegations of the Complaint, the terms and provisions of the Mortgage, Note, and Assignment, and the motion to appoint a receiver, there is a reasonable probability that Plaintiff will prevail on a final hearing in this matter. Defendant has not shown good cause why the receiver should not be appointed.

**IT IS HEREBY ORDERED:**

1.    The receiver, Mike Zucker of Peak Properties, LLC, based on the information provided to the Court, is deemed to be qualified to act as receiver and to manage the properties as would a reasonably prudent person.

2.    Plaintiff's motion for an order appointing a receiver for the subject properties is granted and the above-named receiver is hereby appointed. This Order will not become effective until the Court has approved the receiver's bond as set forth below.

3.    The receiver is empowered with all the duties, responsibilities and powers enumerated in the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1101 *et seq.*).

4.    The receiver is authorized to collect all rents relating to the property, and the tenants of the property is directed to pay rent to the receiver from the effective date of this Order, until further notice. The receiver shall allocate all receipts from the operation of the real estate and other property subject to the mortgage in accordance with 735 ILCS 5/15-1704(d). Within 21 days, the receiver shall provide notice to any and all occupants of the property as required by 735 ILCS 5/15-1704(f).

5.    Within five business days after the receiver's bond is approved, the defendant-mortgagor and any other defendant in possession or control of the documents described below, shall turn over to the receiver all documents which comprise or relate in **any way** to the following:

    (a)    Income collected for the property after the effective date of this order;
    (b)    Contracts, documents, and agreements relating to accounts receivable and payable, operation, management, sale, leasing and/or control of the property;
    (c)    Documents such as insurance policies, real estate taxes, notices and/or bills which concern the property in any way;
    (d)    Documents relating to the property's condition, operation and maintenance or relating to any persons employed to maintain, secure or repair the property;
    (e)    A list by case name and number of all current litigation or regulatory proceedings

LP 15247183.1 \ 43625-117658

FILED DATE: 11/7/2019 4:16 PM    2019CH06588

which involve the property including but not limited to: (1) abatement of taxes or reduction of assessments; (2) mechanics lien claims; (3) building code violations or zoning enforcement actions; and (4) any other litigation or legal or related proceedings;

(f)     All keys needed to operate, repair and/or maintain the property; and

(g)     A list of all tenants and their payment history for the last two years.

6.      Defendant shall promptly and fully cooperate with receiver in connection with the receiver's performance of his duties and is prohibited from interfering with the powers, rights, or duties of the receiver, and shall not direct or induce tenants to divert rent payments away from the receiver. Defendant is further prohibited from directing anyone to interfere, in any way, with the receiver in the execution of this Order.

7.      The receiver shall file periodic written reports with the court. Each report shall be prepared with a case caption, personally signed by the receiver, and filed with the Clerk of the Court. The receiver or Plaintiff's attorney must mail copies of the report to all parties in the case (including those who have not formally appeared) at least five court days before the hearing on the report. The mailing shall include a notice of motion indicating the time, date and courtroom number applicable to the approval of the report, and a proof of service. Reports will be presented on a schedule established by the court for each particular case.

8.      Each report shall include, at a minimum: a description of the property (number of units, type of use, size and condition), contact information for the receiver, a list of tenants with the amount of their rent, a summary of any litigation involving the property of which the receiver is aware, a report on any failure of the defendant-mortgagor or any tenant to cooperate with the requirements of the receiver order, verification that the property is adequately insured, a detailed billing statement for the receiver's fees, a draft order approving the report and setting the case for the next receiver's report, a photograph of the outside of the property (first report only), an income/expense statement, current balance on hand, background information on any matter for which the receiver is requesting special court approval, and a check register showing income received and expenses incurred since the previous report.

9.      The receiver may not employ attorneys except with explicit Court approval.

10.     The receiver or a knowledgeable representative thereof must appear in Court when his report is presented.

11.     The receiver's fees shall be charged at the rates set forth on **Exhibit A** hereto. The Court will review all fee requests for reasonableness. The Court reserves the right to reduce any fees which it deems to be excessive, including fees charged under the above-listed fee schedule. Receiver's certificates shall constitute a first and prior lien on the property.

12.     With the consent of Plaintiff, the receiver may authorize necessary improvements to the property not to exceed the cost of $ 10,000 ⁰⁰ total. The receiver has the power to procure or maintain appropriate utility services for the property and to procure or maintain appropriate insurance coverage for the property.

13.     This order is not effective until the court has approved the receiver's bond in the amount of $ 100,000, ⁰⁰, which must be issued by a Court-approved surety company and signed by a Court-approved attorney-in-fact for the surety company. Plaintiff or the receiver shall deliver the bond along with this Order to chambers for approval.

14.     Plaintiff shall immediately forward a copy of this Order to Defendants or any attorney who has filed an appearance on their behalf and file proof of service thereof with the court.

15.     This case is continued to 12\10\19 _____, 2019 at 11:00 a.m. in courtroom 2810 of the Daley Center for status and ~~approval~~ of the first receiver's report. ~~The first report shall be filed on or before _____, 2019 and shall cover the period beginning when the bond is approved and ending on _____, 2019.~~

ENTERED: *Setting*

_____
JUDGE

**_Order Prepared By:_**
Jamie L. Burns
LEVENFELD PEARLSTEIN, LLC
Attorneys for Plaintiff
2 North LaSalle, Suite 1300
Chicago, Illinois 60602
(312) 346-8380
Firm ID: 57133

Judge Gerald Cleary

NOV 26 2019

Circuit Court - 2147

FILED DATE: 11/7/2019 4:16 PM 2019CH06588



**PEAK** PROPERTIES

773 | 281 | 5252  PHONE
773 | 281 | 5256  FAX

www.peakproperties.biz

2815 West Roscoe
Chicago, IL 60618

## PEAK PROPERTIES, LLC
## RECEIVERSHIP PRICING SCHEDULE
### 42 East Superior, Chicago, IL

**Management Fees:**  The greater of 6% of collected income or $1,500.00 per month

*1st month only:     $1,000.00 set up fee

Court Appearances:  $300.00

Report Writing:     $250.00 (quarterly)

Leasing Fees:       Market Rate With Proper Approvals

*In addition to the responsibilities listed in our Management Agreement, an implementation fee ($1,000.00) is assessed for the first month of management due to costs incurred during the transition to Peak management. These costs include, but are not limited to, services such as bookkeeping and bank account set-up, property inspections and reports, initial operating budget, notification of tenants, collection and organization of building information, discovery, smooth transition of utility accounts and services, vendor set-up, and other start-up and transitional responsibilities.

## Professional Services (please note - only if applicable)

For any services not specifically named and described in our Management Agreement, Peak Properties, LLC will charge according to the service rates listed below.

| *Staff member* | *Hourly rate* |
|---|---|
| President, principal | $300.00 |
| Vice President | $250.00 |

1

FILED DATE: 11/7/2019 4:16 PM    2019CH06588

| Development Director, Senior Property Manager, Supervising Accountant | $150.00 |
| Senior Development Representative, Property Manager | $100.00 |
| Staff Accountant | $75.00 |
| Administrative Assistant, Assistant Property Manager | $75.00 |
| Miscellaneous support staff | $50.00 |

Services and duties that may warrant the above schedule of fees:
        Insurances services
        Due diligence
        Court appearances
        Asset management
        Appeal of Real Estate taxes
        Technical consultation and management

## 3rd Party Expenses

Property owners and/or mortgagees in possession will be billed (at cost) for any 3rd party out-of-pocket expenses incurred by Peak Properties.

# EXHIBIT E

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| WABASH SUPERIOR 1 LLC, a Delaware limited liability company, | ) ) ) | |
| Plaintiff, | ) ) | No. 19 CH 06588 |
| v. | ) ) | Properties Located: 739 N. Wabash Ave.;42 E. Superior Street; 44-46 E. |
| SYMMETRY TOWER/CHICAGO PROJECT OWNER, LLC, a New York limited liability company; CORBAN KAUAI CHICAGO LENDER, LLC, a Delaware limited liability company; UNKNOWN OWNERS & NONRECORD CLAIMANTS, | ) ) ) ) ) ) ) | Superior Street, Chicago, Illinois 60611 |
| Defendants. | ) ) ) | |

## JUDGMENT OF FORECLOSURE AND SALE ORDER

This matter coming on to be heard on the Motion for Summary Judgment and Judgment of Foreclosure and Sale of Plaintiff, Wabash Superior 1 LLC, by and through its attorneys, LEVENFELD PEARLSTEIN, LLC, due notice having been given, and the Court being duly advised in the premises, this Court makes the following findings:

### I.
### JURISDICTION

1.     All Defendants were lawfully served in accordance with the law and this Court specifically finds service of process against all the Defendants named herein was proper and made in accordance with the Illinois Code of Civil Procedure.

2.     An order of default is hereby entered in favor of Plaintiff and against Unknown Owners and Nonrecord Claimants.

3.     Summary Judgment is hereby entered in favor of Plaintiff and against Symmetry Tower/Chicago Project Owner, LLC and Corban Kauai Chicago Lender, LLC.

## II.
## EVIDENTIARY FINDINGS

4.     All material allegations of the Complaint are true and proven, and that by virtue of Plaintiff's mortgage, and the evidence of indebtedness secured thereby alleged in the Complaint, that Plaintiff has a valid and subsisting lien on the property described hereafter, and that **$16,338,522.95** remains due and owing to Plaintiff as of October 27, 2022 broken down as follows:

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Unpaid Principal Balance | | | | | | | | : $ | 8,100,000.00 |
| Nominal Interest on | $ | 8,100,000.00 | at | 12.625% | from | 2/1/2019 | to 2/28/2019 | : | 79,537.50 |
| Default Interest on | $ | 8,100,000.00 | at | 24.000% | from | 3/1/2019 | to 10/27/2022 | : | 7,219,800.00 |
| Late Fees | | | | | | | | : | 7,953.75 |
| Exit Fee | | | | | | | | : | 81,000.00 |
| Servicing Fees | | | | | | | | : | 25,650.00 |
| Appraisal Fee | | | | | | | | : | 10,000.00 |
| Monitoring Fees | | | | | | | | : | 1,125.00 |
| Legal Fees | | | | | | | | : | 53,740.31 |
| Entity Fees | | | | | | | | : | 4,392.88 |
| Protective Advances for Insurance | | | | | | | | : | 403,173.62 |
| Default Interest on Protective Advances for Insurance | | | | | | | | : | 159,274.07 |
| Protective Advances for Taxes | | | | | | | | : | 186,749.82 |
| Default Interest on Protective Advances for Taxes | | | | | | | | : | 6,126.00 |
| | | | 10/27/2022 | | | | | $ | 16,338,522.95 |

Per diem interest has accrued at the rate of $5,793.28 after October 27, 2022, totaling $886,371.84 as of March 29, 2023. Additionally, Plaintiff is entitled to its attorneys' fees and costs in the amounts of $32,738.75 and $1,580.31 respectively. When added to the foregoing sum due, the total owed as of March 29, 2023 is **$17,259,214.85** (the amount of the judgment of foreclosure).

All of the foregoing amounts have been accounted for in the Affidavit of Shoshana Carmel, Director, Madison Realty Capital LLC, agent for Plaintiff, and the Affidavit of Jamie L. Burns, attorney for Plaintiff.

5. The mortgaged real estate is not "Residential Real Estate" as defined in Chapter 735 ILCS 5/15-1219, Illinois Compiled Statutes.

6. The Mortgage described in the Complaint and hereby foreclosed appear of record in the office of the Cook County Recorder of Deeds and the properties herein referred to and directed to be sold is legally described as follows:

> See legal description attached hereto as **Exhibit A** and incorporated herein by reference.

7. All material allegations of the Complaint are true and proven against the Defendants.

8. The right of redemption has been waived under the Mortgage and specifically at section 67(i) thereof.

**IT IS THEREFORE ORDERED AND ADJUDGED BY THIS COURT AS FOLLOWS:**

9. **SALE OF THE PREMISES.** The premises hereinabove described, covered by the security foreclosed in this action, shall be sold at public venue by the Sheriff of Cook County (hereinafter referred to as "Sale Officer"). The attorneys for the Plaintiff shall give public notice of the time, place and terms of sale. The notice of sale shall be published at least three (3) consecutive calendar weeks (Sunday through Saturday), once in each week, the first such notice to be published not more than forty-five (45) days prior to the sale, the last such notice to be published not less than seven (7) days prior to the sale, by:

> (a) advertisements in a newspaper circulated to the general public in the county in which the real estate is located, in the section of that newspaper where legal notices are commonly placed; and

(b)     separate advertisements in the section of such newspaper, which may <u>not be the same newspaper</u> used for section (a), in which real estate other than real estate being sold as part of legal proceedings is commonly advertised to the general public; there being no requirement for the second advertisement to include a legal description; and

(c)     such other publications as may be further ordered by the court.

Notice of public sale shall be given by attorneys for the Plaintiff to all parties in the action who have appeared and have not theretofore been found by the Court to be in default for failure to plead. Such notice shall be given in the manner provided in the applicable rules of Court for service of papers other than process of complaint, not more than forty-five (45) days nor less than seven (7) days prior to the day of sale. After notice is given as required in this Section, a copy thereof shall be filed in the office of the Clerk of the Court entering the judgment, together with a certificate of counsel or other proof that notice has been served.

The Plaintiff, its successor in interest, or any of the parties to this cause, may become the purchasers at such sale. The "Sale Officer" may adjourn or continue the sale subject to the Notice and advertisement pursuant to the requirements of Chapter 735, Section 5/15-1507 (4)(c) of the <u>Illinois Compiled Statutes</u>.

10.     **TERMS OF SALE**. The "Sale Officer" shall offer for sale the real estate described in Paragraph Six (6) above, with all improvements, fixtures and appurtenances thereto; or so much of said real estate which may be divisible and sold separately without material injury to the parties in interest. The real estate shall be sold at public auction to the highest bidder for cash; requiring payment of not less than ten percent (10%) at the time of sale and the balance within twenty-four (24) hours plus interest at the statutory judgment rate on any unpaid portion of the sale price from the date of sale to the date of payment. All payments of the amount bid shall be in certified funds payable to the "Sale Officer." In the event the bidder fails to comply

with the terms of the purchase as required, then upon demand by the Plaintiff or its successor in interest, in a notice served on the "Sale Officer" and the bidder, the funds submitted shall be forfeited to Plaintiff or its successor in interest, or Plaintiff in its discretion, shall have the option to have the property sold to the next highest bidder. In the event there is a third-party bidder other than Plaintiff, the "Sale Officer" shall obtain the name, address (other than a post office box), and telephone number of that bidder. Notice by regular mail to the address given by the bidder and to the "Sale Officer" shall be deemed sufficient notification by the Plaintiff to exercise its option to forfeit the funds. The subject property is offered for sale without any representation as to quality or quantity of title and without recourse to the Plaintiff.

11.　**PROCEEDS OF SALE.** That out of the proceeds of such sale, the "Sale Officer's" distribution shall be made in the following order of priority:

    (a)　to the "Sale Officer" his/her reasonable fees and costs;

    (b)　to the reasonable expenses of the sale;

    (c)　to the Plaintiff or its successor in interest the amount of its judgment of foreclosure, plus the reasonable expenses of securing possession before sale, holding, maintaining and preparing the real estate for sale, including payment of taxes and other governmental charges, premiums on hazard and liability insurance, receiver's and management fees and to the extent provided for in the mortgages or other recorded agreement and not prohibited by law, reasonable attorneys' fees, payments made pursuant to Section 5/15-1505 and other legal expenses incurred by the Plaintiff, plus statutory interest from the date of payment thereon;

    (d)　to Corban Kauai Chicago Lender, LLC, by virtue of its subordinated mortgage.

If Plaintiff or its successor in interest is the successful bidder at said sale, the amount due them, plus all costs, advances and fees hereunder with interest incurred between the entry of judgment and confirmation of sale shall be taken as credit on its bid, respectively; If the

remainder of the proceeds shall not be sufficient to pay the above described amounts and interest, the "Sale Officer" shall then specify the amount of the deficiency in his/her Report of Sale. If such remainder shall be more than sufficient to pay such amounts and interest, the Clerk of the Court or other party designated by the Court shall hold the surplus subject to the further order of Court.

12. **CERTIFICATE OF SALE/RECEIPT**. Upon the sale of mortgaged real estate, the person conducting the sale shall promptly give a receipt of sale for funds tendered. The Sheriff, after entry of an order approving sale and upon the request of the successful bidder shall execute and deliver a certificate of sale to the successful bidder and record a duplicate of said certificate in accordance with Sections 5/12-119 and 5/12-121 of the Illinois Compiled Statutes. The certificate shall be freely assignable by endorsement thereon.

13. **REPORT OF SALE AND CONFIRMATION OF SALE**.

    (a)    <u>**Report of Sale**</u> - the person conducting the sale shall promptly make a report of sale to the Court.

    (b)    <u>**Hearing**</u> - upon motion and notice in accordance with Court rules applicable to motions generally, the Court shall conduct a hearing to confirm the sale. The Court shall then enter an order confirming the sale, which order shall include a judgment for possession which judgment shall become effective thirty (30) days after entry. The confirmation order may also:

        (1)    approve the mortgagee's fees, costs and additional advances arising between the entry of this Judgment and the confirmation hearing; and

        (2)    determine the priority of the judgments of parties, if any, who deferred proving the priority pursuant to Subsection (h) of Section 5/15-1506.

14. **JUDICIAL/SHERIFF'S DEED**. That upon confirmation of the sale, payment of the purchase price and any other amounts required to be paid by the purchaser at sale, and after

the expiration of all the mortgagor's reinstatement and redemption rights and rights to possession, the party conducting said sale shall execute and deliver to the holder of the certificate of sale or if no certificate has been issued, then to the holder of the receipt of sale or the assignee thereof, a deed sufficient to convey title; said conveyance shall be an entire bar to all claims of the parties to the foreclosure and all persons claiming thereunder including all claims of Symmetry Tower/Chicago Project Owner, LLC, Corban Kauai Chicago Lender, LLC, Unknown Owners and any Nonrecord Claimants; that thereupon, the grantee in such deed or legal representative or assign, be let into possession of the premises.

15. **ENFORCEMENT**. The Court hereby retains jurisdiction of the subject matter of this cause throughout these foreclosure proceedings, and of all the parties hereto, for the purpose of enforcing this judgment and appointing a Receiver herein or at any time during the foreclosure proceedings.

16. **NO MERGER**. Notwithstanding anything contained to the contrary in this judgment order, the Plaintiff's right to additional attorneys' fees for post-judgment proceedings shall not be construed to have merged into this judgment.

17. **SUCCESSOR IN INTEREST**. This Order shall afford all rights otherwise extended to Plaintiff to any successor in interest of Plaintiff and shall be enforceable by and inure to the benefit of such successor in interest.

*Order Prepared By:*
Jamie L. Burns
LEVENFELD PEARLSTEIN, LLC
Attorneys for Plaintiff
120 S. Riverside Plaza, Ste. 1800
Chicago, Illinois 60606
(312) 346-8380
jburns@lplegal.com
Attorney No. 57133

ENTERED:

_____
JUDGE

Judge Lynn Weaver-Boyle

MAR 2 9 2023

Circuit Court - 2250

LP 15212308.1 \ 43625-117658

7

## EXHIBIT A

**For APN/Parcel ID(s):    17-10-101-008, 17-10-101-009, 17-10-101-010, 17-10-101-011 and 17-10-101-012**

Parcel 1:

Lot 5 in Ogden's Subdivision of Block 52 of Kinzie's Addition ot Chicago in the West 1/2 of the Northwest 1/4 of Section 10, Township 39 North, Range 14, East of the Third Principal Meridian, in Cook County, Illinois.


Parcel 2:

The East 20 feet of the South 80 feet of Lot 6 in BLock 52 in Kinzie's Addition to Chicago in the West 1/2 of the Northwest 1/4 of Section 10, Township 39 North, Range 14, East of the Third Principal Meridian, in Cook County, Illinois.


Parcel 3:

Lot 6 (except the South 80 feet) and the West 30 feet of the West 80 feet of Lot 6 in Block 52 in Ogden's Subdivision of Block 52 in Kinzie's Addition to Chicago in the West 1/2 of the Northwest 1/4 of Section 10, Township 39 North, Range 14, East of the Third Principal Meridian, in Cook County, Illinois.

# EXHIBIT F

FILED
4/18/2023 1:45 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2019CH06588
Calendar, 63
22340553

FILED DATE: 4/18/2023 1:45 PM   2019CH06588

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

WABASH SUPERIOR 1 LLC, a Delaware limited liability company, )

    Plaintiff, )

    v. )

SYMMETRY TOWER/CHICAGO PROJECT OWNER, LLC, a New York limited liability company; CORBAN KAUAI CHICAGO LENDER, LLC, a Delaware limited liability company; UNKNOWN OWNERS & NONRECORD CLAIMANTS, )

    Defendants. )

No. 19 CH 06588

Properties Located: 739 N. Wabash Ave.;42 E. Superior Street; 44-46 E. Superior Street, Chicago, Illinois 60611

## NOTICE OF SALE

Sheriff's Sale No. _230020_

PUBLIC NOTICE is given that pursuant to a judgment of foreclosure entered by the Court in the above cause on March 29, 2023, the Sheriff of Cook County, Illinois, through its Selling Officer, will sell the property described below to satisfy said judgment, as follows:

    (a)    The name and address of the person to contact for information regarding the real estate is Jamie L. Burns, Levenfeld Pearlstein, LLC, 120 S. Riverside Plaza, Ste. 1800, Chicago, Illinois 60606. The telephone number is 312-346-8380.

    (b)    The legal description of the real estate to be sold is as follows:

PARCEL 1:

LOT 5 IN OGDEN'S SUBDIVISION OF BLOCK 52 OF KINZIE'S ADDITION OF CHICAGO IN THE WEST 1/2 OF THE NORTHWEST 1/4 OF SECTION 10, TOWNSHIP 39 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

PARCEL 2:

THE EAST 20 FEET OF THE SOUTH 80 FEET OF LOT 6 IN BLOCK 52 IN KINZIE'S ADDITION TO CHICAGO IN THE WEST 1/2 OF THE

FILED DATE: 4/18/2023 1:45 PM   2019CH06588

NORTHWEST 1/4 OF SECTION 10, TOWNSHIP 39 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

PARCEL 3:

LOT 6 (EXCEPT THE SOUTH 80 FEET) AND THE WEST 30 FEET OF THE WEST 80 FEET OF LOT 6 IN BLOCK 52 IN KINZIE'S ADDITION TO CHICAGO IN THE WEST 1/2 OF THE NORTHWEST 1/4 OF SECTION 10, TOWNSHIP 39 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

PIN(s): 17-10-101-008; 17-10-101-009; 17-10-101-010; 17-10-101-011; and 17-10-101-012

Commonly known as: 739 N. Wabash Ave.;42 E. Superior Street; 44-46 E. Superior Street, Chicago, Illinois 60611

(c)   A description of the improvements of the real estate: non-residential property consisting of a three-car garage with storage above on Wabash (739 N. Wabash); a small parking lot on Wabash (737 N. Wabash); a three-flat with restaurant space (42 East Superior); multi-level (3) commercial space (44 East Superior) and multi-level mixed use space (46 East Superior)

(d)   The real estate will **NOT** be open for inspection.

(e)   The time and place of the sale is as follows: _June 1st_ , 2023 at 1:00 p.m. in room LL06 of the Richard J. Daley Center, 50 W. Washington, Chicago, IL 60602.

(f)   The terms of the sale are "as is" for certified funds, requiring that the successful bidder deposit ten percent of the bid at the time of sale in certified funds and the balance with the sheriff or associate judge within twenty-four (24) hours of the sale in certified funds, plus interest at the statutory judgment rate and any unpaid portion of the sale price from the date of sale to the date of payment.

(g)   Title will be conveyed subject to all general real estate taxes which are or shall become a lien upon the real estate, but if not yet due, that may become due and payable, special assessments, applicable rights of redemption, encumbrances, easements and restrictions of record, if any.

FILED DATE: 4/18/2023 1:45 PM   2019CH06588

Dated: April 17, 2023        **WABASH SUPERIOR 1 LLC**

By: _____
         One of its Attorneys

Jamie L. Burns
LEVENFELD PEARLSTEIN, LLC
Attorneys for Plaintiff
120 S. Riverside Plaza, Ste. 1800
Chicago, IL 60606
(312) 346-8380
jburns@lplegal.com
Firm ID: 57133

FILED DATE: 4/18/2023 1:45 PM 2019CH06588

## CERTIFICATE OF SERVICE

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned, an attorney, certifies that she served a true and correct copy of the foregoing Plaintiff's *Notice of Sale,* upon the parties below via email and through the court's Odyssey eFile system on April 18, 2023.

Ann Pille, Esq.
apille@reedsmith.com

Adrian Vuckovich, Esq.
av@cb-law.com

# EXHIBIT G

FILED
7/22/2022 11:10 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2019CH06588
Calendar, 63
18782782

FILED DATE: 7/22/2022 11:10 AM   2019CH06588

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| **WABASH SUPERIOR 1 LLC, a Delaware limited liability company,** | ) ) ) | **No. 2019CH06588** |
| **Plaintiff,** | ) ) | **Properties Located: 739 N. Wabash Ave.; 42 E. Superior Street; 44-46 E. Superior Street, Chicago, Illinois 60611** |
| **v.** | ) ) ) | |
| **SYMMETRY TOWER/CHICAGO PROJECT OWNER, LLC. a New York limited liability company; CORBAN KAUAI CHICAGO LENDER, LLC, a Delaware limited liability company; UNKNOWN OWNERS & NONRECORD CLAIMANTS,** | ) ) ) ) ) ) ) | |
| **Defendants.** | ) ) | |

**CORBAN KAUAI CHICAGO LENDER, LLC'S MOTION FOR**
**ENTRY OF ORDER OF JUDGMENT OF FORECLOSURE**

Defendant and Counter-Claimant Corban Kauai Chicago Lender, LLC ("Corban Kauai") by and through its undersigned counsel, and pursuant to 735 ILCS 5/2-1301(d), 735 ILCS 5/2-1005(b), and Supreme Court Rule 113, hereby moves this Court to enter an Order of Judgment and Foreclosure with respect to its second-priority mortgage against the Real Property, as that term is defined herein.   In support of its Motion, Corban Kauai states as follows.

## I.   PROCEDURAL HISTORY

1.     On May 30, 2019, Plaintiff Wabash Superior 1, LLC ("Plaintiff") filed its Complaint in Chancery to Foreclose a Mortgage (the "Complaint"), against Corban Kauai, Symmetry Tower/Chicago Project Owner, LLC (the "Borrower/Mortgagor"), Unknown Owners and Non-Record Claimants, pursuant to which it seeks to foreclose its mortgage against real property commonly known as 739 N. Wabash Avenue, 42 E. Superior Sttreet, and 44-46 E. Superior Street, in Chicago, Illinois.

FILED DATE: 7/22/2022 11:10 AM   2019CH06588

2.      The Complaint acknowledges that Corban Kauai has an interest in the mortgaged property by virtue of a subordinated mortgage.  *Complaint,* ¶ 3 ("Corban Kauai Chicago Lender, LLC is named as a Defendant herein by virtue of its subordinated mortgage on the real property….").

3.      On July 1, 2019, Corban Kauai filed its Answer to Complaint in Chancery to Foreclose a Mortgage and Counterclaim/Crossclaim to Foreclose Additional Mortgage (the "Answer and Counterclaim"), pursuant to which it answered Plaintiff's claims to foreclose its first-priority mortgage and filed a counter-claim to foreclose Corban Kauai's second priority mortgage against the Property.

4.      On December 5, 2019, Borrower/Mortgagor filed its Answer and Affirmative Defenses to Complaint ("Borrower/Mortgagor's Answer"), wherein it answered the Complaint filed by Plaintiff, but did not answer or otherwise respond to the Answer and Counterclaim filed by Corban Kauai.

## II.     FACTS IN SUPPORT OF CORBAN KAUAI'S COUNTERCLAIM

5.      As set forth more fully in the Answer and Counterclaim, On May 23, 2017, Borrower/Mortgagor and Corban Kauai entered into a certain Loan Agreement (the "Corban Loan Agreement"), pursuant to which Corban Kauai agreed to advance a loan to Borrower/Mortgagor in the original principal amount of $9,125,000 (the "Corban Loan").  *See, Answer and Counterclaim,* ¶ 15; *see also, Affidavit in Support of Corban Kauai Chicago Lender, LLC's Motion for Summary Judgment* (the "Anchipolovsky Affidavit"), a copy of which is attached hereto as Exhibit 1, ¶ 7.

- 2 -

FILED DATE: 7/22/2022 11:10 AM 2019CH06588

6. To further evidence the Corban Loan, on May 23, 2017, Borrower/Mortgagor executed a Promissory Note in favor of Corban Kauai in the original principal amount of $9,125,000 (the "Corban Note"). *Answer and Counterclaim, ¶ 16; Anchipolovsky Affidavit, ¶ 8.*

7. The Corban Loan is secured by, among other things, that certain Mortgage and Security Agreement dated as of May 23, 2017, and recorded with the Cook County Recorder of Deeds on May 24, 2017 as Instrument No. 1714416047 (the "Original Corban Mortgage"), a copy of which is attached to the Anchipolovsky Affidavit as Exhibit 3. *Answer and Counterclaim, ¶ 16; Anchipolovsky Affidavit, ¶ 9.*

8. On June 25, 2018, Borrower/Mortgagor and Corban Kauai executed that certain Memorandum of Loan Modification Agreement and Amendment to Mortgage and Documents of Record, which was recorded the Cook County Recorder of Deeds on July 27, 2018 as Instrument No. 1820806283 (the "Mortgage Modification" and, together with the Original Corban Mortgage and all other amendments or modifications thereto, the "Corban Mortgage"). *Answer and Counterclaim, ¶¶ 17-18; Anchipolovsky Affidavit, ¶ 10.*

9. The Mortgage Modification provides that the Corban Mortgage is modified to secure the indebtedness due under the Corban Loan and also the indebtedness due under a Loan Agreement dated as of May 23, 2017, between SPD II Makaiwa Resort Development, LLC (the "Hawaii Borrower") and Corban Kauai (as thereafter modified and amended, the "Hawaii Loan Agreement") in the principal amount of $9,725,000 (the "Hawaii Loan"). *Mortgage Modification p. 1.*

10. An event of default is deemed to have occurred under the Corban Loan and the Corban Mortgage if, among other things, a payment default occurs under either the Hawaii Loan

FILED DATE: 7/22/2022 11:10 AM   2019CH06588

or the Corban Loan. *Corban Loan Agreement,* § 8.1.1(a)(xvii); *Corban Mortgage,* p. 1 (adopting the definition of "Event of Default" used in the Corban Loan Agreement).

11.     On October 2, 2018, Corban notified the Hawaii Borrower that a default had occurred and was continuing under the Hawaii Loan as a result of Hawaii Borrower's failure to pay the indebtedness due thereunder at maturity. *Anchipolovsky Affidavit,* ¶ 13.

12.     To date, that maturity default has not been cured and is continuing. *Id.,* ¶ 14.

13.     The Corban Note constitutes a valid and enforceable contract between Borrower/Mortgagor and Corban Kauai. *Id.,* ¶ 15.

14.     Corban Kauai has, at all times relevant hereto, performed its obligations under the Corban Note. *Id.,* ¶ 16.

15.     In contrast, Borrower/Mortgagor has failed to perform its obligations under the Corban Note as a result of its failure, among other things, to satisfy the obligations due thereunder following the maturity of the Hawaii Loan. *Id.* ¶ 17.

16.     As a result of Borrower/Mortgagor's defaults under the Corban Loan Agreement, the Corban Note, the Hawaii Loan and the Corban Mortgage (collectively, the "<u>Corban Loan Documents</u>"), Corban Kauai has suffered damages in an amount equal to not less than $21,442,129.37 as of June 22, 2022, the entirety of which is secured by the Corban Mortgage. The damages suffered by Corban Kauai is calculated as follows:

| | | |
|---|---:|---|
| Unpaid principal | $ | 10,406,080.45 |
| Accrued and Unpaid Interest | $ | 9,358,535.02 |
| Late Charges | $ | 467,926.75 |
| Attorney's Fees and Costs | $ | 559,207.12 |
| **TOTAL** | **$** | **21,442,129.37** |

*Id.,* ¶ 18.

17.     On and after June 22, 2022, damages continue to accrue under the Corban Loan Documents in an amount equal to $6,937.39 per day. *Id.,* ¶ 19.

18.     In addition, Corban is entitled to collect from Borrower its attorneys' fees and costs incurred in connection with Borrower's default under the Corban Loan Documents. *Id.,* ¶ 20.

### III.    JUDGMENT SHOULD BE ENTERED ALLOWING CORBAN KAUAI TO FORECLOSE ITS INTERESTS IN THE SECOND-PRIORITY MORTGAGE

19.     In light of the Complaint and the Answer and Counterclaim, there is no dispute between Plaintiff and Corban Kauai that Corban Kauai has a valid mortgage against the real property encumbered by the Corban Mortgage (the "Mortgaged Real Property") which is subordinate to the rights of Plaintiff under its mortgage against the Real Property.

20.     Further, because neither Borrower/Mortgagor, nor any Unknown Owners or Non-Record Claimants, ever filed a response to the Answer and Counterclaim, all allegations included in the Answer and Counterclaim are confessed against Borrower/Mortgagor, Unknown Owners and Non-Record Claimants (collectively, the "Non-Responsive Defendants"), and Corban Kauai is entitled to entry of a judgment against those Non-Responsive Defendants for the relief sought in the Answer and Counterclaim.

21.     Corban Kauai's claim of damages is for a sum that is made certain by computation and is more specifically set forth in the Anchipolovsky Affidavit, a copy of which is attached hereto as Exhibit 1.

22.     Pursuant to the Anchipolovsky Affidavit, Corban Kauai has established that it is entitled to judgment in its favor, and against Borrower/Mortgagor, in the amount of $21,442,129.37 as of June 22, 2022, plus an additional $6,937.39 per day thereafter in additional interest.

FILED DATE: 7/22/2022 11:10 AM   2019CH06588

23. As set forth more fully in the Answer and Counterclaim, and the Anchipolovsky Affidavit, Borrower/Mortgagor's defaults under the Corban Loan and the Corban Mortgage entitle Corban Kauai to foreclose its interests in the Real Property.

WHEREFORE, Corban Kauai requests that this Court:

i. Grant this Motion; and

ii. Authorize sale of the Real Property; and

iii. Grant any other and further relief which this Court believes is appropriate under the circumstances.

Date: July 22, 2022

CORBAN KAUAI CHICAGO LENDER, LLC

BY: _/s/ Ann E. Pille_

One of Its Attorneys

Ann E. Pille
REED SMITH LLP
Firm No. 44486
10 S. Wacker Drive, Suite 4000
Chicago, Illinois 60606
(312) 207-1000
apille@reedsmith.com

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on July 22, 2022, I caused a copy of the **Corban Kauai Chicago Lender LLC's Motion for Entry of Order of Judgment of Foreclosure**, to be served on the individuals listed below through the Court's Odyssey e-filing system:

Adrian Vuckovich
Collins Bargione & Vuckovich
One North LaSalle Street, Suite 300
Chicago, IL 60602
av@cb-law.com

Jamie L. Burns
Levenfeld Pearlstein, LLC
2 North LaSalle Street, Suite 1300
Chicago, IL 60602
jburns@lplegal.com

                                      */s/Ann E. Pille*
                                        One of Its Attorneys